# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| MANJUNATH A. GOKARE, P.C. and | : | |
| GOLDSTEIN DEMCHAK BALLER | : | |
| BORGEN & DARDARIAN, P.C., | : | |
| on behalf of themselves and a class of | : | |
| all persons similarly situated, | : | |
| | : | |
| Plaintiffs, | : | Civil Action |
| | : | No. 2:11-CV-2131-JTF-CGC |
| v. | : | |
| | : | |
| FEDERAL EXPRESS | : | Class Action |
| CORPORATION and FEDEX | : | |
| CORPORATE SERVICES INC., | : | Jury Trial Demanded |
| | : | |
| Defendants. | : | |

## FIRST AMENDED COMPLAINT

# TABLE OF CONTENTS

I.     INTRODUCTION ..................................................................1

II.    PARTIES AND OTHER RELEVANT ENTITIES ....................................9

III.   JURISDICTION AND VENUE....................................................11

IV.    FACTUAL ALLEGATIONS ........................................................12

      A.    The Magnitude of Defendants' Operations.......................................12

      B.    The Nature of Residential Delivery Charges ....................................13

      C.    Each Defendant's Unique Role in Charging and Collecting
           Residential Delivery Surcharges .......................................19

      D.    Defendants' Pattern and Scheme to Charge and Collect Unlawful
           Residential Delivery Surcharges .......................................22

      E.    Defendants' Unlawful Conduct Has Injured Plaintiffs ....................34

V.     CLASS ALLEGATIONS ...........................................................41

COUNT ONE – (Violations of the Federal Racketeer Influenced and Corrupt
Organizations Act ("RICO"))..............................................46

      The Pattern of Racketeering Activity ...........................................52

      The Relationship Between the Acts of Racketeering Activity...................56

      Plaintiff and the Class Have Suffered Injury Proximately
      Caused By Defendants' RICO Violations...................................58

COUNT TWO – BREACH OF CONTRACT......................................59

RELIEF SOUGHT ....................................................................59

i

## I.     INTRODUCTION

1.

Defendants Federal Express Corporation ("FedEx") and FedEx Corporate Services, Inc. ("FedEx Services") (collectively, "Defendants") have inflicted financial injury on FedEx customers by repetitively charging and collecting bogus **<u>residential</u>** delivery surcharges for deliveries to **<u>non-residential</u>** addresses. Defendants' own internal documents prove that Defendants have known for years that they are unlawfully charging residential delivery surcharges when they do not apply, but have permitted the unlawful surcharges to continue because they generate substantial illicit profits.

2.

FedEx provides express delivery services nationwide.  Pursuant to contracts with its customers, FedEx can charge residential delivery surcharges if the delivery is to a residential address, which is defined as "a delivery to a home or private residence."[1]

---

[1] *After Plaintiff Gokare filed this lawsuit*, FedEx purported to change the definition of residential delivery to include addresses incorrectly designated by a FedEx customer as residential, even if (a) FedEx itself wrongly represented to the customer that the address was residential or (b) FedEx's couriers knew when they delivered the shipment that the delivery was not to a residential address.  This purported new definition of residential delivery applies only to contracts entered on or after July 14, 2011.

3.

Although FedEx can charge customers a residential delivery surcharge if a delivery is to "a home or private residence," FedEx, facilitated by FedEx Services, has knowingly engaged in a pattern of charging residential delivery surcharges for deliveries to certain addresses it knows are not residential, including, but not limited to, deliveries to certain government offices, commercial office buildings and large warehouses.

4.

FedEx has known for years that it is unlawfully charging residential delivery surcharges for deliveries to non-residential addresses.  For one, FedEx has improperly charged residential delivery surcharges for deliveries to addresses that - on their face – are clearly not residential, including deliveries to the United States Citizenship & Immigration Office, the National Passport Processing Center, Bank of America, Toyota Motor Credit, Pinellas Clerk of Circuit Court, Genworth Financial and USAA Federal Savings Bank.  Perhaps most telling, **on at least seventy (70) separate occasions, FedEx improperly charged a residential delivery surcharge to its customers for deliveries to FedEx's own headquarters**.  Of course, Defendants know that their own headquarters are not residential.

5.

Moreover, when a FedEx courier delivers a shipment, the courier personally sees the building where the package is being delivered, and thus knows whether the delivery is to a residential address.  For example, when a FedEx courier delivers a shipment to the United States Citizenship and Immigration Services building in Chicago, Illinois, the courier sees the following skyscraper:



Thus, even if somehow Defendants could not tell from the name - United States Citizenship and Immigration Services – that the address was not residential, FedEx couriers know at the time they deliver shipments to the third floor of this Chicago skyscraper that it is not a residential address.  Yet, on at least **25,000 separate**

**occasions**, FedEx has charged a residential delivery surcharge for deliveries to this address.

6.

The example listed in Paragraph 5 above is not an isolated case.  On the contrary, there are a multitude of similar instances.  For example, on at least **15,000 separate occasions**, FedEx has charged a residential delivery surcharge for deliveries to a Wachovia office in Philadelphia, Pennsylvania, even though the address itself is clearly not a residential address and despite the fact that the FedEx courier would have seen this obviously non-residential building when delivering the shipment:



7.

Similarly, on at least **23,000 separate occasions**, FedEx charged a residential delivery surcharge for a delivery to Safariland in Jacksonville, Florida, even though the name of the facility clearly indicates it is not residential and despite the fact that, as shown by the photograph below, the courier would have seen that the address was not residential:



8.

As one further example, on at least **15,000 separate occasions**, FedEx charged a residential delivery surcharge for a delivery to a Bank of America Home Loans office in Tampa, Florida, even though the address itself is clearly not residential and even though the courier would have seen this obviously non-residential building:



9.

Internal FedEx and FedEx Services documents reveal that Defendants,

including Senior Vice Presidents and other high-level employees, have known for

years that they have engaged in a pattern of defrauding their customers into paying

residential delivery surcharges that do not apply.  For example, in August 2011,

nearly six months after Plaintiff Gokare filed this lawsuit, a FedEx Services Sales

Executive wrote the following to a Senior Vice President of Sales for FedEx

Services:

> FedEx has many processes whereby shipments are flagged as being
> delivered to residential addresses, **when we have information readily
> available in our own databases that shows that these addresses are not
> residential.  As a result, we are systematically overcharging our
> customers for residential delivery fees.  I have brought this to the
> attention of multiple people over the past five years, and am confident
> that many MDs and VPs are aware of the issue.**  To date, no one has
> taken it up and recognized it to be a problem.

6

*See* Exhibit A (emphasis added).

10.

In an another email written in August 2011, a FedEx Services Sales Executive admitted that he knew of the overcharge problem "about three years ago" (*i.e.,* in 2008) and that Defendants had "a systemic problem that was likely causing overcharges for thousands of our customers, and that the dollar value was huge." *See* Exhibit B (emphasis added). He described this as "a huge class-action lawsuit waiting to happen." *Id.* The FedEx Services Sales Executive goes on to state that he tried to "convey what [he] saw as the severity of this issue" to a FedEx Services Managing Director and other high-level employees, but "[n]one of them have ever reported back taking any action." *Id.*

11.

Defendants allow the overcharges to continue because they generate substantial illicit profits, as shown by this internal company email:

> My concern is that I believe we have a methodology available to us to verify commercial addresses and not charge our customers for services that we do not perform, **and my belief is that we are choosing not to fix this issue because it is worth so much money to FedEx.**

*See* Exhibit C (emphasis added).

12.

In fact, rather than stopping the improper overcharges, Defendants have

7

rewarded employees who facilitated the scheme and assisted Defendants in retaining illicit profits derived from improper residential delivery surcharges.  As one example, FedEx improperly assessed [REDACTED] approximately **$142,000** in residential delivery surcharges for deliveries to non-residential addresses.  A FedEx Services employee negotiated with [REDACTED] to return only $50,000 of that overcharge, allowing FedEx to keep over $90,000 of unlawful surcharges.  In recognition of that work, an Airbill Invoicing Senior Manager at FedEx Services approved awarding the employee the "Bravo Zulu" award (derived from the U.S. Navy signal meaning "well done"), which included a cash bonus to the employee. *See* Exhibit D.

13.

These and other documents, as well as Defendants' own billing records, reveal that Defendants have deliberately and intentionally charged their customers residential delivery surcharges when they know no such charges apply.

14.

Defendants' pattern of unlawfully charging customers residential delivery surcharges for deliveries to non-residential addresses constitutes mail and wire fraud, and thus violates the federal Racketeer Influenced and Corrupt Organizations Act ("RICO").  Further, by charging residential delivery surcharges

8

that do not apply, FedEx has breached and continues to breach its contracts with its U.S. domestic customers.

15.

This action, brought on behalf of a nationwide class of consumers, seeks to remedy the harm that FedEx customers have suffered and continue to suffer as a result of Defendants' illegal conduct.  In particular, this action seeks: (a) injunctive relief precluding Defendants from continuing to overcharge FedEx customers and (b) treble damages to remedy the damage already suffered by Plaintiffs and the Class.

## II.    PARTIES AND OTHER RELEVANT ENTITIES

16.

Plaintiff Manjunath A. Gokare, P.C. ("Gokare") is a Georgia law firm operating as a Georgia professional corporation.  Gokare's principal place of business is located in Alpharetta, Georgia.  Gokare's law practice focuses on immigration law.  Gokare regularly contracts with FedEx for the delivery of time-sensitive immigration documents to, among other places, various United States government buildings.  Defendants, using the mail and interstate wire communications, have frequently charged and collected improper residential delivery and delivery area-residential surcharges from Gokare.

9

17.

Plaintiff Goldstein Demchak Baller Borgen & Dardarian, P.C.,

("GDBB&D") is a California law firm operating as a professional corporation,

with its principal place of business in Oakland, California.  GDBB&D's law

practice focuses on civil rights and public interest litigation.  GDBB&D regularly

contracts with FedEx for the delivery of documents to non-residential locations,

including federal and state courthouses.  Defendants, using the mail and interstate

wire communications, have frequently charged and collected improper residential

delivery and delivery area-residential surcharges from GDBB&D.

18.

Defendant FedEx is a Delaware corporation with its principal place of

business in Memphis, Tennessee.  FedEx is separately incorporated and distinct

from its parent, FedEx Corporation.  It is also separately incorporated and distinct

from other FedEx companies, including FedEx Ground and FedEx Services.

According to FedEx's website and 2011 Annual Report, FedEx does not share

principal officers with FedEx Corporation, FedEx Ground or FedEx Services.

19.

FedEx Ground is a Delaware corporation with its principal place of business

in Moon Township, Pennsylvania.  FedEx Ground began in 1985 as Roadway

Package System, a division of Roadway Services, which later became Caliber

10

System Inc.  In 1998, FedEx Corporation purchased Caliber System, Inc. and, in January 2000, rebranded Roadway Package System as FedEx Ground.  FedEx Ground is separately incorporated and distinct from its parent, FedEx Corporation. It is also separately incorporated and distinct from other FedEx companies, including FedEx and FedEx Services.  According to FedEx's website and 2011 Annual Report, FedEx Ground does not share principal officers with FedEx Corporation, FedEx or FedEx Services.

20.

Defendant FedEx Services is a Delaware corporation with its principal place of business in Memphis, Tennessee.  FedEx Services is a separately incorporated, wholly-owned subsidiary of FedEx Corporation.   FedEx Services is distinct from other FedEx companies, including FedEx and FedEx Ground.  According to FedEx's website and 2011 Annual Report, FedEx Services does not share principal officers with FedEx Corporation, FedEx or FedEx Ground.

III.   JURISDICTION AND VENUE

21.

This Court has subject matter jurisdiction over this class action pursuant to, *inter alia,* 18 U.S.C.  §§ 1961, 1962 and 1964, 28 U.S.C. § 1331 and the Class Action Fairness Act of 2005.  The matter in controversy exceeds $5,000,000

11

exclusive of interests and costs, and Plaintiff and other members of the Class are citizens of different states from the Defendants.  *See* 28 U.S.C. § 1332(d).

22.

Defendants are subject to personal jurisdiction in this district and division. Venue is also proper in this district pursuant to, *inter alia*, 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(a).

## IV.    FACTUAL ALLEGATIONS

### A.    The Magnitude of Defendants' Operations.

23.

FedEx is the world's largest express transportation company.   FedEx delivers shipments to businesses, government offices and residences.

24.

During the fiscal year ending May 31, 2012, FedEx delivered for its U.S. domestic customers, on average, approximately 2.5 million packages per day.

25.

During the fiscal year ending May 31, 2012, FedEx generated over $11 billion in revenue from its U.S. domestic deliveries.  That revenue was generated, in part, from residential delivery surcharges assessed to FedEx's customers.

**B.**     **The Nature of Residential Delivery Surcharges.**

26.

One surcharge that FedEx routinely charges its customers is a **residential delivery surcharge**, which the FedEx Service Guide has defined as a per package fee for "a delivery to a home or a private residence."

27.

Since at least 2010, the amount of the residential delivery surcharge has increased every year.  Specifically:

| Date | Residential Delivery Surcharge |
|---|---|
| Effective January 4, 2010 | $2.50 per shipment |
| Effective January 3, 2011 | $2.75 per shipment |
| Effective January 2, 2012 | $3.00 per shipment |

28.

Another surcharge that FedEx Express routinely charges is a **delivery area surcharge**, which the FedEx Service Guide has defined as a per package fee for deliveries "destined to select U.S. ZIP codes."  A list of these ZIP codes – which FedEx deems more costly and inconvenient to serve – is available at fedex.com.  If a delivery area surcharge applies, it is in addition to (and not in lieu of) a residential delivery surcharge.

13

29.

There are four types of delivery area surcharges.  First, there is a **delivery area commercial surcharge**.  This surcharge applies if a shipment is delivered to a non-residential address in a zip code that FedEx deems more costly to deliver to.  Since 2010, the delivery area commercial surcharges have increased as follows:

| Date | Delivery Area Commercial Surcharge |
|---|---|
| Effective January 4, 2010 | $1.70 per shipment |
| Effective January 3, 2011 | $1.85 per shipment |
| Effective January 2, 2012 | $2.00 per shipment |

30.

A second type of delivery area surcharge is a **delivery-area residential surcharge**.  This surcharge applies if a shipment is delivered to a residential address in a zip code that FedEx deems more costly to deliver to.  Since 2010, the delivery area residential surcharges have increased as follows:

| Date | Delivery Area Residential Surcharge |
|---|---|
| Effective January 4, 2010 | $2.50 per shipment<br>(80 cents more than commercial) |
| Effective January 3, 2011 | $2.75 per shipment<br>(90 cents more than commercial) |
| Effective January 2, 2012 | $3.00 per shipment<br>($1 more than commercial) |

31.

A third type of delivery area surcharge is a **delivery-area-<u>extended</u>
<u>commercial</u> surcharge**.  This surcharge applies if a shipment is delivered to a
non- residential address in a zip code that FedEx deems particularly costly to
deliver to (*i.e.*, even more costly than the delivery area surcharge zip codes).  Since
2010, the delivery area extended commercial surcharges have increased as follows:

| Date | Delivery Area <u>Extended</u> <u>Commercial</u> Surcharge |
|:---:|:---:|
| Effective January 4, 2010 | $1.70 per shipment |
| Effective January 3, 2011 | $1.85 per shipment |
| Effective January 2, 2012 | $2.00 per shipment |

32.

A fourth type of delivery area surcharge is a **delivery-area <u>extended</u>
<u>residential</u> surcharge**.  This surcharge applies if a shipment is delivered to a
residential address in a zip code that FedEx deems particularly costly to deliver to
(*i.e.*, even more costly than the delivery area surcharge zip codes).  Since 2010, the
delivery area extended commercial surcharges have increased as follows:

15

| Date | Delivery Area Extended Residential Surcharge |
|---|---|
| Effective January 4, 2010 | $2.75 per shipment ($1.05 cents more than commercial) |
| Effective January 3, 2011 | $3.00 per shipment ($1.15 cents more than commercial) |
| Effective January 2, 2012 | $3.25 per shipment ($1.25 more than commercial) |

33.

The residential delivery charge and the delivery area surcharge are cumulative.  If a delivery is to "a home or private residence" and "to select U.S. ZIP codes," FedEx will impose both a residential delivery surcharge and a delivery area-residential surcharge.  This means that if Defendants incorrectly classify a non-residential address as residential, the customer will be improperly assessed both a residential area surcharge and a delivery area-residential surcharge.

34.

Defendants use multiple methods to impose residential delivery surcharges. For one, if a customer uses www.fedex.com or certain types of FedEx software to initiate a delivery, the customer will be provided with an "address checker" service that, among other things, designates an address as residential or non-residential.  If the address checker service – which is operated by FedEx Services – classifies the address accepted by the customer as residential, a residential delivery surcharge will be applied, **regardless of whether the address is, in fact, a residential address**.

16

35.

As described in more detail below, the address checker service is riddled with instances where non-residential addresses are improperly classified as residential, resulting in improper residential delivery surcharges.

36.

In addition, the address checker service is designed to classify an address as residential (and cause the imposition of a residential delivery surcharge) when Defendants do not know whether an address is residential or not.  This occurs in two primary ways:

(a)    The address checker service works by transmitting via interstate wire communications the delivery address to FedEx's Enterprise Address Services system (EAS), which is an internal system made up of several address databases.  EAS then reviews a database provided by REDACTED to determine whether the United States Post Office delivers to the delivery address provided.  If the Post Office does not deliver to that address EAS will end its search, **and the address checker will classify the address as residential**.  That is, the EAS system is designed to default to a residential address (and cause the imposition of a residential delivery surcharge) if the address is not contained within the database provided by REDACTED, even if

17

Defendants know that the address is not residential.   Thus, by way of example, if the REDACTED data does not contain a delivery address, the customer is charged a residential delivery surcharge even if the FedEx courier later delivering the package determines that the address is not residential.

(b)   If the REDACTED data does contain the delivery address provided, EAS will then review a database provided by Harte Hanks which determines whether the address is a business address.  If the address is not classified by Harte Hanks as a business address, the address checker will classify the address as residential.  This is true, even though Defendants are well aware that the Harte Hank database fails to include tens of thousands of business addresses.

37.

Defendants also charge residential delivery surcharges if the FedEx courier delivering the shipment indicates that the delivery is to a residential address.  As indicated below, Defendants know that FedEx couriers have improperly classified, and continue to improperly classify, non-residential addresses as residential in order to deliver shipments without a signature (which ordinarily cannot be accomplished unless the address is designated as residential).

18

38.

A third method through which Defendants charge residential delivery surcharges is if the customer erroneously designates the shipping address as residential at the time he or she schedules the delivery.  Notably, if Defendants know that the address is not residential, either because the EAS database classifies the address as non-residential or the FedEx courier knows the address is not residential when he delivers the shipment, Defendants will **not** remove the residential delivery surcharge even though FedEx's contract with its customers forbids the imposition of residential delivery surcharges for shipments to non-residential addresses.

**C.    Each Defendant's Unique Role in Charging and Collecting Residential Delivery Surcharges.**

39.

Each Defendant has a separate and distinct role in the scheme to charge and collect unlawful residential delivery surcharges.

40.

FedEx is certified by the Department of Transportation to operate as an air carrier.  FedEx generally uses airplanes to transport shipments, as compared to FedEx Ground, which is a motor carrier that generally uses trucks.

19

41.

A customer initiates a shipment with FedEx by preparing an airbill: (a) using
www.fedex.com; (b) using specialized and/or licensed FedEx software or (c)
visiting a FedEx Office retail location.

42.

As part of the process of initiating a delivery, the customer enters into a
contract with FedEx.  When FedEx is the entity providing the shipping services,
the contract is between the customer and FedEx.  Similarly, when FedEx Ground is
the entity providing the shipping services, the contract is between the customer and
FedEx Ground.

43.

Under the express terms of the contract, FedEx can charge a residential
delivery surcharge only if the delivery is to a "home or private residence."  FedEx
cannot charge a residential delivery surcharge for a shipment to a non-residential
address, such as a government office, commercial office building or large
warehouse.

44.

Once a contract is established, FedEx, using aircraft and other equipment it
owns or leases, picks up the shipment and delivers it to the recipient.  FedEx
Services does not own or lease any of the aircraft or other equipment FedEx uses to

physically deliver shipments.  In other words, FedEx is responsible for physically delivering shipments.

45.

While FedEx enters into contracts with customers and is responsible for the physical act of delivering shipments, FedEx Services is "responsible for customer service, billings and collections for our U.S. customers."  *See* FedEx Corporation's July 16, 2012 10-K.  FedEx Services also provides sales, marketing, technical, information technology and other support for FedEx.  This includes, but is not limited to, operating www.fedex.com, the address checker and the EAS system (which improperly classifies tens of thousands of non-residential addresses as residential).  FedEx Services is also responsible for FedEx's customer support and FedEx's online, telephone and facsimile invoice adjustment system.

46.

In order to bill and collect fees (including residential delivery surcharges) from FedEx customers, FedEx Services receives information about FedEx's deliveries through the mail and interstate wire communications.  That information includes, but is not limited to, the customer's name and billing address, the delivery address and whether the FedEx courier that actually delivered the shipment classified the address as residential.

21

**D.     Defendants' Pattern and Scheme to Charge and Collect Unlawful Residential Delivery Surcharges.**

47.

FedEx, facilitated by FedEx Services' billing and collection functions, has charged and continues to charge its customers residential delivery surcharges for deliveries to addresses that are not residential; *i.e.*, where such surcharges do not apply. *See,* Exhibit E. These unlawful surcharges, which are assessed as part of FedEx's regular way of conducting business, are charged and collected several different ways.

48.

First, FedEx unlawfully charges residential delivery surcharges through the EAS system, which is operated and managed by FedEx Services. The EAS system is used to determine whether an address is commercial or residential, and thus whether a residential delivery surcharge is imposed. But, the EAS system improperly classifies tens of thousands of commercial and government addresses as residential, resulting in unlawful residential delivery surcharges. As just a few examples, FedEx has unlawfully charged residential delivery surcharges to the following obviously non-residential addresses:

22

| | |
|---|---|
| **U.S. Citizenship & Immigration**<br>131 S. Dearborn Street, Third Floor<br>Chicago, IL 60603 | **Pinellas Clerk of Circuit Court**<br>315 Court St., Room 150<br>Clearwater, FL 33756 |
| **Post Closing & Central Services**<br>**Bank of America**<br>4500 Amon Carter Blvd.<br>Fort Worth, TX 76128 | **Customer Care**<br>**Verizon Wireless**<br>4801 Mercantile Dr.<br>Fort Worth, TX 76137 |
| **Genworth Financial**<br>3200 N. Central Ave.<br>Phoenix, AZ 85012 | **Florida Document Processing**<br>**BAC Home Loans Serving LP**<br>4961 Savarse Cir<br>Tampa, FL 33634 |
| **MBF Funding Department**<br>**Mercedes-Benz Financial**<br>13650 Heritage Pkwy.<br>Forth Worth, TX 76177 | **Billed Stamp Transaction**<br>**Quest Diagnostics**<br>10101 Renner Blvd.<br>Lenexa, KS 66700 |
| **FujiColor Processing, Inc.**<br>151 5th Avenue, N.W.<br>Saint Paul, MN 55112 | **Foreclosure Department**<br>**First American Loanstar**<br>6 Campus Cir, Building 2<br>Roanoke, TX 76262 |
| **Miami-Dade County Recorders Office**<br>22 N.W. 1st St., Floor 1<br>Miami, FL 33128 | **Roundpoint Mortgage Servicing**<br>5032 Parkway Plaza Blvd.<br>Charlotte, NC 28217 |
| **Attn: Clerk Civil Division**<br>**Virginia Beach General Dist. Ct.**<br>2425 Nimmo Parkway<br>Virginia Beach, VA 23456 | **Community Investment Dept.**<br>**Federal Home Loan Bank**<br>600 California Street, Suite 300<br>San Francisco, CA 94108 |

| | |
|---|---|
| **Milbank, Tweed, Hadley & McCloy**<br>601 South Figueroa Street, 30th Floor<br>Los Angeles, CA 90017 | **National Financial Services, LLC**<br>200 Liberty Street, 5th Floor<br>One World Financial Center<br>New York, NY 10281 |
| **Medical Records**<br>**Medical Clinic of Houston**<br>1701 Sunset Blvd.<br>Houston, TX 77005 | **American Funds Service Co.**<br>12711 N. Meridian Street<br>Carmel, IN 46032 |
| **Consular Lost Stolen Passport**<br>**U.S. Department of State**<br>1111 19th St. NW Suite 500<br>Washington, D.C. 20036 | **State Farm Bank**<br>111 Corporate Office Dr. Suite 300<br>Earth City, MO 63045 |
| **Saudi Arabia Certification**<br>**U.S. Legalization**<br>1615 Bay Head Road<br>Annapolis, MD 21409 | **Prudential Annunities Service Cnt.**<br>2101 Welsh Rd.<br>Dresher, PA 19025 |

49.

Second, if the Post Office does not deliver to the address provided by a FedEx customer, FedEx will, by default, classify the address as residential and impose a residential delivery surcharge. The residential delivery surcharge is imposed even if, when delivering the package, the FedEx courier determines that the delivery is to a non-residential address. This practice results in customers being repeatedly charged a residential delivery surcharge when it does not apply.

50.

For example, if a business has its mail delivered to a Post Office box, the business's street address will generally not show up in the list of addresses that the Post Office delivers to, even though the address is a valid street address, FedEx knows it's a valid street address (because, among other things, FedEx couriers personally view the address) and FedEx regularly deliver shipments to the address. In this instance, FedEx will generally charge customers who ship to this business's street address a residential delivery surcharge, even though the delivery is to a business.

51.

Defendants have known for years that they are improperly charging residential delivery surcharges for deliveries to businesses that use a P.O. Box, but continue to impose such improper charges to generate illicit profits.  Indeed, in an internal email a FedEx Services employee wrote:

> This address comes up as residential in our system.  The most likely reason for this is that the business at that address . . . has chosen to have their US mail delivered to another location (probably a PO Box).  In that case, USPS won't publish the street address and our vendor won't know that it's a business. **This is a very common problem**.

Exhibit F (emphasis added).

52.

As another example, if a large building – like a high-rise office building –
has all of its mail delivered to a central location (such as a mail room) and then
internally distributes that mail to specific offices within the building, each of the
specific locations within the building will not show up in the list of addresses that
the Post Office delivers to, even though the specific location is a valid street
address and FedEx regularly deliver shipments to the specific location.  In this
instance, FedEx will generally charge customers who ship to specific offices
within the office building a residential delivery surcharge, even though the delivery
is to a business.

53.

Again, internal documents reveal that Defendants have known for years that
this practice results in improperly imposed residential delivery surcharges, but has
done nothing to prevent it:

> Just a quick note for future reference: we've had a lot of
> problems with business classifications. . . . The only addresses
> USPS publishes are the ones it actually delivers to.  So, for
> instance, if USPS delivers to a central point in a high rise, then
> USPS doesn't publish the zip+4+2s for individual suites or
> apartments. . . . **This is a very common and constant cause of
> customer complaints**.

Exhibit G (emphasis added).

54.

Defendants also rely on a business address database from Harte-Hanks to classify addresses, despite knowing that the Harte-Hanks data is inaccurate and incomplete, resulting in the imposition of improper residential delivery surcharges. Defendants' knowledge of the incomplete and inaccurate nature of the Harte-Hanks data is revealed in several internal emails.  For example, a FedEx Services employee internally admitted that there are       REDACTED

Exhibit H (emphasis added).  That admission was confirmed by another employee, who acknowledged that the Harte-Hanks data is really "only a partial business listing," such that "**a failure to match is _not a reliable indicator of a residence_**."  Exhibit I (emphasis added).  Given these admissions, it is not surprising that FedEx received "**a lot of complaints** where legitimate business addresses are not reflected in the Harte-Hanks database." Exhibit J (emphasis added).

55.

Yet another method through which Defendants charge improper residential delivery surcharges is by refusing to timely correct non-residential addresses that are incorrectly classified as residential.  For example, if a customer informs Defendants that they inaccurately classified a non-residential address as residential, Defendants often direct the customer to report the error to the United States Post

Office and ask the Post Office to change the classification, rather than correcting

the  EAS system.  If the customer fails to contact the United States Post Office,

Defendants will often continue to charge residential delivery surcharges even

though they are on notice that the classification is incorrect.  Moreover, even if the

customer does contact the Post Office, Defendants are well aware that any changes

in classification will take months, and Defendants continue to charge residential

delivery surcharges on the address until the change is made.

56.

Internal FedEx and FedEx services documents reveal that Defendants have

known about and can prevent improper overcharges imposed in this manner, but

have elected not to spend the time, money and effort to do so:

REDACTED

Exhibit K at 8 (emphasis added).

57.

Defendants also use FedEx couriers to impose improper residential delivery

surcharges.  This is primarily accomplished through Defendants' policy and

28

practice of requiring couriers to classify an address as residential if they want to leave a package without a signature.

58.

Specifically, for deliveries to residential addresses, FedEx generally does not require its couriers to obtain a signature before leaving a shipment.  Rather, couriers may simply leave the shipment at the home or private residence and move on to their next delivery.  On the other hand, for deliveries to non-residential addresses, FedEx generally requires its couriers to obtain a signature before leaving the shipment.  If a signature cannot be obtained, couriers must try to deliver the shipment again at a later time.

59.

In order to avoid the time and expense associated with having to re-try a delivery when no one is available to provide a signature, FedEx couriers often classify a non-residential address as residential, thereby waiving the signature requirement.  If a FedEx courier designates an address as residential to avoid the signature requirement, the customer is assessed a residential delivery surcharge, even if the delivery was to a non-residential address.

60.

Defendants are well aware that FedEx couriers often improperly designate non-residential addresses as residential to avoid the signature requirement.  Indeed,

29

in an internal email, a FedEx Services employee reported: "drivers make deliveries

to **known commercial addresses**, but flag them as residential so that they don't

have to secure a signature. "  Exhibit A (emphasis added).

61.

To generate further illicit profits, FedEx designed its system for having

couriers classify addresses as residential or non-residential in a manner that

frequently results in overcharges.  In particular, if a FedEx courier delivering a

shipment determines that the address is residential, FedEx permits the courier to

**add** a residential delivery surcharge.  On the other hand, if that same FedEx

courier determines that the address is not residential, the courier is **not** permitted to

remove a residential delivery surcharge if it was previously imposed.  For example,

if FedEx's address checker imposed a residential delivery surcharge when a

customer initiated a delivery through www.fedex.com, and the courier actually

delivering the package concludes that the address was not, in fact, residential, the

FedEx courier is not permitted to remove the improper surcharge.

62.

FedEx made the deliberate and intentional choice not to permit its couriers

to remove improper residential delivery surcharges because they generate

substantial illicit profits.  Indeed, as one FedEx Services employee explained to

another,                                      REDACTED

30

**REDACTED**                        Exhibit C (emphasis added).  In response,

the other FedEx Services employee stated: "I believe we have a methodology

available to us to verify commercial addresses and not charge our customers for

services that we do not perform, and my belief is that **we are choosing not to fix**

**this issue because it is worth so much money to FedEx**."  *Id.*  (emphasis added).

63.

Finally, even when customers complain about improper residential delivery

surcharges on obviously non-residential addresses, Defendants often refuse to

reimburse all of the improperly obtained surcharges.  This practice is revealed in

an internal document written by a FedEx Services Sales Executive:

> Postal Service database.  Unfortunately, **this is often an**
> **incorrect resource**.  Therefore, the customer incurs a costly
> residential delivery charge on a regular basis.  Upon speaking
> with [certain FedEx call center representatives], I was advised
> that these are valid charges due to the fact that the address
> checker shows it as such.  When I advised that both COSMOS
> & CHEERS substantiate that **this is a business & the courier**
> **indicated on both deliveries that it was delivered to**
> **"shipping/receiving"**, both [representatives] advised that this
> is a valid surcharge, insisting that the Post Office checker is
> correct.
>
> The customer is aware of the steps that must be taken in order
> to have the address changed from residential to business
> through the post office.  However, the customer feels that this is
> a step that should not be taken by them.  **They did not enter a**
> **contract for delivery with the post office.  They chose to use**
> **FedEx & we have unfairly charged for a residential**
> **delivery, when one did not take place.  To add insult to**

31

> injury, our billing representatives are unable to take
> corrective measures.

Exhibit L at 3 (emphasis added).

64.

Using the practices and methods described above, Defendants have for years

knowingly and intentionally defrauded FedEx customers into paying residential

delivery surcharges that do not apply.  As examples, below is a list of seventeen

(17) addresses for which, **on over <u>500,000</u> separate occasions** between February

2010 and February 2012, Defendants have improperly and illegally represented

that a customer is required to pay a residential delivery surcharge when the

delivery was made to a non-residential address:

| Delivery Address | Number of Improper Residential Delivery Charges During the Class Period |
|---|---|
| REDACTED | |

# REDACTED

# REDACTED

This is just a sample of the millions of instances in which Defendants have improperly charged residential delivery surcharges when they do not apply.

      **E.    Defendants' Unlawful Conduct Has Injured Plaintiffs**

65.

Plaintiff Gokare has been injured by Defendants' unlawful pattern of charging residential delivery surcharges and delivery-area residential surcharges when they do not apply.

34

66.

For example, on February 26, 2010, Gokare entered into a contract with

FedEx to ship time-sensitive immigration documents to the United States

Citizenship and Immigration Services ("USCIS") processing center in Saint

Albans, Vermont.  The recipient's address was listed as:

> Premium Processing Service
> USCIS – Vermont Service Center
> 30 HOUGHTON ST
> SAINT ALBANS VT 05478 US

> *See* Exhibit M.

67.

The address, on its face, is not residential.  It is an office of the United States

government.  Nevertheless, FedEx and FedEx Services, using the mail and

interstate wires, transmitted or caused to be transmitted an invoice dated March 9,

2010, which fraudulently represented that Gokare owed FedEx both a residential

surcharge ($2.50) and a delivery area-residential surcharge (an additional $2.50)

for this delivery.  *See id.*

68.

A Gokare employee discovered these overcharges and, on March 16, 2010,

contacted FedEx Services to correct the billing error, to demand reversal of the

improper surcharges, and to correct the classification of the USCIS Service Center

in St. Albans, Vermont for future shipments.

35

69.

The FedEx Services call-center representative adjusted the residential

delivery surcharge but refused to adjust the delivery area-residential surcharge

($2.50) to a delivery area-commercial surcharge ($1.70).

70.

On March 11, 2010, Gokare again entered into a contract with FedEx to ship

time-sensitive immigration documents to the USCIS Processing Center in Saint

Albans. *See* Exhibit M.

71.

This address, on its face, is not residential.  It is an office of the United

States government.  Moreover, Gokare had already given FedEx notice that this

address is not residential.  Nevertheless, FedEx and FedEx Services, using the mail

and interstate wires, transmitted or caused to be transmitted an invoice dated

March 16, 2010, which fraudulently represented that Gokare owed FedEx both a

residential surcharge ($2.50) and a delivery area-residential surcharge (an

additional $2.50) for this delivery.  *See id.*

72.

A Gokare employee discovered the overcharges in connection with the

March 11, 2010 shipment.  On March 22, 2010, the Gokare employee contacted

FedEx Services to correct the billing error, to demand reversal of the improper

residential delivery surcharges, and to correct the classification of the USCIS

Service Center in St. Albans, Vermont on future shipments.

73.

On this occasion, FedEx Service's call-center representative insisted that

FedEx's overcharges were "valid" and refused to refund or adjust the improper and

unwarranted surcharges.  Gokare's employee then asked to speak with a supervisor

and was connected to a "manager" named "Susan".  FedEx Service's call-center

supervisor insisted that both the residential surcharge and the delivery-area

residential surcharge relating to the March 11, 2010 shipment invoiced on March

16, 2010 were "valid" and that no adjustment would be forthcoming.

74.

Gokare has, with respect to its shipments of February 26, 2010 (invoiced

March 9, 2010) and March 11, 2010 (invoiced March 16, 2010), fully complied

with the FedEx Service Guide regarding notice and presentment of claims with

respect to these residential delivery and delivery-area residential overcharges.

75.

Gokare has been improperly assessed residential delivery and delivery-area

residential overcharges on numerous other occasions, including for deliveries on

August 4, 2009; August 27, 2009; September 11, 2009; September 22, 2009;

37

November 14, 2009; November 16, 2009; November 16, 2009; November 25,

2009; December 3, 2009; January 5, 2010; and January 8, 2010.

76.

Plaintiff GDBB&D has also been injured by Defendants' unlawful pattern of

charging residential delivery surcharges and delivery-area residential surcharges

when they do not apply.

77.

For example, on April 1, 2011, GDBB&D entered into a contract with

FedEx to deliver a shipment to the offices of a Chicago, Illinois law firm located in

the Three First National Plaza building, which is a fifty-seven story office building

located in Chicago.  The recipient's address was listed as:

> Hughes Socol Piers Resinick & D
> 70 W MADISON ST STE 4000
> CHICAGO IL 60602 US

Exhibit N at 3.

78.

The address, on its face, is not residential.  The address includes the name of

a law firm and a suite number, both of which indicate that the address is not

residential.  Moreover, when the FedEx courier delivered the shipment, he saw a

fifty-seven story office building in Chicago.  Nevertheless, FedEx and FedEx

Services – using mail and interstate wires – transmitted or caused to be transmitted

38

an invoice dated April 8, 2011, which fraudulently represented that GDBB&D

owed FedEx a residential delivery charge ($2.75) for this delivery.  *Id.*

79.

As another example, again on April 1, 2011, GDBB&D entered into a

contract with FedEx to deliver a shipment to the New York office of the United

States Equal Employment Opportunity Commission located in the Broad Financial

Center building, which is a twenty-seven story office building in New York, New

York.  The recipient's address was listed as:

> U.S. Equal Employment Opportunity
> 33 WHITEHALL ST FL 5
> NEW YORK CITY NY 10004 US

Exhibit N at 4.

80.

The address, on its face, is not residential.  It is an office of the United States

government.  Moreover, when the FedEx courier delivered the shipment, he saw a

twenty-seven story office building in New York.  Nevertheless, FedEx and FedEx

Services – using mail and interstate wires – transmitted or caused to be transmitted

an invoice dated April 8, 2011, which fraudulently represented that GDBB&D

owed FedEx a residential delivery charge ($2.75) for this delivery.  *Id.*

39

81.

On May 11, 2011, an employee of GDBB&D contacted FedEx Services by phone to request a refund for the overcharges.  During the call, the GDBB&D employee told the FedEx Services representative that the destinations were not residential and the charges were wrong.  The FedEx Services representative, however, refused to refund the overcharges.

82.

GDBB&D has, with respect to its deliveries of April 1, 2011 (invoiced on April 8, 2011), complied with the FedEx Service Guide regarding notice and presentment of claims with respect to these residential delivery overcharges.

83.

GDBB&D has been improperly assessed residential delivery and delivery-area residential overcharges on numerous other occasions, including for deliveries on January 4, 2010; January 28, 2010; February 9, 2010; March 3, 2010; March 9, 2010; March 31, 2010; April 22, 2010; April 26, 2010; May 21, 2010; June 2, 2010; June 3, 2010; July 1, 2010; July 27, 2010; August 12, 2010; August 20, 2010; September 3, 2010; September 13, 2010, September 20, 2010; October 8, 2010; November 4, 2010; December 15, 2010; January 7, 2011; January 18, 2011; February 2, 2011; February 9, 2011; March 23, 2011 and April 4, 2011.

84.

As a result of the unlawful conduct described above, Plaintiffs have been

damaged.

## V.      CLASS ALLEGATIONS

85.

Plaintiffs bring this action on behalf of themselves and members of the

following class (the "Class"):

Class Against FedEx Express: All persons and entities who, during the
period commencing February 18, 2010 and continuing until resolution of
this action, purchased FedEx delivery services in the U.S. domestic market,
and who were charged and paid a residential delivery surcharge or a delivery
area-residential surcharge (or both), for any shipment that was not destined
to a home or private residence.  The class excludes Defendants, their
affiliates, and class counsel.

Class Against FedEx Services:  All persons and entities who, during the
period commencing August 28, 2008 and continuing until resolution of this
action, purchased FedEx delivery services in the U.S. domestic market, and
who were charged and paid a residential delivery surcharge or a delivery
area-residential surcharge (or both), for any shipment that was not destined
to a home or private residence.  The class excludes Defendants, their
affiliates, and class counsel.

86.

This class action is brought pursuant to Rule 23(b)(2) and Rule 23(b)(3) of

the Federal Rules of Civil Procedure because, *inter alia*, Defendants have acted or

refused to act on grounds that apply generally to the Class so that final injunctive

relief is appropriate with respect to the class as a whole, and because issues of law

41

and fact common to class members predominate over any questions affecting only individual members.

87.

Given the extraordinarily high volume of claims generated by Defendants' repetitive imposition of improper surcharges in which the stakes are generally less than $6 for each contract breached, a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.  A class action is the only practicable vehicle for securing a remedy for Defendants' numerous mail and wire fraud violations, as well as FedEx's repeated breaches of contracts with its customers.

88.

A class action is the only practicable vehicle for obtaining injunctive relief to ensure that Defendants cease engaging in illegal conduct in the future.

89.

The class of customers who have been overcharged for shipments to non-residential destinations is so numerous that joinder of all members is impracticable, questions of law and fact are common to the Class, the claims and defenses of the parties will be typical of the claims and defenses of the Class, and the representative parties will fairly and adequately protect the interests of the Class.

90.

Questions of law and fact common to the Class include, but are not limited to, the following:

(a)     Whether FedEx's charging and collection of residential delivery or delivery area-residential surcharges (or both) from customers who contracted for the shipment of packages to a non-residential destination constitutes a breach of contract;

(b)     Whether Defendants' conduct, including falsely representing that a residential surcharge applies and seeking to collect such a surcharge (or both) from customers who contracted for the shipment of packages to a non-residential destination, constitutes mail fraud;

(c)     Whether Defendants' conduct, including falsely representing that a residential surcharge applies and seeking to collect such a surcharge (or both) from customers who contracted for the shipment of packages to a non-residential destination, constitutes wire fraud;

(d)     Whether Defendants' conduct, including falsely representing that a residential surcharge applies and seeking to collect such a surcharge (or both), from customers who contracted for the shipment of packages to a non-residential destination, constitutes a pattern of racketeering activity;

(e)     Whether Defendants, and others, constitute an association in fact, and thus qualify as an enterprise under Federal RICO;

(f)     Whether the EAS system used to determine whether an address is residential misclassifies addresses;

(g)     Whether Defendants knew that the EAS system was inaccurate, and thus knowingly and intentionally sent fraudulent bills, invoices or other demands for payment;

(h)     Whether Defendants have a policy or practice of imposing and collecting a residential surcharge for addresses that are classified in the database as unknown;

(i)     Whether certain terms and conditions contained in the FedEx Service Guide, including purported restrictions on whether any customer can ever seek redress for breach of contract on a classwide basis, are unconscionable or otherwise unenforceable, and

(i)     Whether injunctive relief is warranted and, if so, the form and scope of that relief.

91.

Plaintiffs' claims are typical of the claims of the Class.  Plaintiffs are members of the Class, and their experience with Defendants is representative of the experience of class members in general.

44

92.

Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are committed to obtaining just relief for all Class members and have retained counsel with experience in breach of contract, federal RICO and class action litigation.

93.

A class action is manageable because the facts relating to the size of the Class, the identity of Class members, the systemic and formulaic nature of the Defendants' conduct in overcharging class members by misapplying residential delivery surcharges to commercial deliveries, and the extent of damages inflicted on the class through Defendants' improper misclassification of non-residential shipments as residential deliveries can be readily established through business records maintained for the benefit of the Defendants and through other means of common class-wide proof.

94.

A class action is superior to other available methods for the fair and efficient adjudication of the disputes alleged herein because, *inter alia*, individual claims of Class members are impractical given that the costs of litigation far exceed any individual overcharge.  Moreover, the data, documents and witnesses necessary to prove the existence of the unlawful conduct are common to all members of the

Class, and it would be inefficient to have each Class member seek to obtain that same voluminous evidence in individual lawsuits.  Further, a class action is the best, and perhaps only, means of obtaining injunctive relief.

95.

In the absence of class treatment, the class of FedEx customers, whose **daily** package delivery volume is approximately 2.5 million, will be deprived of any effective remedy for Defendants' violation of the federal RICO act and FedEx's breach of contract.

**<u>COUNT ONE</u>**

**(Violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"))**

96.

Paragraphs 1 through 95 are incorporated by reference as if set forth fully herein.

97.

Each Plaintiff and member of the Class is a "person," as that term is defined in 18 U.S.C. §1961(3) of the federal RICO Act (18 U.S.C. §1961 *et seq.*) (throughout, "Federal RICO").

46

98.

Defendants, and others, willfully and intentionally violated and continue to violate Federal RICO with the object of obtaining money, directly and indirectly, through a pattern of racketeering activity.

99.

FedEx, FedEx Ground, and FedEx Services are engaged in activities affecting federal interstate and/or foreign commerce and are entities capable of holding a legal or beneficial interest in property. Therefore, FedEx, FedEx Ground and FedEx Services are each a "person," as that term is defined by 18 U.S.C. §1961(3).

100.

Defendants, and others, associated in fact to form an enterprise under 18 U.S.C. § 1961(4). Indeed, in its 2011 10-K, FedEx Corporation referred to FedEx and FedEx Services, along with other FedEx companies, as an "enterprise."[2]

101.

The enterprise affected and continues to affect interstate commerce. The operation of the enterprise continued over several years, including activities in

---

[2] *See* http://investors.fedex.com/phoenix.zhtml?c=73289&p=IROL-secToc&TOC=aHR0cDovL2lyLmludC53ZXN0bGF3YnVzaW5lc3MuY29tL2RvY3VtZW50L3YxLzAwMDA5NTAxMjMtMTEtMDY1MjQ2L3RvYy9wYWdlWdl&s XBRL=1 ("We manage our business as a portfolio – in the long-term best interest *of the enterprise*.") (emphasis added).

47

every state, and has affected and damaged, and continues to affect and damage, commercial activity.

102.

The members of the enterprise regularly transport shipments by aircraft and other vehicles in interstate commerce while acting on behalf of the enterprise. Members of the enterprise also used instrumentalities of interstate commerce such as telephones, facsimile machines, the internet and email to communicate in furtherance of the activities of the enterprise.

103.

FedEx, FedEx Ground and FedEx Services each play a separate and distinct role in the operation of the enterprise.

104.

FedEx, FedEx Ground and FedEx Express are separately incorporated and operated independently and distinctly of one another.  Indeed, in order to shield each separately incorporated FedEx company from liability for any actions of any other FedEx company, FedEx Corporation has made the following admissions *in judicio*:

> (a)    FedEx and FedEx Corporation "operate independently of one
>
> another."  *See* Exhibit O at 2.

48

(b)     FedEx Corporation "has no control over FedEx Services' operations or employment decisions" (*see McAninch v. Federal Express Corp.*, 398 F. Supp. 2d 1025, 1035 (S.D. Iowa 2005)).

(c)     FedEx and FedEx Services "do not [] have common offices, record keeping or bank accounts" (*see Jackson v. Federal Express Corp.*, No. 04-2470, 2006 WL 181964, at *4 (W.D. Tenn. Jan. 18, 2006)).

(d)     "FedEx Corporation does <u>not</u> do business as 'FedEx Express'."  *See* Exhibit O at 2.

(e)     FedEx Corporation "does not manage [FedEx's] day-to-day business operations." *Id.*

(f)     FedEx Corporation does <u>not</u> dominate or control FedEx's business operations.  *Id.* at 9-10.

(g)     "FedEx Corporation does not own, operate or manage any 'FedEx staffed ship centers in any state,'" or any 'FedEx drop boxes' or any other 'places where consumers can access FedEx's services.'"  *See* Exhibit P at 1-2.

(h)     There are an "incredibly low number of officers and directors that overlap between FedEx Corporation and [FedEx]."  *See* Exhibit O at 2.

105.

FedEx Corporation's 2011 Form 10-K filed with the Securities and

Exchange Commission further represents that each of FedEx Corporation's

subsidiaries, including FedEx, FedEx Ground and FedEx Services, "operat[e]

independently."  Similarly, FedEx's webpage states that "**[b]y operating**

**independently**, each company can focus exclusively on delivering the best service

for its specific market."  *See http://about.van.fedex.com/fedex-opco-history*.

(emphasis added).

106.

FedEx and FedEx Ground's role in the operation of the enterprise is to, *inter*

*alia*, enter into contracts with customers that include the provisions under which

the enterprise charges the fraudulent residential delivery surcharges.  FedEx and

FedEx Ground also perform the shipping function, including, but not limited to,

picking up, shipping and delivering packages and leasing and/or owning the

aircraft and vehicles that are used for deliveries.  FedEx and FedEx Ground also

facilitate the scheme of improperly classifying non-residential addresses as

residential by, among other things: (a) having their couriers classify non-residential

addresses as residential; (b) implementing a system that prevents their couriers

from removing improperly assessed residential delivery surcharges, and (c)

sending information (via mail and interstate wire communications) about

50

shipments to FedEx Services to use in its creation and transmission of fraudulent bills, invoices or other demands for payment containing illegal residential delivery surcharges.

107.

FedEx Services' role in the operation of the enterprise is to, *inter alia*, serve as the billing and collection function.  Indeed, FedEx's July 16, 2012 10-K describes FedEx Services as being "responsible for customer service, billings and collections for our U.S. customers."  More particularly, FedEx Services transmits or causes to be transmitted fraudulent bills, invoices or other demands for payments and seeks to collect fraudulent residential delivery surcharges (using information provided to it by FedEx and FedEx Ground).  In addition, FedEx Services assists in effectuating the scheme by improperly classifying non-residential addresses as residential in the company's EAS system and by refusing to provide refunds or credits to customers who were improperly charged a residential delivery surcharge. FedEx Services also provides customer service, marketing and information technology support to FedEx and FedEx Ground to assist in effectuating the scheme.  Moreover, FedEx Services operates FedEx's website, which includes marketing for FedEx and FedEx Ground, and is one of the ways through which fraudulent demands for payment are made.

51

108.

FedEx Services is separate and distinct from FedEx and FedEx Ground.

FedEx Services does not own or lease any airplanes or vehicles used primarily for

transport and delivery of shipments, and FedEx Services does not employ or hire

FedEx or FedEx Ground couriers.  Moreover, FedEx, FedEx Ground and FedEx

Services each have its own unique employer identification number.

### The Pattern of Racketeering Activity

109.

FedEx, FedEx Ground and FedEx Services, being persons employed by or

associated with an enterprise, the activities of which affected interstate commerce,

conducted or participated, directly or indirectly, in the conduct of the affairs of an

enterprise through a pattern of racketeering activity.

110.

Achieving the object of the scheme to obtain illicit profits through fraudulent

residential delivery surcharges required the commission of more than two related

acts of racketeering activity by Defendants.  Numerous related acts of racketeering

activity were actually committed during the course of the scheme, and those acts of

racketeering activity proximately caused injury to the Plaintiffs and the Class.  The

acts of racketeering activity include, but are not limited to, mail fraud and wire

fraud.

111.

Defendants, and others, have violated and continue to willfully violate, attempted to violate, solicited others to willfully violate, or have otherwise engaged in acts involving mail fraud.  This conduct has violated and continues to violate 18 U.S.C. § 1341.

112.

Specifically, Defendants, and others, have engaged in and continue to engage in a pattern of using the public, private and commercial carriers to send or cause to be sent bills, invoices or other demands for payment to customers.  Those bills, invoices or other demands for payment fraudulently represent that the customer owed FedEx and/or FedEx Ground a residential delivery surcharge for packages that were *not* shipped to a residential address.

113.

Defendants, and others, knowingly and intentionally transmitted or caused to be transmitted fraudulent bills, invoices or other demands for payment through the mail in order to earn illicit profits.  Indeed, as set forth above, Defendants, including FedEx Services managers and Vice Presidents, knew that they were improperly and fraudulently charging customers residential surcharges for deliveries to non-residential addresses and continued that practice because it

increased the company's revenues and profits.  As such, Defendants have violated

18 U.S.C. § 1962(a) – (c).

114.

Each delivery of a fraudulent bill, invoice or other demand for payment by a

public, private or commercial carrier constituted an act of mail fraud in violation of

18 U.S.C. § 1341, as well as racketeering activity within the meaning of 18 U.S.C.

§ 1961(1)(b).

115.

Defendants have committed and continue to commit wire fraud within the

meaning of 18 U.S.C. § 1343.

116.

Each delivery of a fraudulent bill, invoice or other demand for payment by

interstate wire, or receipt of illicit funds by wire, constituted an act of wire fraud in

violation of 18 U.S.C. § 1343, as well as racketeering activity within the meaning

of 18 U.S.C. § 1961(1)(b).

117.

The scheme to defraud customers by charging a residential surcharge for

shipments to non-residential addresses (as described above in the "factual

allegations" section above and incorporated herein by reference) was committed

not only through the mail, but also through interstate wires.

118.

Defendants, and others, utilized and employed interstate wire and mail communications for the purpose of implementing, furthering and executing the scheme to defraud Plaintiffs and the Class.  This includes, but is not limited to: (a) transmitting or causing to be transmitted fraudulent bills, invoices or other demands for payment via interstate wire communications or mail; (b) fraudulently representing that a residential delivery surcharge is owed through the mail, emails, fedex.com and mobile devices; (c) receiving monies through interstate wire communications and mail from Plaintiffs and the Class in reliance on fraudulent bills, invoices or other demands for payment; (d) using interstate wire communications and mail to exchange information and to coordinate the scheme to defraud customers; (e) FedEx and FedEx Ground drivers using interstate wire communications to classify addresses as residential when, in fact, they are not, and (f) using interstate wire communications and mail to transmit funds between FedEx, FedEx Ground and/or FedEx Services.

119.

For the purpose of executing and/or attempting to execute the scheme to defraud described above or to obtain money by false pretenses, representations or promises, Defendants, and others, in violation of 18 U.S.C. §§ 1341 and 1343, made use of: (a) public, private and/or commercial carriers and (b) interstate wire

55

communications in the form of, *inter alia*, emails, credit card transmissions, electronic fund transfers, bills, invoices, internet transmissions and/or demand for payment.  For example, Defendants transmitted or caused to transmit bills, invoices or other demands for payment containing false residential delivery surcharges through the mail and through interstate wire communications.

120.

Defendants have used and continue to use interstate wire communications to exchange data relating to customer charges.  Further, FedEx, FedEx Ground and FedEx Services have used interstate wire communications to send illicit profits.

**The Relationship Between the Acts of Racketeering Activity**

121.

The acts of racketeering activity committed by Defendants and others are related in that they all involve fraudulently charging customers residential surcharges for deliveries made to non-residential addresses.

122.

The acts of racketeering activity committed by Defendants and others have the same or similar intents in that they sought to obtain property, *i.e.,* money, for Defendants through illegal means.

56

123.

The acts of racketeering activity committed by Defendants and others have the same or similar results, in that Defendants actually obtained money through illegal means.

124.

The acts of racketeering activity committed by Defendants and others have the same or similar victims, including Plaintiffs and the Class, who have been victimized by Defendants' scheme to obtain money through deceptive or fraudulent schemes or artifices.

125.

The acts of racketeering activity committed by Defendants and others have the same or similar methods of commission in that they involve fraudulently charging customers residential surcharges for deliveries made to non-residential addresses.

126.

The acts of racketeering activity committed by Defendants and others are interrelated by distinguishing characteristics and are not isolated incidents.  The acts involve the same or similar methods of commission and the same or similar benefits to the Defendants.

127.

The acts of racketeering activity constitute a pattern of racketeering activity in that these unlawful activities relate to each other and have an undeniable continuity. Indeed, Defendants charge improper residential delivery surcharges as part of their regular way of conducting business. FedEx and FedEx Ground, in conjunction with FedEx Services, have repeatedly improperly and illegally represented that a customer is required to pay a residential delivery surcharge when a package was shipped to a non-residential address.

**Plaintiff and the Class Have Suffered Injury Proximately Caused
By Defendants' RICO Violations**

128.

Plaintiffs and the Class's injuries flow directly from, and are proximately caused by, Defendants' pattern of racketeering activity.

129.

Plaintiffs and the Class have been injured by reason of Defendants' violations of federal RICO, including Defendants' knowing and intentional violations of the mail fraud and wire fraud statutes.

130.

Pursuant to, *inter alia*, 18 U.S.C. §1964(c), Plaintiffs and the Class are entitled to injunctive relief, treble damages, costs, expenses and attorneys' fees.

## COUNT TWO – BREACH OF CONTRACT

131.

Paragraphs 1 through 130 above are incorporated by reference as if set forth fully herein.

132.

Plaintiffs and the Class entered into valid contracts with FedEx for the shipment of packages.  As part of each agreement, FedEx agreed that it would neither impose nor collect any residential delivery surcharge or any delivery area-residential surcharge except in those instances where FedEx made "a delivery to a home or a private residence."

133.

FedEx breached its contracts in every instance where it imposed and collected residential delivery and delivery area-residential surcharges on deliveries that were not to a home or private residence.

134.

By breaching its contracts, FedEx has caused the Plaintiffs and each Class member to suffer damages.

## RELIEF SOUGHT

Plaintiffs, on behalf of themselves and the Class, respectfully ask that this Court:

59

(a)    Certify this action as a class action pursuant to Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure;

(b)    Conduct a jury trial on all issues so triable;

(c)    Enter an Order that, among other things, (i) requires Defendants to correct any databases or systems used to designate an address as residential; (ii) requires Defendants to eliminate and/or modify any policies and practices that repeatedly result in an improper residential delivery surcharge and (iii) enjoins Defendants from unlawfully charging Plaintiffs and the Class residential delivery surcharges and delivery area residential surcharges when they are not permitted;

(d)    Award Plaintiffs and the Class treble damages, attorneys' fees and expenses, together with interest and costs, and

(e)    Order any other relief it deems appropriate.

Respectfully submitted on December 10, 2012.

/s/ Steven Rosenwasser
Jeffrey O. Bramlett
Ga. Bar No. 075780
Steven J. Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
Manoj S. Varghese
Ga. Bar No. 734668
BONDURANT MIXSON
& ELMORE LLP
1201 W Peachtree St NW
Ste 3900
Atlanta, GA 30309
404-881-4100
bramlett@bmelaw.com
rosenwasser@bmelaw.com
ramachandrappa@bmelaw.com
varghese@bmelaw.com

Frank L. Watson, III
Tenn. Bar No. 15073
William F. Burns
Tenn. Bar No. 17908
WATSON BURNS, PLLC
253 Adams Ave
Memphis, TN 38103
901-529-7966
fwatson@watsonburns.com
bburns@watsonburns.com

61

Salu K. Kunnatha
Ga. Bar No. 430321
KUNNATHA LAW FIRM, PC
2970 Clairmont Rd Ste 905
Atlanta, GA 30329
404-633-4200
skk@kunnathalaw.com

*Attorneys for Plaintiff*
*Manjunath A. Gokare, P.C.*

## CERTIFICATE OF SERVICE

I certify that, on December 10, 2012, I served this **FIRST AMENDED COMPLAINT** by electronic mail using the Court's ECF system to the following attorneys of record:

      Richard R. Roberts
      Justin Ross
      Colleen H. Wilson
      Federal Express Corporation
      3620 Hacks Cross Rd
      Building B, Third Fl
      Memphis, TN 38125
      rrroberts2@fedex.com
      justin.ross@fedex.com
      chitchwilson@fedex.com

                                  */s/ Steven Rosenwasser*
                                  Steven Rosenwasser