**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| MANJUNATH A. GOKARE, P.C., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FEDERAL EXPRESS CORP., et al, | ) | Case No. 2:11-CV-02131 |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION TO DISMISS COUNT ONE OF THE FIRST AMENDED
COMPLAINT & SUPPORTING MEMORANDUM OF FACTS & LAW**

Defendants Federal Express Corporation ("Express") and FedEx Corporate Services, Inc.,

("Services") hereby move to dismiss Count One of the First Amended Complaint ("FAC") (DE

165) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which

relief may be granted.  In support of their Motion, Express and Services state as follows:

**INTRODUCTION**

Defendants Express and Services are subsidiaries of FedEx Corporation ("FedEx Corp."),

a well-respected, international transportation company providing consumers and businesses

worldwide with a broad portfolio of transportation, e-commerce, and business services.  The

Plaintiffs, Manjunath A. Gokare, P.C., and Goldstein Demchak Baller Borgen & Dardarian, P.C.,

accuse Express and Services of being racketeer-influenced and corrupt organizations pursuant to

the federal Racketeer Influenced and Corrupt Organizations Act ("RICO") based on allegations

of mail and wire fraud.  This "fraud," according to the Plaintiffs, consists of Express and

Services submitting shipping invoices to the Plaintiffs that clearly denote all charges assessed for

an Express delivery to the address indicated on the invoice.

At best, the allegedly unearned (albeit clearly disclosed) delivery charges give rise to a

1

breach-of-contract claim, which Plaintiffs also allege.  Accordingly, Count One, which asserts

RICO violations under 18 U.S.C. §§ 1962(a)-(c),[1] should be dismissed.  Specifically, Count One

fails to plead so much as a single, actual instance of misrepresentation by mail or wire.  Count

One should also be dismissed as it fails to include allegations sufficient to satisfy the

requirement, under § 1962(c) of RICO, that the alleged RICO persons be distinct from the

alleged RICO enterprise; fails to allege a sufficient RICO injury under either § 1962(a) or (b);

and fails to plead with particularity how any alleged misconduct on the part of the Defendants

resulted in any harm to the Plaintiffs.

## RELEVANT ALLEGATIONS

In the FAC, the Plaintiffs assert two claims against Defendants Express and Services: a

violation of RICO and a breach of contract.  (DE 165 ¶¶ 96-134)  FedEx Ground Package

System, Inc., ("Ground") is mentioned in the FAC but has not been included as a Defendant.

(*See, e.g.*, DE 165 ¶¶ 99, 103, 104, 106, 109)  The alleged misconduct centers on the residential-

delivery surcharges imposed by Express and Ground.  (*See* DE 165 ¶ 106)

According to the FAC, Express and Ground—sometimes using erroneous information

provided by Services—improperly impose residential-delivery surcharges for deliveries made to

non-residential addresses.  (*See* DE 165 ¶¶ 1, 3, 34, 106)  Specifically, the Plaintiffs allege that a

residential surcharge can be improperly imposed by one of the following three mechanisms:  (1)

Services' electronic "address checker" incorrectly designates a non-residential address as

"residential"; (2) a courier designates a non-residential delivery as "residential," thereby

---

[1] In shotgun fashion, the Plaintiffs allege that the "Defendants have violated 18 U.S.C. §§ 1962(a)-(c)."  (DE 165 ¶ 113)  Each of these subsections, though, has distinct requirements.  Part II addresses the failure of the RICO claim under 18 U.S.C. § 1962(c).  Part III addresses the failure of the RICO claim under 18 U.S.C. §§ 1962(a) and (b).

avoiding a signature requirement; or (3) a customer mistakenly designates a non-residential delivery as "residential" on the shipping form.  (DE 165 ¶¶ 34, 37, 38)  The Plaintiffs assert that these improper charges constitute fraud and that, because the alleged fraud was perpetrated using the mail and the wires, RICO is implicated.  (DE 165 ¶ 14)

The alleged RICO "persons" include Defendants Express and Services.  (DE 165 ¶ 99)  While alleged to be a "person," Ground is not a defendant to the litigation.  (*See* DE 165 *generally*)  The enterprise is alleged to be an association-in-fact, consisting of Defendants Express and Services, and some undisclosed "others."[2]  (DE 165 ¶ 100)  FedEx Corp., who is not a party, is alleged to be the parent of Express, Services, and Ground.  (DE 165 ¶¶ 18-20)

The FAC also asserts that Express, Services, and Ground are separately incorporated and "distinct" from each other and that Express and Ground are "distinct" from FedEx Corp.  (DE 165 ¶¶ 18-20)  The FAC further alleges that Express, Services, and Ground do not share principal officers either with each other or with FedEx Corp.  (DE 165 ¶¶ 18-20)  Additionally, FedEx Ground is alleged to have its headquarters in a separate state from those of Express and Services and is noted to have been acquired and rebranded by FedEx Corp. more than a decade ago.  (DE 165 ¶ 19)  Express and Ground are alleged to be air and motor carriers, respectively.  (DE 165 ¶ 40)

---

[2] The Court should be aware that the FAC as filed (DE 162 (redacted) & DE 165 (unredacted)) differs from the proposed FAC attached to the Plaintiffs' Supplemental Motion to Amend/Correct (DE 131-1).  Accordingly, the Plaintiffs have failed to comply with this Court's Order (DE 159), which provided that "[t]he Amended Complaint attached as Exhibit 1 to Plaintiff's Supplement to Motion to Amend shall be properly filed in accordance with the Local Rules and afterward deemed the applicable complaint in this proceeding").  (DE 159 at 2)  In the proposed FAC, the Plaintiffs expressly included FedEx Ground as part of the "enterprise."  (DE 131-1 ¶ 100)  In the FAC actually filed, however, the "Defendants, and others" purportedly make up the "enterprise"; FedEx Ground is not named.  (DE 165 ¶ 100)  In later paragraphs, however, the FAC treats FedEx Ground as though it was part of the alleged enterprise.  (*See, e.g.*, DE 165 ¶¶ 103, 106)  The Plaintiff's "enterprise" allegations are thus a moving target.

The FAC offers four specific instances whereby Express allegedly imposed improper residential surcharges on the Plaintiffs.  (DE 165 ¶¶ 66, 70, 77, 79)  The FAC, however, does not state how these four shipments came to be designated as "residential"—i.e., based on Services' database, a courier's designation, or the Plaintiffs' own notation on the shipping form.  (*See* DE 165 ¶¶ 65-80)

## STANDARD OF REVIEW

"When considering a motion to dismiss, [the Court] must accept as true any well-pleaded factual allegations in the plaintiff's complaint, but [it] need not accept any legal conclusions or unwarranted factual inferences."  *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 607 (6th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  Thus, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Additionally, . . . even though a complaint need not contain 'detailed' factual allegations, its factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true."  *Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (citations and quotations omitted)

Moreover, in addition to being pleaded with the specificity required by Federal Rule of Civil Procedure 9(b), "RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it."  *W. Assocs. Ltd. P'ship v. Market Square Assocs.*, 235 F.3d 629, 637 (D.C. Cir. 2001).  Accordingly, "[b]ecause of the opprobrium that a RICO claim brings to a defendant, however, courts should eliminate frivolous RICO

claims at the earliest stage of litigation." *Durant v. Servicemaster Co.*, 159 F. Supp. 2d 977, 981 (E.D. Mich. 2001).

## ARGUMENT

Count One of the FAC, asserting a RICO violation, should be dismissed because (1) the Plaintiffs have failed to allege any fraud; (2) the Plaintiffs have failed to allege a RICO "person" distinct from the RICO "enterprise" for purposes of § 1962(c); (3) the Plaintiffs have failed to allege a sufficient RICO injury for purposes of § 1962(a) or (b); and (4) the Plaintiffs have failed to plead with particularity how any alleged misconduct on the part of the Defendants resulted in any harm to the Plaintiffs.

### I.    The Plaintiffs have not alleged an underlying predicate act of fraud.

As an initial matter, the FAC fails to allege the requisite underlying predicate acts of mail or wire fraud.  To properly assert a RICO claim, a plaintiff must allege a "pattern of racketeering activity," which is comprised of at least two predicate acts.  *See Brown v. Cassens Trans. Co.*, 546 F.3d 347, 352 (6th Cir. 2008).  In this case, the Plaintiffs assert that Express and Services have engaged in mail and wire fraud in violation of 18 U.S.C. §§ 1341, 1343.  (DE 165 ¶¶ 111, 115)  Mail fraud consists of "(1) a scheme to defraud, and (2) use of the mails in furtherance of the scheme."  *U.S. v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005).  The elements of wire fraud are essentially the same except that one must use the wires in furtherance of the scheme to defraud.  *U.S. v. Daniel*, 329 F.3d 480, 486 n.1 (6th Cir. 2003).  "A scheme to defraud includes any plan or course of action by which someone uses false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of money."  *Jamieson*, 427 F.3d at 402.

On the other hand, a "scheme to defraud" does not include activities that amount to a simple breach of contract.  *See Blount Fin. Services, Inc. v. Walter E. Heller and Co.*, 819 F.2d

151, 153 (6th Cir. 1987) (dismissing the RICO claim because "the fact that the defendant charged too high a 'prime rate' and thereby concealed or refused to disclose what the plaintiff considers the true prime rate called for under the contract, does not give rise to a valid claim for fraud" and that "[i]n this business setting, [the plaintiff] at most has a breach of contract action"); *Kolar v. Preferred Real Estate Inv., Inc.*, 361 Fed. Appx. 354, 363-64 (3d Cir. 2010) (noting that claims that defendants "diverted and/or misappropriated monies," "even if wrongful as a matter of contract or other state law," were not fraudulent and cannot be "transmute[d] [] into RICO claims by simply appending the terms 'false' and 'fraudulent'"); *see also U.S. v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980) ("[T]he [mail fraud] statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract. Its condemnation of a 'scheme or artifice to defraud' implicates only plans calculated to deceive.").

Far from alleging an actionable "scheme to defraud," the FAC, at most, alleges that Express breached its contract. The FAC asserts that Express (and Ground) "enter into contracts with customers that include the provisions under which the enterprise charges the fraudulent residential delivery surcharges." (DE 165 at ¶ 106) Nothing about the contract is alleged to be "false, deceptive or fraudulent." (*See* DE 165 *generally*) In fact, the contract states that residential surcharges may be applied in certain circumstances. (1/1/10 FedEx Service Guide at 99; 1/3/11 FedEx Service Guide at 113; 4/11/11 Service Guide at 113, attached hereto as Ex. A)[3] If the Plaintiffs believed that a residential surcharge was inappropriately applied to their

---

[3] The Court may consider the Service Guides governing the shipments in question without converting the Defendants' Motion to Dismiss to one for summary judgment. The FAC directly references the 2010 and 2011 Service Guides, and puts their terms at issue. (DE 165 ¶¶ 74, 82) *See Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto . . . and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.").

shipments, then the contract provides a procedure for challenging that surcharge.  (Ex. A at 106, Sec. L; 120, Sec. L; 120, Sec. L) The availability of this procedure was clear; indeed, the Plaintiffs availed themselves of the procedure on multiple occasions.  (*See* DE 165 at ¶¶ 68, 72, 81)

If Express, pursuant to this procedure, failed to refund the residential surcharge on a package that was not delivered to a residence, then the Plaintiffs may have a breach-of-contract claim.  Indeed, the Plaintiffs have alleged a breach-of-contract claim (DE ¶¶ 131-34).  But a simple breach of contract does not amount to a scheme to defraud actionable under RICO.

*Braswell Wood Co., Inc. v. Waste Away Group, Inc.*, No. 2:09-CV-891, 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010), is factually similar to this case and clearly illustrates how a plaintiff cannot manufacture a RICO claim out of what should be a simple breach-of-contract case.   In that case, the plaintiff asserted that the defendant, a waste-management group, improperly collected various surcharges and fees "pursuant to a provision in the contract allowing surcharges for 'increased costs' in certain delineated circumstances, such as 'changes in local, state or federal laws or regulations; imposition of taxes, fees or surcharges; the closure or heavy maintenance of roads used to provide service; and acts of God such as floods, fires, etc.'" *Id.* at *2.  According to the plaintiff, the defendant's surcharges were not assessed in accordance with the contract provisions but were "levied as a simple percentage of customers' bills, [] without relation to [the defendant's] actual costs."   *Id.*   The plaintiff asserted mail- and wire-fraud claims stemming from those improper surcharges.

The court, however, rejected the plaintiff's argument, dismissing the RICO allegations and finding that the invoices, even if they included improper charges, were not fraudulent:

> [The plaintiff] argues that because the fuel and landfill surcharges levied did not correspond to actual increased charges specific to each route, the entire surcharge

system was a fraudulent scheme, and this language, accompanied with the invoices on which the surcharges appeared, constituted misrepresentations. But, even accepting that the charges were not in accord with the contract, [the plaintiff's] definition of a "misrepresentation" is exceptionally broad. The contract provided for certain types of charges. **The fact that those charges were possible via the terms of the contract cannot have been a misrepresentation in itself. Invoices received by customers reflected that those charges had been levied in various amounts.** **Neither was that a misrepresentation; it was entirely true that WM was levying fuel, landfill, and other surcharges in those amounts.** **Whether those amounts were appropriate or correct under the contract was another matter, but every incipient billing dispute is not a "misrepresentation" from the time a bill is mailed to a customer, even if the customer ultimately prevails on the merits of the dispute.** If, for example, a customer had demanded an explanation of the charges, and WM had responded with false assertions about the costs of fuel it had incurred, that would be closer to a cognizable misrepresentation. **But to hold that a wrongfully charged fee constitutes, in itself, a misrepresentation, would be to broaden the word's meaning, and the reach of RICO, past the point of meaning**. Accordingly, no misrepresentation sufficient to state claims for mail fraud or wire fraud as predicate acts has been alleged.

*Id.* at *4.

As in *Braswell Wood Co.*, the Plaintiffs here claim that a residential surcharge—clearly noted on the allegedly "fraudulent" invoice—somehow constitutes a misrepresentation giving rise to a mail- or wire-fraud claim under RICO. Where there is no deception, however, there can be no fraud: "A scheme to defraud involves '[i]ntentional fraud, consisting in *deception* intentionally practiced to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 513 (6th Cir. 2010) (emphasis added); *see also U.S. v. Van Dyke*, 605 F.2d 220, 225 (6th Cir.), *cert. denied*, 444 U.S. 994 (1979) (noting that the 6th Circuit has held that a scheme to defraud must involve "misrepresentations or omissions *reasonably calculated to deceive persons* of ordinary prudence and comprehension" (emphasis added)). The charges assessed, improper or not, were clearly denoted on the invoice; there was no deception on the part of either Express or Services.

*Kevelighan v. Trott*, from the Eastern District of Michigan, is likewise instructive here. 771 F. Supp. 2d 763 (E.D. Mich. 2010).  In that case, the plaintiffs filed a purported class action alleging, among other things, that the defendants fraudulently collected improper attorney fees. *Id.* at 766.  They asserted multiple claims, including violations of RICO.  *Id.*  Specifically, the plaintiffs alleged that the defendants engaged in mail fraud "by sending billing notices that attempted to collect excessive attorney fees and/or repayment of advances not yet due."  *Id.* at 778.  The court, however, dismissed the RICO claims, finding that the plaintiffs' claims sounded in contract: "The parties simply dispute, under the relevant mortgage terms, the amount of attorney fees that can be charged and when repayment of advancements become due.  Plaintiffs cannot transform these claims into RICO claims by merely alleging that the purported attempts to breach the mortgage terms were done 'fraudulently.'"  *Id.* at 778.

Similar results have been reached in similar cases.  *See C&L Ward Bros. v. Outsource Solutions, Inc.*, No. 11-cv-14773, 2012 WL 3157005, *5 (E.D. Mich. Aug. 3, 2012) (dismissing plaintiff's RICO claims because they "do not allege fraudulent activity, rather plaintiff claims that defendants billed plaintiff for tax related services at a rate that was not agreed to by the parties.  However, ***sending billing invoices which erroneously apply a charge for tax related services under the terms of a contract does not amount to fraud.***" (emphasis added)); *Renaissance Ctr. Venture v. Lozovoj*, 884 F. Supp. 1132, 1144, 1146 (E.D. Mich. 1995) (granting summary judgment on RICO claim where "electric statements clearly explained how the rates were calculated . . . thus, there was nothing deceptive" about the invoices; "[t]here were no misrepresentations or omissions in the electric statements"; "Plaintiffs' allegations state at most, a breach of contract claim and do not give rise to a RICO action").  The message of these cases is clear: A billing dispute does not give rise to a RICO claim.  Accordingly, if FedEx improperly

9

imposed and retained a residential surcharge, the Plaintiffs' proper cause of action is a breach-of-contract claim, not a RICO claim.

Moreover, the Plaintiffs were "in as good a position" (if not better) as the Defendants to determine whether the various shipping addresses were, in fact, non-residential and assess the validity of the charges imposed. *Blount*, 819 F.2d at 153; *see also Renaissance Ctr. Venture*, 884 F. Supp. at 1145-46 (following *Blount* and granting summary judgment for defendants on RICO claims where plaintiffs were in as good a position to discover the actual metering and rates). In fact, the Plaintiffs repeatedly asserts that residential surcharges were imposed on addresses that were "*clearly*," "*obviously*" or "*on [their] face*" non-residential.[4] (*See, e.g.*, DE 165 ¶¶ 4, 6, 7, 8, 67, 71, 78, 80 (emphasis added)) The Defendants neither misrepresented nor concealed any charges, as the air-bills correctly denoted the charges being imposed, and the Plaintiffs were perfectly equipped to assess the validity of those charges.[5] Count One should be dismissed.

---

[4] Moreover, Plaintiffs' counsel recently asserted publicly that the impropriety of the fees was obvious: "We allege that FedEx has and continues to engage in a pattern of intentionally charging its customers residential delivery fees for deliveries to obviously non-residential addresses such as courthouses, government offices and banks." http://www.bloomberg.com/news/2012-12-11/fedex-overcharged-customers-for-years-sealed-e-mail-says.html (quoting Steven J. Rosenwasser).

[5] Indeed, because the FAC alleges no misrepresentations—much less the time, place and contents of any such misrepresentation—Count One should be dismissed for the additional reason that it fails to satisfy the strictures of Federal Rule of Civil Procedure 9(b). *See Blount*, 819 F.2d at 152 ("Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant which the plaintiff relied on and the facts showing the plaintiff's reliance on defendant's false statement of fact."); *Brown*, 546 F.3d at 356 n.4 ("Federal Rule of Civil Procedure 9(b)'s requirement that [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake' has been applied to allegations of fraud made in support of a RICO claim. . . . Rule 9(b) has been construed to require a plaintiff to allege, at a minimum, 'the time, place and contents of the misrepresentation(s)." (quotations omitted)).

## II. **The Plaintiffs have failed to satisfy the RICO distinctness requirement.**

Section 1962(c) of RICO prohibits a "person" who is "employed by or associated with" an "enterprise" engaged in interstate commerce from conducting or participating "in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c).  The enterprise can be a "legal entity" such as an "individual, partnership, corporation, [or] association," or it can be an "associat[ion] in fact" made up of a "union or group of individuals." 18 U.S.C. § 1961(4).[6]

The Supreme Court explained in *Cedric Kushner Promotions, Ltd. v. King* that, "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." 533 U.S. 158, 158 (2001).  In other words, the *person* conducting the illegal acts must be separate from the *tool* by which those illegal acts are committed—the enterprise.

---

Moreover, because there is no misrepresentation alleged, the Plaintiffs have failed  to allege that they or anyone else actually relied on any alleged misrepresentation.  (*See* DE 165 *generally*).  Although it is not necessary that the Plaintiffs themselves relied on the alleged misrepresentation, someone must have relied upon some misrepresentation  somewhere.  *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 658 (2008) (noting that "a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud [cannot] prevail without showing that someone relied on the defendant's misrepresentations").  The FAC fails to allege any reliance at all, much less reliance sufficient to satisfy Rule 9(b).

[6] The statute provides that only a "union or group of individuals"—not entities—may associate in fact. 18 U.S.C. § 1961(4).  Therefore, Plaintiff's RICO claim should fail because the alleged enterprise consists of three *entities*, not three *individuals*.   While this application of RICO's plain language has been rejected, albeit without much analysis, by the Sixth Circuit—*Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio*, 900 F.2d 882, 887 (6th Cir. 1990) (citing *U.S. v. Huber*, 603 F.2d 387, 393-94 (2d Cir. 1979)—Defendants nevertheless preserve the argument as there is a split in authority.  *See, e.g., U.S. v. McClendon*, 712 F. Supp. 723, 730 (E.D. Ark. 1988) (rejecting *Huber* and holding that "If Congress wishes to expand the definition to include a 'group of corporations or other legal entities,' it can. This Court may not, consistent with constitutional standards.").

*See id.* at 165.  "Only 'persons' can be held liable for RICO violations; the 'enterprise' itself is not liable."  *Fleischhauer v. Feltner*, 879 F.2d 1290, 1296 (6th Cir. 1989); *see also Lorenz v. CSX Corp.*, 1 F.3d 1406, 1411 (3d Cir. 1993) (noting that the distinctness requirement is "consistent with the congressional purpose [of] punish[ing] criminals who infiltrate legitimate corporations, without punishing those corporations which may be the innocent victims of racketeering activity").  Thus, in order to sustain its RICO allegations, a plaintiff must allege that a "person," **distinct from the alleged enterprise**, used that enterprise in violation of RICO.

Despite the length of the FAC, it contains few allegations describing the purported enterprise.  The only allegation regarding the existence of an enterprise is contained in paragraph 100, which (in its filed form)[7] states that "Defendants, and others, associated in fact to form an enterprise . . . ."  (DE 165 ¶ 100)  The paragraph goes on to quote FedEx Corp.'s 10-K for the proposition that FedEx Corp. "'manage[s] [its] business as a portfolio.'"  (DE 165 ¶ 100, n.2 (quoting FedEx Corp. 2011 10-K))[8]  Those allegations establish that there is no distinct

---

[7] As noted, the FAC as filed differs substantively from the proposed FAC attached to the Plaintiffs' Motion to Amend.  (*See infra* n.2)  Of particular interest is the Plaintiffs' inability to settle on the alleged enterprise at issue here.  The Plaintiffs seem unsure of where, if anywhere, FedEx Ground should fit.  These alternations and the use of ambiguous terms like "others" demonstrate the artificiality of the alleged enterprise, and the Plaintiffs' difficulties in articulating a viable RICO claim.  Moreover, the inclusion of the vague term "others" should be disregarded by the Court, and the Plaintiffs should be held to what appears to be their definition of the "enterprise"—the Defendants.  (DE 165 ¶ 100)

[8] The 2011 10-K also notes that "FedEx was incorporated in Delaware on October 2, 1997 to serve as the parent holding company . . . [and] provide strategic direction to the FedEx portfolio of companies. We intend to continue leveraging and extending the FedEx brand and providing our customers with convenient, seamless access to our entire portfolio of integrated services." And that FedEx Corp. "provide[s] a broad portfolio of transportation, e-commerce and business services through companies competing collectively, operating independently and managed collaboratively, under the respected FedEx brand." *See http://investors.fedex.com/pho enix.zhtml?c=73289&p=IROLsec&secCat01Enhanced.7_rs=41&secCat01Enhanced.7_rc=10.*

enterprise because all of the "persons" identified are corporate affiliates of each other and, according to the allegations, share a single corporate consciousness.

Under well-settled Sixth-Circuit law interpreting RICO, corporate affiliates are not considered to be distinct persons for the purpose of alleging an enterprise. *See, e.g.*, *Shields v. UnumProvident Corp.*, 415 Fed. Appx. 686, 691 (6th Cir. 2011) ("[A] corporation may not be liable under § 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members.  Thus, '[a]n organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself.'" (citation omitted)); *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 377 (6th Cir. 1993) ("[F]or purposes of section 1962(c), a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise.  Under the 'non-identity' or 'distinctness' requirement, a corporation may not be liable under section 1962(c) for participating in the affairs of an enterprise that consists only of its own subdivisions, agents, or members.  An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself." (citations omitted)).  On this point, the law of the Sixth Circuit is consistent with the law of the other federal circuit courts. *See, e.g., Discon, Inc. v. NYNEX Corp*., 93 F.3d 1055, 1063-64 (2d Cir. 1996), *vacated on antitrust grounds*, 525 U.S. 128 (1998); *Lorenz*, 1 F.3d at 1413; *Atkinson v. Anadarko Bank & Trust Co.*, 808 F.2d 438, 440-41 (5th Cir. 1987).

This distinctness principle has indeed been applied in cases very similar to this one.  For instance, in *Atkinson*, a RICO claim was asserted against a bank for "the mailing of false statements requesting payment of interest in excess of the agreed amount."  808 F.2d at 441.  The Plaintiffs alleged that the enterprise was an association-in-fact between the bank, its holding

company, and three of the bank's employees.  *Id.* at 440.  The Fifth Circuit held that the "Plaintiffs wholly failed to establish the existence of any entity separate and apart from the bank" because there was no "evidence that the bank, its holding company, and the three employees were associated in any manner apart from the activities of the bank." *Id.* at 441.[9]  Specifically, the Court noted that "[t]he mailing of loan statements was an activity of the bank."  *Id.*

The reasoning of the *Atkinson* court applies with equal force here.  The alleged association-in-fact is among corporate affiliates, as Express and Services are all wholly-owned subsidiaries of FedEx Corp.  (DE 165 ¶¶ 18-20)  There is no allegation that these entities are associated with each other apart from their conduct of business under the umbrella of FedEx Corp.  After all, the alleged racketeering activity is the mailing of invoices that are alleged to contain incorrect charges.  That activity, like the activity at issue is *Atkinson*, is an ordinary business activity of FedEx.  Accordingly, the alleged enterprise in this case is not distinct from the ordinary business operations of FedEx.  In the absence of an alleged enterprise distinct from FedEx business, the RICO claim must be dismissed.

Such a dismissal would be consistent with the decisions of other courts addressing this issue.  *See, e.g.*, *Discon*, 93 F.3d at 1064 (distinctiveness requirement not satisfied where the three corporate defendants constituted the alleged enterprise; though three separate legal entities, the three affiliates "operate[d] within a unified corporate structure."); *Lorenz*, 1 F.3d at 1413

---

[9] Indeed, the court's decision in *Atkinson* reflects a general understanding that an entity's decision to utilize subsidiaries, as opposed to divisions, should not expose it to RICO liability where separation by divisions would not.  The threat of a RICO action should not dictate corporate structure.  *See Emery v. Am. Gen. Fin., Inc.*, 134 F.3d 1321, 1324 (7th Cir. 1998) (holding that no goal or policy of RICO is satisfied by imposing liability on parent when "[t]here is no allegation that by using subsidiaries rather than divisions the [enterprise] somehow made it easier to commit or conceal the fraud"); *see also*, *Fitzgerald v. Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997) (noting that RICO was not meant to encourage vertical integration).

("After reviewing the amended complaints and RICO case statement, we conclude that the plaintiffs have failed to allege sufficient facts to show that defendants CSX and C & O are distinct entities from the alleged enterprise consisting of their subsidiary B & O. The district court correctly dismissed the RICO claims."); *Blue Cross & Blue Shield of N.J., Inc. v. Philip Morris, Inc.*, 113 F. Supp. 2d 345, 366 (E.D.N.Y. 2000) ("Subsidiaries and other affiliates of a parent corporation—alone or together with the parent corporation—do not constitute a RICO enterprise distinct from the parent corporation") *see also Global Oil Tools, Inc. v. Barnhill*, No. 12–1507, 2012 WL 5866139, *10 (E.D. La. Nov. 19, 2012) (finding that "listing a corporation as a RICO defendant and as part of a RICO association-in-fact enterprise violates the person/enterprise distinction that is required by 28 U.S.C. § 1962(c), which requires that an 'enterprise [ ] be more than an association of individuals or entities conducting the normal affairs of a defendant corporation.'" (quoting *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 447 n.16 (5th Cir. 2000))).

The Plaintiffs attempt to evade the clear import of this well-settled law by engaging in artful pleading. First, the FAC declines to name the parent entity, FedEx Corp., as a defendant in the case. Nevertheless, the FAC clearly alleges that the purported enterprise is part of FedEx Corp.'s business. (*See* DE 165 ¶¶ 100-07); *see Shields*, 415 Fed. Appx. at 691 ("An organization cannot join with its own members to undertake regular corporate activity and thereby become an enterprise distinct from itself."). Second, the Plaintiff appears to think that it need only assert that Express and Services are "distinct" from each other or that they had a "distinct role" in the alleged misconduct to satisfy the distinctness requirement. (*See* DE 165 ¶¶ 18, 20, 39-46) RICO, however, requires that the alleged wrongdoers be distinct from the *enterprise* itself—not just from each other. *Dopp v. Loring*, 54 Fed. Appx. 296, 298 (10th Cir. 2002) (noting that a

15

plaintiff "must show that the [] individual defendants were part of an enterprise which had an existence and purpose *distinct from any one of them* to establish [RICO] liability.  RICO liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their *own* affairs." (citation and quotations omitted)).  Because the Defendants are not alleged to have an "existence and purpose distinct" from their conduct of certain types of business under the umbrella of FedEx Corp., the Plaintiffs' artful "distinctness" allegations do not satisfy RICO's actual distinctness requirement.

In sum, the FAC alleges that Express and Services, "operate within a unified corporate structure" and are guided by a "single corporate consciousness"—all provided by FedEx Corp.  *Discon*, 93 F.3d at 1064.  Accordingly, they are not "distinct" from the alleged enterprise, and the RICO claim fails the requirements of 1962(c).

### III.    The Plaintiffs have failed to assert allegations sufficient to sustain a claim under either 18 U.S.C. §§ 1962(a) or (b).

In addition to § 1962(c), the FAC pleads, in conclusory fashion, that the Defendants have violated §§ 1962(a) and 1962(b).  (DE 165 ¶ 113)  There are, however, no factual allegations of "use" or "investment" necessary under § 1962(a) or the acquisition of interest or control as required by § 1962(b).  Moreover, the Plaintiffs have failed to allege that they were "injured in [their] business or property *by reason of*" any violation of §§ 1962(a) or 1962(b).  18 U.S.C. § 1964(c) (emphasis added).  In the absence of such allegations, the Plaintiffs have failed to state a RICO claim under 18 U.S.C. §§ 1962(a) or (b).

First, the FAC does not contain any factual allegations that would support a claim under §§ 1962(a) or (b).  To state a violation of § 1962(a), the complaint must allege that the defendant used or invested "income derived from a pattern of racketeering activity to acquire, establish or operate an enterprise."  *BancTraining Video Sys. v. First Am. Corp.*, No. 91-5340, 1992 WL

16

42345, *5 (6th Cir. Mar. 3, 1992) (citing 18 U.S.C. § 1962(a)).  The FAC, however, does not allege that either Express or Services used any income derived from a pattern of racketeering activity to "acquire, establish or operate an enterprise."[10]  (*See* DE 165 *generally*)  Likewise, to state a violation of § 1962(b), the complaint must contain factual allegations that the defendant acquired "an interest in or control of an enterprise through racketeering activity."  *Id.* at *5 (citing 18 U.S.C. § 1962(b)).  The FAC does not allege that either Services or Express acquired "an interest in or control of an enterprise through racketeering activity."  (*See* DE 165 *generally*)

Second, the FAC does not assert that the Plaintiffs were injured *by reason of* either a § 1962(a) or § 1962(b) violation as required by § 1964(c).  *Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 330-31 (6th Cir. 1999) ("The civil remedy created by § 1964(c) authorizes recovery only for injury that a plaintiff suffers 'by reason of' the RICO violation; therefore, a complaint for violation of § 1962(b) must allege an 'acquisition or maintenance' injury **separate and apart from the injury suffered as a result of the predicate acts of racketeering activity**." (emphasis added)).

Instead, the FAC only asserts that the Plaintiffs' injuries "flow directly from . . . Defendants' pattern of racketeering activity."  (DE 165 ¶ 128)  In other words, all alleged harm stems from the purported predicate acts.  Based on that allegation, Plaintiffs have failed to state a cognizable injury from a violation of § 1962(a) or § 1962(b).  *See Craighead v. E.F. Hutton & Co., Inc*., 899 F.2d 485, 494 (6th Cir. 1990) (stating that plaintiffs' § 1962(a) claim fails "because they have not alleged injuries stemming directly from the defendants' alleged use or

---

[10] Indeed, the FAC inconsistently asserts that the Defendants (plural) "obtained money through illegal means," (DE 165 ¶ 123), while simultaneously alleging that only Services is responsible for billings and collections (DE 165 ¶ 107).  Moreover, given that Express and Services are subsidiaries of FedEx Corp., it is implausible that either entity actually retains any proceeds.

17

investment of their illegally obtained income.  Unlike section 1962(c), subsection (a) **requires such a separate and traceable injury**, and plaintiffs have alleged only injuries traceable to the alleged predicate acts" (emphasis added)); *Auto Club Ins.*, 176 F.3d 315 at 330 (A "plaintiff cannot simply allege that she was injured by the underlying acts of mail fraud and extortion. Rather, she must allege that she was injured by a violation of § 1962(b)." (citation omitted)). Dismissal of these claims is therefore required.  *See id.* (citation omitted).

Because the Plaintiffs have not stated a violation of § 1962(a) or § 1962(b)—and because the Plaintiffs failed to allege the requisite distinctness to state a violation of § 1962(c)—the Plaintiffs' RICO claim should be dismissed in its entirety.

### IV. The Plaintiffs have failed to link any alleged misconduct to a package that they actually shipped.

Finally, the RICO claim should be dismissed because the Plaintiffs have failed to link any package that they shipped to any alleged misconduct on the part of the Defendants.

The FAC alleges that a residential surcharge could be imposed in one of three ways: (1) if the address is labeled as residential in the database used by FedEx (DE 165 ¶ 34); (2) if the FedEx courier marks the address as residential (DE 165 ¶ 37); or (3) if the shipper marks the address as residential (DE 165 ¶ 38).  All of these impositions are not created equal.  If a shipper itself designated a non-residential address as residential, for instance, then it should be estopped from claiming that FedEx breached its contract.

The Plaintiffs, however, provide no information regarding the cause of their allegedly improper surcharges—making their allegations insufficient under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and woefully insufficient under the heightened-pleading standards of Fed. R. Civ. P. 9(b).  *Twombly* requires "[f]actual allegations . . . to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are

true." *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 548.  Moreover, as noted, because the Plaintiffs are asserting allegations of fraud, the FAC must adhere to the heightened-pleading requirements of Federal Rule of Civil Procedure 9(b), which require that a plaintiff allege the time, place, and contents of any alleged misrepresentations.  *See Blount*, 819 F.2d at 152 ("Fraud alleged in a RICO civil complaint for mail fraud must state with particularity the false statement of fact made by the defendant . . . ."); *Brown*, 546 F.3d at 356 n.4 ("Federal Rule of Civil Procedure 9(b)'s requirement that [i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake has been applied to allegations of fraud made in support of a RICO claim. . . . Rule 9(b) has been construed to require a plaintiff to allege, at a minimum, the time, place and contents of the misrepresentation(s)." (quotations omitted)).  The FAC does neither.

The FAC alleges only that Plaintiff Gokare shipped two packages that were coded residential to a government agency (DE 165 ¶¶ 66, 67, 70, 71) and that Plaintiff Goldstein shipped two packages that were coded residential to office buildings (DE 165 ¶¶ 77, 78, 79, 89).  The FAC does not allege how these packages came to be coded residential—by Services, by a courier, or by the Plaintiffs themselves.  Thus, while the FAC asserts that the Defendants "transmitted or caused to be transmitted an invoice . . . which fraudulently represented that [the Plaintiffs] owed FedEx [residential surcharges]" (DE 165 ¶¶ 67, 71, 78, 80), it does not allege that either Express or Services had anything to do with the actual imposition of those allegedly improper surcharges.  Furthermore, while the FAC contains extensive allegations regarding FedEx's knowledge of its flawed database, it alleges no connection between that flawed database and the Plaintiffs' injuries.

19

Accordingly, even if the application of a residential surcharge can constitute fraud, which the Defendants dispute (*see supra* Part I), there is no way to determine whether the Defendants had anything to do with the actual imposition of the surcharges at issue in this case.  Therefore, even taking allegations of the FAC as true, the Plaintiffs have failed to plead that the Defendants had any part in any alleged fraud with respect to their packages.  In the absence of such allegations, the Plaintiffs have no RICO claim against the Defendants.

## CONCLUSION

Count One of the FAC, alleging RICO, fails because (1) a potential breach-of-contract claim cannot be morphed into allegations of fraud for purposes of RICO liability; (2) it does not assert a RICO "person" distinct from the purported "enterprise" under 18 U.S.C. § 1962(c); (3) it does not allege facts or injury sufficient to support a claim under 18 U.S.C. §§ 1962(a) or (b); and (4) the Plaintiffs have failed to assert any allegations of fraud as to any specific packages it shipped.  Accordingly, Court One should be dismissed with prejudice.

Respectfully Submitted,

/s/ Colleen Hitch Wilson
RICHARD R. ROBERTS (TN Bar No. 15008)
Rrroberts2@fedex.com
JUSTIN M. ROSS (TN Bar. No. 19571)
justin.ross@fedex.com
COLLEEN HITCH WILSON (TN Bar No. 24127)
chitchwilson@fedex.com
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road, Building B, 3rd Floor
Memphis, TN  38125
Telephone:  (901) 434-8570
Fax:  (901) 434-9279

COUNSEL FOR FEDEX

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been served upon all counsel of record via the Court's electronic filing system this 27th day of December 2012.

/s/ Colleen Hitch Wilson
Colleen Hitch