# UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TENNESSEE

## WESTERN DIVISION

MANJUNATH A. GOKARE, P.C. and
GOLDSTEIN DEMCHAK BALLER
BORGEN & DARDARIAN, P.C.,
on behalf of themselves and a class of all
persons similarly situated,

             Plaintiffs,

v.

FEDERAL EXPRESS CORPORATION and
FEDEX CORPORATE SERVICES, INC.,

Defendant.

Civil Action File No.
2:11-CV-2131-JTF-CGC

CLASS ACTION
JURY TRIAL DEMANDED

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT ONE OF THE FIRST AMENDED COMPLAINT

## INTRODUCTION

Plaintiffs' First Amended Complaint ("FAC") alleges a pattern of mail and wire fraud and states a claim under RICO, 18 U.S.C. § 1962(c).  The FAC alleges and Defendants' internal records confirm that Federal Express Corporation ("Express") and FedEx Corporate Services, Inc. ("Services") have, in tens of millions of cases, deliberately sent out bills charging fees for a "Residential Delivery" when they **know** they did **not** perform a Residential Delivery.[1]  In an August 2011 email, Services Sales Executive Alan Elam revealed that Defendants have regularly used such false statements for years:  "In fact, **FedEx has been systematically overcharging our customers for services that we know we did not provide, and we have been doing so for many years**."[2]  Defendants perpetrated this fraudulent scheme to skim unearned revenue from millions of Express customers, a few dollars at a time.

Defendants' Service Guides for the period from August 28, 2008 (the beginning of the Class Period) to July 13, 2011, define a "Residential delivery" as "a delivery to a home or private residence, including locations where a business is operated from the home."[3]  Every time an Express courier delivers a package, the courier determines whether or not the delivery is residential, enters that information into a device called a Power Pad, and electronically transmits that information – known as the "Resi_Y/N" determination – to Defendants.[4]

Defendants' records reveal that from February 1, 2010 to August 31, 2012 (just a portion

---

[1] *See, e.g.*, FAC (Docket Entry ("DE") 172-1), Ex. E, at PageID3613-18 (bills charging for a "Residential Delivery"); *id.*, Ex. N, at PageID3671-74 (same).

[2] FAC (DE 172-1), Ex. B, at PageID3600 (emphasis added).

[3] *See, e.g.*, Ex. A (2008 Service Guide) at FEC2677; Ex. B (2009 Service Guide) at FEC2864; DE 24-5, Ex. E (1/4/10 Service Guide) at PageID346.  Defendants amended this definition after Plaintiffs sued, but continued charging Residential Delivery fees for non-residential deliveries.

[4] *See, e.g.,* Ex. C (Deposition of Danny Ducksworth) at 15-16; *id.* at 19 ("When you deliver a package to 68 Mitchell Street Southwest in Atlanta, Fed-Ex knows, because you've told them, that the delivery was not to a residential address?  A.  Correct."); Ex. D (Deposition of Henry Granville) at 7-8; Ex. E (Deposition of Kimberly Bennett) at 6, 10.

1042638.1

1

of the Class Period), there were at least **36 million** instances in which a courier informed

Defendants that a delivery was **not** residential, but Defendants went ahead and charged a

Residential Delivery fee anyway.[5]  These improper charges are not accidental, but rather the

result of a deliberate scheme.  As Elam wrote, Defendants "**ha[ve] many processes whereby**

**shipments are flagged as being delivered to residential addresses, when we have**

**information readily available in our own databases that shows that these addresses are *not***

**residential**."[6]  Defendants internally describe this scheme as a "REDACTED."[7]

Defendants move to dismiss based on the contention that as long as a charge is listed on a

bill, then as a matter of law, the charge may not form the basis of a mail or wire fraud claim.

That novel contention would shock the Department of Justice and the federal judiciary, who for

decades have secured and affirmed mail and wire fraud convictions and civil remedies where

defendants (*e.g.*, health care providers) have placed charges on bills and collected fees for

services they knew they did not perform.  As legions of cases that Defendants ignore attest, such

conduct constitutes fraud, not merely breach of contract.

Defendants would also like to escape liability by blaming their victims.  They contend

that customers could not have relied on false statements that Residential Deliveries had been

performed because the customers allegedly knew the deliveries were not residential.[8]  But even

Defendants are forced to admit – although they relegate their admission to a footnote – that this

theory is **not** a legal defense to a civil RICO action based on mail or wire fraud.  The Sixth

---

[5] *See* Ex. F (Declaration of David Loshin) ¶ 6; *see also* FAC ¶ 64.
[6] FAC (DE 172-1), Ex. A, at PageID3598 (emphasis added).
[7] Ex. G (emphasis added); *see* Ex. H (estimating over $ REDAC million in revenue for 2 years from shipments couriers designated as not residential); Ex. I (estimating $ REDACTED M in revenue for 1 year from such shipments); Ex. J (" REDACTED .").
[8] Defendants' own documents contradict this assertion.  Ex. K (" REDACTED ").

Circuit has stated, "In *Bridge [v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008)], the Supreme Court held that 'a plaintiff asserting a RICO claim predicated on mail fraud need not show, either as an element of its claim or as a prerequisite to establishing proximate causation, that it relied on the defendant's alleged misrepresentations.'" *Chaz Concrete Co. v. Codell*, 545 F.3d 407, 409 (6th Cir. 2008); *Grange Mut. Cas. Co. v. Mack*, 290 Fed. Appx. 832, 835 (6th Cir. 2008) ("plaintiffs are no longer required to allege reliance following *Bridge*"). Thus, aside from the absurdity of the idea that millions of customers knowingly paid fees that Defendants did not earn and customers did not owe, Defendants' assertions about what customers allegedly knew are irrelevant to this motion. The law is not, as Defendants wish, that a company may knowingly lie to customers, but avoid a mail or wire fraud claim by saying, "You should have caught me."

Defendants' "distinctness" argument is troubling and wrong. For years, Defendants and their parent, FedEx Corporation ("FedEx Corp"), have repeatedly sought to exculpate themselves from liability by representing to courts that they "are not the same corporation. They are separate and distinct entities." *Infra* at 18-19. Now, when that distinctness proves inconvenient, they tell a different story. Defendants neither explain their prior judicial admissions nor disclose that they recently lost a similar argument in another federal district court. The allegations in the FAC are more than sufficient to meet the Supreme Court's test for distinctness.

Defendants' next argument is misplaced. Plaintiffs do not assert a claim for relief under 18 U.S.C. § 1962(a) or (b).

Defendants' final argument – that "there is no way to determine whether the Defendants had anything to do with the actual imposition of the surcharges at issue in this case" – also fails. Mot. to Dismiss ("MTD") (DE 171) at 20. Defendants simply pretend that they had nothing to do with the improper Residential Delivery fees Plaintiffs paid. But the FAC alleges that

**Defendants** committed fraud by placing charges for Residential Deliveries on Plaintiffs' bills

when **Defendants** knew they had not performed Residential Deliveries.  As a result of

**Defendants'** misconduct in placing false charges on invoices, Plaintiffs were deprived of money.

## ALLEGATIONS AND FACTS

As Defendants' documents confirm, the FAC "contain[s] sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face'" and presents "more than a

sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).[9]  The FAC makes a more than

plausible case that Defendants have perpetrated a "scheme to defraud," which, as they admit,

"includes **any** plan or course of action by which someone uses false, deceptive, or fraudulent

pretenses, representations, or promises to deprive someone else of money."  MTD at 5 (*quoting*

*United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005)) (emphasis added).

The FAC repeatedly alleges that Defendants have used false or deceptive representations

and pretenses to deprive customers of money.  For example, Paragraph 3 alleges that "[Express],

facilitated by [Services], has knowingly engaged in a pattern of charging residential delivery

surcharges for deliveries to certain addresses **it knows are not residential**."  FAC ¶ 3 (emphasis

added).  The FAC contends that Defendants know from Express couriers that addresses are not

residential and that couriers have not performed Residential Deliveries, *see, e.g.*, FAC ¶¶ 5, 46,

---

[9] *Twombly's* plausibility requirement "calls for enough fact to raise a reasonable expectation that
discovery will reveal evidence" supporting a complaint.  550 U.S. at 556.  Here, unlike the
typical case in which a motion to dismiss is filed before discovery, the Court need not speculate
on that issue.  Plaintiffs cite just some of the discovery they have obtained to show that it reveals
evidence that supports the FAC and that, while unnecessary, Plaintiffs could amend the FAC to
include the contents of the cited documents.  Plaintiffs do not ask the Court to consider the merits
of this evidence, but only to view it in connection with *Twombly's* plausibility requirement.  For
that reason, Plaintiffs also do not ask that the Court convert the motion to dismiss to a motion for
summary judgment, especially since discovery is ongoing.

1042638.1

but nevertheless engage in the **false pretense** and make the **false representation** on customers' bills that a Residential Delivery has been performed.  *See, e.g.*, FAC ¶¶ 13, 46, 113-14, 130.

In addition to alleging fraud on customer bills, the FAC alleges that Defendants employ systems for assessing Residential Delivery fees that are "riddled with" false pretenses.  FAC ¶ 35.  For example, Defendants' Enterprise Address Service ("EAS") employs the false pretense that if the United States Postal Service ("USPS") does not publish a street address, then the street address is residential.  FAC ¶¶ 36(a), 49.  But Defendants know that USPS has a policy of not publishing a street address if a **business** located at that address receives its mail at a Post Office box or central delivery location within a building.[10]  Even though (1) Defendants are aware of this policy and (2) every courier who makes a delivery to such a business knows that the street address is a **business** address, EAS falsely designates deliveries to such addresses as Residential Deliveries.  As Defendants' internal documents reveal,                        REDACTED                        [11]

Further, EAS employs the false pretense that if an address does not appear in a business database Defendants buy from Harte Hanks, then the address is residential.  FAC ¶¶ 36(b), 54. Defendants, however, have known for years that the Harte Hanks database omits many business addresses:                        REDACTED

"[12]  Defendants cannot deny that they use false pretenses when they internally

---

[10] Ex. L at FedEx  ED0002742 (EAS "                        REDACTED                        ")
("                        REDACTED

                        ").

[11] Ex. M at FEDEX_ED000275.
[12] Ex. N at FedEx_ED0002822 (emphasis added).

1042638.1

acknowledge that "                               REDACTED                               ,"
but they systematically classify addresses as residential based on such a failure to match.[13]

The FAC also alleges that Defendants use deception to induce customers to accept the
FedEx on-line address checker's false representations that business addresses are residential.
FAC ¶¶ 34-35 ("If the address checker service…classifies the address accepted by the customer
as residential, a residential delivery surcharge will be applied, regardless of whether the address
is, in fact, a residential address," although "the address checker service is riddled with instances
where non-residential addresses are improperly classified as residential").  Defendants tell
customers that the address checker can be used to determine whether an address is a residence or
a business[14] and state that "[r]esults provided by FedEx Address Checker **are believed to be
reliable**, but not guaranteed."[15]  In fact, Defendants **know** the address checker is not reliable:

REDACTED

[16]

REDACTED

Defendants compound their misconduct by employing the false pretense that when a
customer validates an address that **EAS** wrongly classifies as residential, the customer – rather
than Defendants – has designated the address as residential:

REDACTED

---

[13] FAC (DE 172-1), Ex. I, at PageID3640 (emphasis in original).
[14] *See, e.g.,* Ex. A (2008 Service Guide) at FEC2580 ("You can access FedEx Ship Manager at fedex.com 24 hours a day, 7 days a week to…determine if an address is commercial or residential."); Ex. B (2009 Service Guide) at FEC2761 (same).
[15] FAC (DE 172-1), Ex. G, at PageID3625 (emphasis added).
[16] Ex. O at FEDEX_ED0081474 (emphasis added).
[17] Ex. P at FEDEX_ED0002666 (emphasis added).

REDACTED

The assertion that the FAC does not allege a scheme to defraud is nonsense.  Plaintiffs allege that Defendants are knowingly cheating their customers to make money.  One employee framed the problem succinctly:  REDACTED

,,[19]

## ARGUMENT AND CITATION OF AUTHORITY

### I.  THE FAC STATES CLAIMS FOR MAIL AND WIRE FRAUD UNDER RICO.

Under well-established law from the Supreme Court, Sixth Circuit, and other Circuits, the FAC's allegations that Defendants sent out bills charging fees for services they knew they did not perform state claims for mail and wire fraud that may be prosecuted under RICO.  Beyond the FAC's allegations regarding false representations on bills, Plaintiffs' allegations regarding the many other false and deceptive pretenses Defendants employ to assess Residential Delivery fees are themselves sufficient to allege a scheme to defraud under Sixth Circuit law.

The law has long been that a defendant who uses the mails or wires to bill a party for a service the defendant knows it did not provide commits mail or wire fraud.  *See, e.g.*, *United States v. Russo*, 480 F.2d 1228, 1231 (6th Cir. 1973) (affirming mail fraud conviction based on "a scheme and artifice to defraud Blue Shield of Michigan…by filing claims for services not performed on patients on dates specified and for obtaining money from such organization by

---

[18] Ex. Q at FEDEX  ED0054951 (emphasis added); Ex. R at FEDEX  ED0025700 ("REDACTED

);

Ex. S (" REDACTED

.").

[19] Ex. T at FEDEX_ED0054948 (emphasis added).

false and fraudulent pretenses and representations well knowing at the time that the pretenses and representations would be and were false when made"); *United States v. Campbell*, 845 F.2d 1374, 1375 (6th Cir. 1988) (affirming mail fraud conviction and fines for "billing for treatments [defendant] either did not perform or were unnecessary"); *United States v. Harper*, 945 F.2d 405 (Table), 1991 WL 188165, at *1 (6th Cir. 1991) (defendants convicted of mail fraud for billing for "services that were either not medically necessary or that were never performed"); *United States v. Hodge*, 259 F.3d 549, 551 (6th Cir. 2001) (affirming mail fraud conviction where defendant "committed two kinds of fraud," one of which was "improperly bill[ing] insurance companies for services his facility did not provide"). The idea that the defendants in these cases should not have been convicted because they listed the charges at issue on their bills is absurd – that is how they perpetrated the fraud and obtained their victims' money. There simply is no rule that listing a charge on a bill immunizes a defendant from a charge of mail or wire fraud.

The Supreme Court has approved the use of RICO in civil actions charging defendants with mail or wire fraud based on allegations that the defendants billed for services they knew they did not provide. In a seminal RICO case, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), the Supreme Court rejected the position Defendants assert here – that RICO may not be used against "well-respected" businesses in "billing dispute[s]." MTD at 1, 9. In *Sedima*, the Court reversed the dismissal of a civil RICO complaint that was based on allegations that the defendant had engaged in mail and wire fraud by "presenting inflated bills" and "collecting for nonexistent expenses," thereby "cheating the plaintiff." The Court stated:

> Underlying the Court of Appeals' holding was its distress at the "extraordinary, if not outrageous," uses to which civil RICO has been put. Instead of being used against mobsters and organized criminals, it has become a tool for everyday fraud cases brought against "respected and legitimate 'enterprises.'" Yet Congress wanted to reach both "legitimate" and "illegitimate" enterprises. **The former enjoy neither an inherent incapacity for criminal activity nor immunity from its consequences**. **The fact that**

**§ 1964(c) is used against respected businesses allegedly engaged in a pattern of specifically identified criminal conduct is hardly a sufficient reason for assuming that the provision is being misconstrued**.

*Id.* at 499 (citations omitted) (emphasis added).

Consistent with *Sedima*, the Circuit Courts recognize that RICO applies in civil cases alleging that a defendant has committed mail or wire fraud by billing for a service the defendant knows it did not perform.  For example, in *Grange*, which Defendants do not cite, the Sixth Circuit reversed the 12(b)(6) dismissal of a civil RICO complaint based on allegations that the defendant committed mail and wire fraud by "creat[ing] and implement[ing] multiple fraudulent schemes to bill Plaintiffs for medical treatments or supplies that were never rendered or supplied, were medically unnecessary or were billed unlawfully."  290 Fed. Appx. at 833.[20]  *See Int'l Floor Crafts, Inc. v. Dziemit*, 420 Fed. Appx. 6, 8 (1st Cir. 2011) (affirming jury verdict against defendant on civil RICO claim based on allegations she committed mail and wire fraud via participation in scheme that submitted bills "for partially or completely fake merchandise shipments"); *Kemp v. AT&T*, 393 F.3d 1354 (11th Cir. 2004) (affirming jury verdict against defendant on civil RICO claim based on allegations that defendant listed charges on telephone bills as charges for long distance service that were not for long distance service); *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 234 (2d Cir. 1999) (finding that defendants in civil RICO case committed mail and wire fraud by submitting "sham invoices" for sales that were not in fact sales, but reversing because RICO's continuity requirement was not met).

Under the foregoing authority and Federal Rule of Civil Procedure 8(d), which permits pleading in the alternative, Plaintiffs may assert RICO claims against both Defendants as well as breach of contract claims against Express.  Plaintiffs do not have a carrier contract with Services,

---

[20] Post-remand, in *Grange Mut. Cas. Co. v. Mack*, 2009 WL 1036092 (E.D. Ky. Apr. 17, 2009), the district court denied a motion to dismiss or for summary judgment in this billing fraud case.

1042638.1

so Defendants' erroneous argument that Plaintiffs may not assert a RICO claim against Services is in reality a claim that Services is immune from liability regardless of its misconduct.

Defendants ignore the foregoing decisions, including Supreme Court and Sixth Circuit authority, and seek dismissal largely on the basis of *Braswell Wood Co. v. Waste Away Group, Inc.*, 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010).  While *Braswell* is wrongly decided in light of established law and cites no authority supporting its conclusion that the defendant in that case made no misrepresentation, it is also inapplicable here; indeed, it shows why Plaintiffs **have** stated a claim.  The court in *Braswell* stated that "to hold that a wrongfully charged fee constitutes, **in itself**, a misrepresentation, would be to broaden the word's meaning, and the reach of RICO, past the point of meaning."  *Id.* at *4 (emphasis added).  But Plaintiffs do **not** argue that every "wrongfully charged fee" is a misrepresentation.  Rather, they argue, in accord with settled law, that when a defendant intentionally places an item on a bill charging a customer for a service the defendant **knows** it did not perform, the Defendant has made a false representation. *Int'l Floor Crafts*, 420 Fed. Appx. at 15 ("the evidence at trial reasonably supported a finding of RICO liability" because "a jury could have reasonably inferred from the circumstantial evidence that Dziemit actually knew that the invoices she mailed to IFC were fraudulent").

Moreover, in *Braswell*, "[t]he contract's vagueness [made] it even more difficult to understand how simply charging fees with names such as 'fuel surcharge,' 'environmental fee,' or 'landfill surcharge' could constitute fraudulent misrepresentations, given that those terms, and how they should be calculated, are not specifically defined in the contract as quoted by [plaintiff]."  2010 WL 3168125, at n.2.  Here, the opposite is true.  The Service Guides cited above clearly define a "Residential Delivery" as "a delivery to a home or private residence, including locations where a business is operated from the home."  *Supra* at 1.  Thus, a bill

charging for a "Residential Delivery" is and can only be a representation that Express made a delivery to a home or private residence.  In millions of cases, that representation is knowingly false as a courier has recorded that the delivery was **not** to a home or private residence.

Defendants also ignore the Sixth Circuit's ruling regarding misrepresentations on bills in *Dana Corp. v. Blue Cross & Blue Shield*, 900 F.2d 882 (6th Cir. 1990).  There, the plaintiff filed a civil RICO claim based on mail fraud alleging that the defendant, who was contractually required to bill the plaintiff for the "actual cost of incurred claims," made misrepresentations by not adjusting charges on its bills to account for rebates.  *Id.* at 884.  Relying on *Blount Fin. Servs., Inc. v. Heller & Co.*, 819 F.2d 151 (6th Cir. 1987), the district court dismissed under Rule 12(b)(6), holding that "[t]he complaint states a claim for breach of contract which cannot be converted to a RICO action merely by alleging fraud.  The complaint fails to plead facts from which a scheme or artifice to defraud could ultimately be determined to exist."  900 F.2d at 885.

The Sixth Circuit **reversed**:  "We hold that Dana made sufficient allegations of intentional fraud by Blue Cross to withstand a Fed.R.Civ.P. 12(b)(6) motion to dismiss, for the focus is upon the pleadings, not any proof or evidence.  ***Blount* does not stand for a blanket prohibition of RICO claims related to contract disputes**."  *Id.* (emphasis added).  Just as the complaint in *Dana* stated a claim of mail fraud by alleging that the defendant made "misrepresentations and omissions" when it placed charges on bills that it knew should be adjusted, the FAC here states claims of mail and wire fraud by alleging that Defendants made misrepresentations and omissions when they placed charges on bills for services they knew they had not performed.  *Id.*[21]  This is not a case like *Blount* (and the other cases Defendants cite) in

---

[21] The bills here contain material omissions, *e.g.*, omitting that a Residential Delivery was **not** performed and a courier told Defendants so.  *Kemp*, 393 F.3d at 1360 ("once AT&T included the

1042638.1

which the "plaintiff has not alleged with particularity **any** such false statement of fact…."  819 F.2d at 152 (emphasis added).  Plaintiffs allege that Defendants repeatedly made knowingly false statements that they had performed Residential Deliveries.  The fact that Defendants' bills successfully caused **millions** of customers to pay for Residential Deliveries that were never performed confirms that Plaintiffs have alleged a scheme to defraud that was calculated to deceive persons of ordinary prudence and comprehension.  *See Jamieson*, 427 F.3d at 416 ("the fact that more than 2,000 investors believed Jamieson's misrepresentations and invested with Liberte Capital indicates that Jamieson's scheme was effective enough to deceive 'persons of ordinary prudence and comprehension'").  While Defendants may argue that they did not intend to defraud anyone and that they honestly believed that millions of customers were knowingly and voluntarily choosing to pay for services that were not performed, *i.e.*, giving away money, a jury could readily conclude that these customers were the victims of intentional fraud.[22]

> *Dana* also rejects Defendants' claim that routine bills cannot form a basis for mail fraud:
>
> Blue Cross contends that the mailings, namely bills and invoices, were required by contract and would have been sent whether or not an alleged scheme existed….  Applying *Schmuck [v. United States*, 489 U.S. 705 (1989)], we hold that the 'routine'

---

LMAD charges in the section of its bill for long distance calls, it had the duty to correct the mistaken impression it had fostered that the LMAD debts were for long distance charges").
[22] *Dana* notes in dicta that "in *Blount* the fact that was allegedly misrepresented was a single figure readily ascertainable from a third party; in the instant case, Dana had no way to find out about rebates known only to Blue Cross."  *Id.* at 885-86.  There is no requirement (and *Dana* does not create one) that a misrepresentation be impossible to discover to support a charge of mail or wire fraud.  *See United States v. Kreimer*, 609 F.2d 126, 132 (5th Cir. 1980) (affirming mail fraud conviction and stating, "The victim's negligence is not a defense to criminal conduct.  The truth about virtually every scheme to defraud could be obtained if the gull were clever and diligent enough.").  As the Sixth Circuit has stated, a defendant charged with mail and wire fraud may not "escape liability 'on the ground that the other party failed to nose out the truth.'"  *United States v. Namer*, 149 Fed. Appx. 385, 401 (6th Cir. 2005) (citation omitted).  Moreover, *Dana* was decided before *Bridge* held that a plaintiff in a RICO action based on mail or wire fraud need not prove that it relied on a false statement.  Of course, here, all class members directly relied on Defendants' false statements when they paid fraudulent Residential Delivery charges based on Defendants' inclusion of such charges on their bills.

1042638.1

> mailings meet the standard for mail fraud.  The information about costs which is contained in these mailings is alleged to be untrue and a false representation.  **The fact that letters were required by the contract is not relevant; it is the content of those letters that makes them susceptible to the mail fraud statute**.

*Dana*, 900 F.2d at 886 (emphasis added).

Even if Defendants' bills were devoid of false representations and material omissions, Plaintiffs' mail and wire fraud claims could not be dismissed as a matter of law.  Plaintiffs' allegations that Defendants employ false and deceptive pretenses and representations throughout their system for classifying deliveries as residential or business, *supra*, at 5-7, are sufficient to state a claim.  *Dana* states:  "In *Schmuck* [ ], the Supreme Court held that to prove mail fraud, the mailings need not be an essential element of the scheme; it is sufficient that they be incident to an essential part of the scheme.  The Court noted that innocent mailings-ones that contain no false information themselves-can still be sufficient to be part of a mail fraud." *Id.* at 886.  And in *American Eagle Credit Corp. v. Gaskins*, 920 F.2d 352, 354 (6th Cir. 1990), the Court stated:  "It would seem, then, that if plaintiff had sufficiently pled a scheme to defraud, the fact that [defendant] used the mails only in order to collect the proceeds of the fraud through routine sales invoices would not defeat a claim for mail fraud."  The same is true here.

## II.  THE FAC'S ALLEGATIONS SATISFY RICO'S DISTINCTNESS REQUIREMENT.

Defendants' second argument fails because:  (1) the allegations in the FAC satisfy the Supreme Court's test for distinctness under RICO; (2) the argument presents a disputed factual claim – that Defendants and the enterprise are not distinct – that cannot be resolved on the pleadings; and (3) Defendants' factual claim contradicts the position they have taken for years.

In *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001), the Supreme Court held that "to establish liability under § 1962(c) one must allege and prove the existence of two distinct entities:  (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person'

1042638.1

13

referred to by a different name." Here, the FAC alleges that the liable RICO persons are Express and Services (Defendants) and that the RICO enterprise is an association-in-fact that includes Express, Services, and FedEx Ground Packaging Systems, Inc. ("Ground"). FAC ¶¶ 100, 103.[23]

*Kushner* establishes that the test for whether a RICO person and a RICO enterprise are distinct is whether the person and the enterprise are "**legally different entit[ies]** with different rights and responsibilities due to [their] different legal status." 533 U.S. at 163 (emphasis added). The Supreme Court expressly held that "**we can find nothing in the statute that requires more 'separateness' than that**." *Id.* (emphasis added).

The FAC satisfies this test because it alleges that the members of the enterprise are legally different entities that have different rights and responsibilities and are distinct from one another. FAC ¶ 104 ("[Express], [ ] Ground and [ ] Services are separately incorporated and operated independently and distinctly of one another"); *id.* ¶ 103 ("[Express], [ ] Ground and [ ] Services each play a separate, distinct and essential role in the operation of the enterprise."); *id.* ¶¶ 39-46 (describing each entity's role); ¶¶ 106-07 (same); *id.* ¶¶ 40, 42, 44, 108 (describing each entity's own business activities). Because Express and Services are separately incorporated, distinct companies, an association-in-fact of Express, Services, and Ground is not "simply [Express or Services] referred to by a different name." *Kushner*, 533 U.S. at 161. *Kushner* states that "incorporation's basic purpose is to create a distinct legal entity, with legal rights, obligations, powers, and privileges different from those of the natural individuals who created it,

---

[23] Defendants' claim that Plaintiffs shifted enterprise allegations is erroneous. MTD at 3 n.2 & 12-13. As set forth in Plaintiffs' Notice of Filing Corrected Amended Complaint (DE 172), at 1-2, Plaintiffs initially inadvertently filed a draft FAC rather than the FAC that was attached to their supplemental motion to amend and that the Court designated as the operative complaint. The correct FAC is filed at DE 172-1 and DE 173, is the only operative complaint, and contains the only enterprise allegations Plaintiffs have asserted. As their MTD reflects, Defendants realized Plaintiffs' mistake before filing the motion, but nevertheless chose to attack the enterprise allegations in the erroneously-filed complaint rather than the operative complaint.

who own it, or whom it employs." *Id.  Bates v. Northwestern Human Servs., Inc.*, 466 F. Supp.

2d 69, 82-83 (D.D.C. 2006), summarized *Kushner* as follows:

> *Kushner* merely states, without qualification, that Section 1962(c)'s distinctiveness requirement is satisfied when the alleged RICO person and the alleged RICO enterprise are "legally different entit[ies] with different rights and responsibilities due to [their] different legal status."  This conclusion applies equally well whether or not the RICO defendant alleged to be "employed by or associated with" the RICO enterprise is a natural person or a fictive legal entity such as a corporation.  *Kushner* itself states that an "incorporation's basic purpose is to create a distinct legal entity."…. *Kushner* thus stands most reasonably for the proposition that as long as the *same* corporation is not playing both the role of a person and an enterprise in a plaintiff's RICO claim, the distinctiveness requirement of Section 1962(c) is presumptively satisfied.

"[T]he fundamental principle articulated in *Kushner*" is "that so long as two entities 'are not

legally identical,' they are sufficiently distinct for one to be named as a RICO person and the

other as a RICO enterprise." *Id.*  The test is not, as Defendants imply, whether entities are

"corporate affiliates of each other" or "share a single corporate consciousness" or are conducting

"ordinary business activity."  MTD at 13-14.

Indeed, while Defendants fail to mention it, the court in *U1IT4LESS, Inc. v. FedEx Corp.*,

2012 WL 4459377 (S.D.N.Y. Sept. 25, 2012), recently relied on the separate incorporation of

Services and Ground to deny such arguments.  There, the plaintiffs filed a RICO claim based on

mail and wire fraud against FedEx Corp, Services, and Ground, naming Ground as the enterprise.

The defendants moved to dismiss, arguing that they were not distinct from the enterprise because

they are members of the same corporate family.  The district court held:  "As separately

incorporated legal entities, FedEx [Corp] and its subsidiaries FedEx Services and FedEx Ground

are each 'distinct legal entit[ies], with legal rights, obligations, powers, and privileges different

from' each other, just like a corporate owner/employee and the corporation itself….The logic of

*Cedric Kushner* thus renders plausible the conclusion that the FedEx Ground Enterprise is

distinct from FedEx [Corp] and FedEx Services." *Id.* at *8 (*quoting Kushner*).

1042638.1

Defendants' characterization of Sixth Circuit law is also inaccurate: Even before *Kushner*, the Sixth Circuit recognized that separate corporations that are named as RICO persons are distinct from an association-in-fact enterprise that include those corporations. (To the extent that the various pre-*Kushner* cases Defendants cite from othe jurisdictions do not recognize this principle, they have no force). In *Fleischhauer v. Feltner*, 879 F.2d 1290 (6th Cir. 1989), the defendants were three corporations (Palm Beach Properties, Inc., Metropolitan Properties, Inc., and Krypton Corporation), the sole shareholder of all three corporations (Feltner), and an officer of each corporation (Levine). The alleged enterprise consisted of an association-in-fact of the three corporations, the sole shareholder, and the officer. *Id.* at 1297. These allegations are quite similar to the FAC, which alleges an enterprise consisting of an association-in-fact of three corporations (Express, Services, and Ground) that have a common owner (FedEx Corp) and names two of the corporations as defendants.

In affirming a jury verdict, the Sixth Circuit held that the *Fleischhauer* plaintiffs had adequately pled and proved RICO's distinctness requirement. The Court stated:

> The "person" and the "enterprise" must be separate and different entities….The pleadings in this case satisfactorily describe and distinguish the "persons" and the "enterprise." ….We believe the pleadings adequately state that each of the five defendants was a "person" and together they formed a racketeering "enterprise." An enterprise must be merely "an ongoing organization, formal or informal." In this case, Metropolitan, Palm Beach, Krypton, Levine and Feltner comprised such a group. **Appellant contends that the "enterprise" alleged and proven was not sufficiently distinct from the "person" - in other words, because Feltner owned 100% of the corporations, they were the equivalent of his "right arm**," with whom he could not "conspire." **Such argument has no merit**; the fact that Feltner owned 100% of the corporations' shares does not vitiate the fact that **these corporations were separate legal entities**. Clearly, the jury had ample basis to find that all defendants were collectively, the "enterprise."

*Id.* (emphasis added) (citations and footnote omitted). The pleadings here also name RICO defendants that are "separate legal entities" from the association-in-fact enterprise. *Id.*

*Shields v. UnumProvident Corp.*, 415 Fed. Appx. 686 (6th Cir. 2011), does not apply

here.  The problem in *Shields* was that the plaintiff pled facts establishing unlawful conduct only by a single corporation, not by multiple actors.  The plaintiff tried to plead a wide-ranging "'enterprise' consisting of 'Unum's various subsidiaries, affiliates, wholly owned companies, customers, policy holders, claimants, independent contractors, and governmental and non-governmental regulators."  *Id.* at 691.  But the Court found that "the Plaintiff's allegations appear to relate only to *Unum's* bad faith claim handling."  *Id.* (emphasis in original).  Because "a corporation cannot become an enterprise distinct from itself for RICO purposes," allegations that a single corporation itself engaged in misconduct could not prove an enterprise.  *Id.*  By contrast, the FAC alleges misconduct by Express, Services, and Ground.  These three corporations are not members of each other, and Defendants' argument that a corporation "cannot join with its own members" to form an enterprise is thus also irrelevant.  MTD at 13 (citation omitted).

The Sixth Circuit recognizes that whether a defendant is distinct from an enterprise involving an allegedly related entity is a fact question.  In *Davis v. Mutual Life Ins. Co.*, 6 F.3d 367 (6th Cir. 1993), the plaintiffs asserted a RICO claim against MONY arising out of Donald Fletcher's sales of MONY insurance policies through Fletcher Insurance Agency ("FIA").  "The jury found that MONY, with Donald Fletcher, conducted or participated in the affairs of FIA or some other 'association-in-fact' enterprise…"  *Id.* at 376-77.  MONY argued that the verdict violated RICO's distinctness "requirement because [it] holds MONY liable for participating in the affairs of FIA, which, MONY maintains, is nothing but an association of MONY agents."  *Id.* at 377 (citations omitted).  The Sixth Circuit rejected that argument because whether MONY was distinct from FIA was a disputed matter of proof:

> MONY's argument fails, however, because **FIA need not be characterized merely as a division of MONY**….At issue, therefore, is whether sufficient **evidence** supported the jury's finding that the enterprise was distinct from MONY.  "In testing the sufficiency of the evidence, we may neither weigh the evidence, pass on the credibility of the witnesses

nor substitute our judgment for that of the jury." **The record is replete with evidence from which the jury could reasonably conclude that FIA was a distinct entity**….

*Id.* (emphasis added) (citations omitted).  Similarly, the record here is already "replete with evidence" – cited *infra* – that Express and Services are distinct from the alleged enterprise.  *Id.*

*Begala v. PNC Bank*, 214 F.3d 776 (6th Cir. 2000), also establishes that whether an entity defendant is distinct from an enterprise is a matter of proof that cannot be decided on a motion to dismiss.  There, the Sixth Circuit stated:  "The district court held that the complaint had failed to allege an enterprise distinct from PNC because all of the entities listed in the complaint were subdivisions or agents of PNC….It is not clear from the pleadings, however, that the "dealers" (to take one example) are subdivisions, agents or members of PNC, and to so conclude requires that an inference be drawn against Begala, the non-moving party.  Drawing that inference would violate established practice under Fed.R.Civ.P. 12(b)(6) and the rule that RICO pleadings are to be liberally construed."  *Id.* at 781 (citations omitted).

Defendants' distinctness argument is not only wrong as a matter of law, it is outrageous in light of their prior judicial admissions.  Defendants and FedEx Corp have repeatedly submitted sworn testimony that Express and Services are **separate and distinct** from one another, from Ground, and from FedEx Corp.  Numerous such statements are contained in the Appendix attached as Exhibit U and illustrative quotes are provided below (all emphasis added):

> "FedEx Corporate Services and FedEx Express are **not the same corporation**.  They are **separate and distinct** entities."  Ex. U-17 ¶ 8.

> "[Services], Express and Ground are **not the same corporation**.  They are **separate and distinct** entities with different Boards of Directors."  Ex. U-10 ¶ 8.

> "FedEx Corporation and FedEx Services are **not the same corporation**, but are **separate and distinct** corporate entities."  Ex. U-1 ¶ 6.

> "FEDEX CORP and EXPRESS are **not the same corporation**.  They are **separate and distinct** entities."  Ex. U-5 ¶ 6.

"FedEx Corporation, Federal Express Corporation and FedEx Corporate Services, Inc. are **not the same corporation**.  They are **separate and distinct** entities."  Ex. U-14 ¶ 7.

Similarly, while Defendants now try to sell this Court the (disputed) factual claim that FedEx Corp controls its subsidiaries so as to render them indistinct, FedEx Corp itself has repeatedly denied that claim and sworn that its subsidiaries' businesses are **separately** managed:

"Q. ….**[W]hat is the difference between the separate corporations and, say, looking at them as just separate divisions of one company**?  (Objection omitted) A.  **Well, legally, because they're a separate corporate entity, they're their own legal entity. They have their own management and they have their own Board of Directors so it is different than operating as a division within the same company**.  Q.  Beyond that legal issue, the creation of the entity, **are they not operated much like a division would be operated in any other company**?  (Objection omitted)  A.  **No.  Again, because there is legal substance behind having a separate corporation**.  Ex. U-4 at 24-25.

"However, the evidentiary facts of record show that the two companies [FedEx Corp and Express] **operate** independently, FedEx Corp [ ] does not control the day-to-day business operations of [Express], and there is only an insignificant amount of overlap between the officers and directors of the two companies."  Ex. U-11 at 9 (emphasis in original).

"**FedEx Corporation further does not manage the day-to-day operations of its subsidiaries**."  Ex. U-15 at 2 (citations omitted).

"**FedEx Corporation is a separate and legally distinct corporate entity from its subsidiaries that does not dominate its subsidiaries** such that it warrants piercing the corporate veil."  *Id.* at 4.

The statements above do not merely create fact issues, they conclusively establish that the enterprise Plaintiffs have alleged is **not** "simply the same 'person' [the defendant] referred to by a different name."  *Kushner*, 533 U.S. at 161.  Indeed, Defendants are judicially estopped from making a distinctness argument here.  *See Bare v. Fed. Express Corp.*, 2012 WL 3499879, at *12 n.8 (N.D. Ohio Aug. 15, 2012) (Express obtains summary judgment on employment claim by arguing that FedEx Corp subsidiaries "are separate, and distinct corporate entities, with different managers, officers and directors"); *Consol. Television Cable Serv., Inc. v. City of Frankfort*, 857 F.2d 354, 359 n.4 (6th Cir. 1988) (judicial estoppel "holds that, 'a party who has successfully

1042638.1

19

and unequivocally asserted a position in a prior proceeding is… estopped from asserting an inconsistent position in a subsequent proceeding…'") (citation omitted).

## III.  PLAINTIFFS ALLEGE THAT DEFENDANTS' MISCONDUCT INJURED THEM.

Plaintiffs allege that Defendants sent them bills containing false representations (that Defendants had performed Residential Deliveries when Defendants knew they had not done so) and that, as a result of those fraudulent bills, Plaintiffs paid Defendants money to which they were not entitled.  FAC ¶¶ 67, 71, 73, 75, 78, 80, 83.  Plaintiffs have thus alleged that Defendants' misconduct injured them.  Nothing more is required.

Defendants attempt to create an artificial requirement that Plaintiffs must also allege "how these packages came to be coded residential."  MTD at 19.  While Plaintiffs **have** alleged false pretenses that Defendants use to code packages as residential, *supra* at 5-7, those allegations are **not** required to show injury.  Defendants may wish to dissect how they decided to make false representations that deliveries listed on Plaintiffs' bills were residential, but that desire cannot change the fact that **Defendants** imposed the false and injurious charges.  Further, the Service Guides cited above do not permit Defendants to charge Residential Delivery fees on the basis that a customer allegedly designated a package as residential; they only permit such fees for deliveries that actually go to a home or private residence.[24]  Defendants' "particularity" arguments are also wrong and disingenuous, because their own documents and data specify each instance in which they levied a charge for a "Residential Delivery" when a courier recorded, based on personal observation, that the delivery was **not** residential.  Indeed, as set forth above, Plaintiffs have already identified more than 36 million instances in which that occurred.

---

[24] *See* Ex. V at FedEX  ED1415-18                              REDACTED
                                                     "); Ex. W ("            REDACTED
                                                       ").

1042638.1

Respectfully submitted on this 31st day of January, 2013.

/s/ *Steven Rosenwasser*
Jeffrey O. Bramlett
Ga. Bar No. 075780
Steven J. Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
BONDURANT MIXSON & ELMORE LLP
1201 W Peachtree St NW
Suite 3900
Atlanta, GA 30309
404-881-4100
bramlett@bmelaw.com
rosenwasser@bmelaw.com
ramachandrappa@bmelaw.com

Frank L. Watson, III
Tenn. Bar No. 15073
William F. Burns
Tenn. Bar No. 17908
WATSON BURNS, PLLC
253 Adams Ave
Memphis, TN 38103
901-529-7966
fwatson@watsonburns.com
bburns@watsonburns.com

Salu K. Kunnatha
Ga. Bar No. 430321
KUNNATHA LAW FIRM, PC
2970 Clairmont Rd Suite 905
Atlanta, GA 30329
skk@kunnathalaw.com
404-633-4200

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on January 31st, 2013, I electronically filed this **PLAINTIFFS'**

**OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNT ONE OF THE**

**FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system,

which will notify the other counsel of record:

>        Richard R. Roberts
>        Justin Ross
>        Colleen Hitch Wilson
>        rrroberts2@fedex.com
>        justin.ross@fedex.com
>        chitchwilson@fedex.com

                                        /s/ *Steven Rosenwasser*
                                        Steven Rosenwasser
                                        Ga. Bar No. 614908

1042638.1