IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| MANJUNATH A. GOKARE, P.C. and GOLDSTEIN DEMCHAK BALLER BORGEN & DARDARIAN, P.C. on behalf of itself and a class of all persons similarly situated, | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 2:11-CV-02131 |
| FEDERAL EXPRESS CORPORATION and FEDERAL CORPORATE SERVICES, INC., | ) ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS COUNT ONE &
<u>SUPPORTING MEMORANDUM OF LAW</u>**

# ARGUMENT

Court I of the FAC, alleging violations of RICO, should be dismissed as the Plaintiffs have failed to (1) allege fraud; or (2) satisfy the RICO "distinctness" requirement.

## I. The FAC fails to allege fraud.

In their Opposition, the Plaintiffs have failed to show that the FAC actually alleges fraud for four reasons: (1) they have failed to link the designation of their packages as residential to any alleged misconduct on the part of the Defendants; (2) they have failed to direct the Court to any actual misrepresentation or material omission; (3) the cases they rely upon clearly allege an *actual, specific* misrepresentation or omission; and (4) the Opposition improperly attempts to assert new, unpleaded theories of fraud.

### A. The Plaintiffs have failed to link their packages to a scheme to defraud.

As pointed out in the Defendants' Motion, the Plaintiffs have failed to link their payment of residential surcharges to a scheme to defraud. The FAC alleges that FedEx imposes a residential surcharge in one of three circumstances: (1) if a customer designates the delivery location as residential when processing the shipment, (2) if a customer accepts a residential classification by the address checker, and (3) if a courier designates a delivery location as residential at the point of delivery. (FAC at ¶¶ 34-38.) The Plaintiffs, however, have failed to allege how their packages were assessed residential surcharges and, thus, cannot allege a link between the Defendants' alleged scheme to defraud and the Plaintiffs' residential surcharges.

In their Opposition, the Plaintiffs contend that they do not have to make such allegations—despite the requirements of Rule 9(b). In fact, however, such allegations are vital. To assert a RICO claim for mail or wire fraud, a plaintiff must allege actual use of "false, deceptive, or fraudulent pretenses, representations, or promises to deprive someone else of

1

money." *U.S. v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005). If Express merely accepted the Plaintiffs' residential designations, then Express cannot be said to have used "false, deceptive, or fraudulent pretenses, representations, or promises." *See, e.g., U.S. v. Steffen*, 753 F. Supp. 2d 903, 908 (E.D. Mo. 2010) ("[I]n the absence of an independent disclosure duty, nondisclosure, or mere silence is not fraudulent." (citing *U.S. v. Colton*, 231 F.3d 890, 899 (4th Cir. 2000))).[1]

In addition, the FAC alleges that the addresses, on their face, are not residential. (*See, e.g.*, FAC at ¶¶ 67, 71.) Therefore, the Plaintiffs could not possibly have been deceived, even if FedEx had misrepresented that the addresses were residential. *See, e.g., Norton v. U.S.*, 92 F.2d 753, 755 (9th Cir. 1937) ("There can be no intent to deceive where it is known to the party making the representations that no deception can result."). Finally, while the Plaintiffs claim that they are not required to allege reliance under *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008), that is incorrect. *See id.* at 658 ("[N]one of this is to say that a RICO plaintiff who alleges injury 'by reason of' a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations."). If the Plaintiffs themselves did not rely on the alleged misrepresentations, it is hard to imagine who would have. Certainly, the Plaintiffs have alleged no such reliance.

### B. The Plaintiffs have failed to allege a misrepresentation.

In Paragraph 113 of the FAC, the Plaintiffs allege that Express's "bills, invoices or other demands for payment fraudulently represent that the customer owed FedEx and/or FedEx Ground a residential delivery surcharge for packages . . . ." (FAC at ¶ 113.) However, in their Opposition, the Plaintiffs do not point to a single fraudulent statement in their invoices (which

---

[1] In the absence of an alleged duty, then, the omissions asserted on page 4 and in footnote 21 of the Opposition are irrelevant.

are attached to the FAC as Exs. M, N). They do not because they cannot. The Plaintiffs simply cannot allege the sort of specific "false, deceptive, or fraudulent pretenses, representations, or promises," *Jamieson*, 427 F.3d at 402, that are required to sustain a claim for mail or wire fraud.

Instead, the Plaintiffs attempt to discredit *Braswell Wood Co., Inc. v. Waste Away Group, Inc.*, No. 2:09-CV-891, 2010 WL 3168125 (M.D. Ala. Aug. 10, 2010)—a case that, unlike those cited by the Plaintiffs, is actually on all fours with the present facts. Just as the Plaintiffs here allege the Defendants submitted invoices seeking to collect charges inconsistent with the terms of a contract, the defendant in *Braswell* was accused of seeking payment for surcharges that were not assessed in the contractually agreed upon manner. *Id.* at *2. Accordingly, this Court, like the court in *Braswell*, should reject the Plaintiffs attempt to manufacture a RICO claim out of what is, at most, a breach-of-contract claim. *Id.* at *4. Just like the invoice in *Braswell*, the invoices submitted by the Defendants clearly stated the recipient, recipient address, and whether a residential surcharge was included. (*See, e.g.*, FAC at Ex. N.) Whether that surcharge was valid is "another matter" but not a matter of fraud. If it were, then every erroneous charge or billing mistake could give rise to criminal charges or a civil RICO claim.

### C. The cases the Plaintiffs rely on all allege *actual, specific* misrepresentations and are inapplicable here.

Despite their inability to point to a single misrepresentation made by the Defendants, the Plaintiffs rely on cases—unlike this case—where specific misrepresentations were at issue. They cite medical fraud billing cases (Opp'n at 7-9)[2] where doctors made clear, affirmative

---

[2] The Plaintiffs also rely on three non-Sixth Circuit cases that do not deal with medical billing fraud. (Opp'n at 9.) Those cases, however, all involved complex schemes of fraud with multiple allegations of *actual* misrepresentations and omissions. *See Int'l Floor Crafts, Inc. v. Dziemit*, 420 Fed. Appx. 6, 2011 WL 1499857, *8 (1st Cir. Apr. 21, 2011) (scheme involved fake purchase orders, fraudulent key-recs, phony invoices and multiple parties); *Kemp v. Am. Tel. &*

3

representations certifying that medically necessary services were rendered.[3] Indeed, the forms submitted to the insurance providers for payment contained a certification similar to this:

> [T]he services shown on this form were medically indicated and necessary for the health of the patient and were personally rendered by me or were rendered incident to my professional service by my employee.

*U.S. v. Campbell*, 845 F.2d 1374, 1376 (6th Cir. 1988); *Grange v. Mut. Cas. Co.*, No. 07-6145, 2008 WL 3977579 (6th Cir. Aug. 26, 2008) (*Grange* complaint attached hereto as Exhibit A at ¶ 23 alleging that "[e]ach HCFA-1500 form submitted bore the name of the referring physician and his signature or signature stamp. In submitting the bills on the HCFA-1500 forms, the referring physician represented or implied that (1) the tests were medically necessary, (2) the tests were an integral part of his services and (3) the tests were performed by him or under his supervision."); *see also U.S. v. Russo*, 480 F.2d 1228, 1232 (6th Cir. 1973) (addressing trial evidentiary issues but noting that the defendant defrauded Blue Shield of Michigan by submitting Doctor Service Reports that made various representations to Blue Shield of Michigan).[4] In all of these cases, the plaintiff was able to point to a specific representation or

---

*Tel. Co.*, 393 F.3d 1354, 1358 (11th Cir. 2004) (AT&T concealed gambling charges by listing them on the bill as long distance charges, misrepresenting the true nature of the charges and giving the mistaken impression that they were long distance charges that had to be paid to avoid service interruption); *Cofacredit v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 234-35, 240 (2d Cir. 1998) (scheme involving sham invoices, and actual representations that certain monies were owed when they were not). The Plaintiffs also cite *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985), (Opp'n at 8-9), but the merits of the RICO allegations were not at issue in that opinion, *id.* at 522.

[3] Two of the medical fraud billing opinions cited by the Plaintiffs are actually criminal sentencing cases following guilty pleas; neither addresses the merits of the RICO claim. (Opp'n at 8 (citing *U.S. v. Harper*, 945 F.2d 405 (Table), 1991 WL 188165 (6th Cir. 1991) and *U.S. v. Hodge*, 259 F.3d 549 (6th Cir. 2001)).)

[4] Because *Russo* was decided in 1973 and is a criminal case, counsel for the Defendants in this case was unable to procure a copy of the indictment or the "Doctor Service Reports" referenced

omission as the foundation of its RICO claim.

The Plaintiffs here have not and cannot point to a parallel representation in the invoices submitted by the Defendants. Express never represented to the Plaintiffs that any invoice was correct. On the contrary, the contract between Express and the Plaintiffs clearly acknowledges the possibility of error and establishes a protocol for the review of purportedly erroneous charges. (*See* Mot. to Dismiss at 7.)

The already strained medical insurance fraud analogy proffered by the Plaintiffs breaks down for the additional reason that, in those cases, an insurance company could not verify the accuracy of a given billing statement on its face, i.e. an insurer could not tell that it was being billed for phantom services or unnecessary services merely by looking at the statement. The patient—the party in the best position to verify the services billed—never reviewed the statement; the doctor simply submitted the form—with his or her representation of veracity—and the insurer had to rely on that representation.

Conversely, an Express customer can easily assess the accuracy of an invoice. The recipient address and a list of charges assessed are clearly stated. If an improper charge is listed, the customer has the ability to seek a refund. The customer is not in the same position as the medical insurer—forced to rely on a doctor's representation—but rather is in the best position to determine if an improper residential surcharge has been assessed. Thus, unlike medical billing cases, there is no fraudulent representation, material omission, or even deception here—indeed, the FAC alleges none. *See U.S. v. Van Dyke*, 605 F.2d 220, 225 (6th Cir.), *cert. denied*, 444 U.S. 994 (1979) (a scheme to defraud must involve "misrepresentations or omissions *reasonably*

---

in the opinion. Based on other language in the opinion, however, one can presume that the "Doctor Service Reports" contained a similar representation.

*calculated to deceive persons* of ordinary prudence and comprehension" (emphasis added)). The Defendants did not "deceive" the Plaintiffs; the Plaintiffs were fully equipped to review and challenge any charges on the invoice just by looking at the invoice itself. In fact, the Plaintiffs both availed themselves of the review process and notified Services of the alleged overcharges. (FAC ¶¶ 68, 72, 81-82.) There is neither deception nor fraud at issue here, and the RICO claim should be dismissed.[5]

### D. The Plaintiffs improperly attempt to redraft the FAC in their Opposition, asserting new, unpleaded theories of fraud.

Recognizing the fatal flaws in their fraud theory, the Plaintiffs attempt to add new, unpleaded theories of fraud through their Opposition. The FAC alleges a single act of fraud—the submission of invoices representing that residential surcharges were owed when they were not. (See FAC ¶ 113.) While the Plaintiff's Opposition offers several new (yet unalleged) theories (*see* Opp'n at 7, 13), these theories (1) are merely allegations, not specific statements; (2) were never representations made to the Plaintiffs, and (3) even if they were, they are not alleged in the FAC.

---

[5] *Dana Corp. v. Blue Cross & Blue Shield Mutual of Northern Ohio*, 900 F.2d 882 (6th Cir. 1990), is no different. In permitting the RICO claim to go forward, the Sixth Circuit distinguished *Dana* from *Blount Financial Services, Inc. v. Walter E. Heller & Co.*, 819 F.2d 151 (6th Cir. 1987), on two grounds: (1) Dana, unlike the plaintiff in *Blount*, made *specific allegations of fraud*, and (2) Dana, unlike the plaintiff in *Blount*, had no way of knowing that it was not receiving rebates. 900 F.2d at 885-86. In their misplaced reliance on *Dana*, however, the Plaintiffs misstate the first ground and ignore the second. (Opp'n at 11 & n.22.) Contrary to the Plaintiffs' summary of the case, Dana did not allege that Blue Cross "made 'misrepresentations and omissions' when it placed charges on bills that it knew should be adjusted," (Opp'n at 11), but rather alleged that Blue Cross made *specific* misrepresentations at meetings and in letters sent to Dana. *Id.* at 884, 886. Moreover, the second ground (a plaintiff's inability to uncover the misrepresentation) is more than dicta and is part of the holding in *Blount*—the prime rate (just like the status of the delivery location here) was readily available to the plaintiff. *See* 819 F.2d at 153; *see also Renaissance Ctr. Venture v. Lozovoj*, 884 F. Supp. 1132, 1144, 1145-46 (E.D. Mich. 1995). Thus, this case parallels *Blount*, not *Dana*.

Additionally, the Plaintiffs claim that the Defendants "use[d] deception to induce customers to accept the FedEx on-line address checker's false representation . . . ." (Opp'n at 6 & n.15.) Neither that allegation nor a reference to the Defendants' statement regarding the reliability of the address checker, however, is found anywhere in the FAC. *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1555 (6th Cir. 1997) (noting that exhibits attached to a complaint may be considered *when explicitly referenced* in the plaintiff's complaint (quoting V*enture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993))). Furthermore, there is no allegation that the Plaintiffs themselves used the address checker or that the Plaintiffs or anyone actually relied on any such misrepresentation. Therefore, the Plaintiffs' argument should be disregarded.

## II. The Plaintiffs have failed to satisfy the RICO distinctness requirement.

In addition to failing to establish fraud, the Plaintiffs are unable to satisfy the RICO distinctness requirement. The Plaintiffs claim that the FAC is sufficient as the "liable RICO persons [] Express and Services (Defendants)" are "distinct" from the enterprise which is "an association-in-fact that includes Express, Services and FedEx Ground Packaging Systems, Inc. ("Ground").[6] (Opp'n 14.) That argument is unavailing: The Plaintiffs have not alleged either a distinct purpose or a distinctness from the alleged enterprise.

First, the alleged RICO enterprise must have an existence and purpose distinct from that of its members; the enterprise's alleged conduct cannot merely be the corporation's regular corporate activity. (Mot. to Dismiss at 13-15); *see also Dopp v. Loring*, 54 Fed. Appx. 296, 298

---

[6] The Plaintiffs continue to misstate their own allegations. Paragraph 99 of DE 172-1, the "corrected" FAC, includes Ground as a RICO "person." (FAC ¶ 99.) Thus, there is complete overlap between the Plaintiffs' alleged RICO persons and RICO enterprise.

(10th Cir. 2002) (noting that a plaintiff "must show that the [] individual defendants were part of an enterprise which had an existence and purpose *distinct from any one of them* to establish [RICO] liability. RICO liability depends on showing that the defendants conducted or participated in the conduct of the enterprise's affairs, not just their *own* affairs." (citation and quotations omitted) (alterations in original)). Here, the alleged RICO fraud consists of the submission of invoices—conduct that is part of the "regular corporate activity" of Express and Services.

Second, a corporate entity cannot be sliced into separate pieces in an effort to bypass the RICO distinctness requirement.[7] In 2001, the Supreme Court issued the seminal RICO decision of *Cedric Kushner Promotions, LTD. v. King*, 533 U.S. 158 (2001). In considering the "distinctness" requirement of §1962(c), the Court held that "[t]he corporate owner/employee, **a natural person**, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." *Id.* at 163 (emphasis added). The

---

[7] Whether the Plaintiffs' alleged RICO enterprise satisfies the "distinctness" requirement is a question of law. The Plaintiffs' reliance on *Davis v. Mutual Life Insurance Co. of New York*, 6 F.3d 367 (6th Cir. 1993) and *Begala v. PNC Bank of Ohio, National Association*, 214 F.3d 776 (6th Cir. 2000), is misplaced. (Opp'n at 17-18.) In *Davis*, the alleged RICO persons were insurance agent, Donald Fletcher, The Mutual Life Insurance Company of New York ("MONY") and Trans World Assurance Company ("TWA"). *Id.* at 371. Fletcher, MONY and TWA were alleged to have used Fletcher's own insurance agency, "Fletcher Insurance Associates" ("FIA") as the RICO enterprise. *Id.* at 372. Thus, there was a real factual question as to whether FIA was a separate entity or merely an association of MONY agents. *Id.* at 377. Likewise in *Begala*, the alleged RICO enterprise included multiple entities potentially unrelated to the corporate defendant, PNC Bank. 214 F.3d at 780. For instance, the complaint alleged that "dealers" and "John Doe(s)" were part of the enterprise. *Id.* Accordingly, the court could not determine whether the entire enterprise was comprised of "subdivisions, agents or members of PNC," which would be impermissible, or whether additional, unrelated parties were also included. *Id.* at 781. Accordingly, the court could not rule on the defendants' 12(b)(6) motion. Conversely, in this case, there is no question that the entire alleged enterprise is made up of related corporate entities which are also the alleged RICO "persons."

Court was careful, however, to carve out cases where a corporation is alleged to be both the RICO "person" and "enterprise." *Id.* at 164. Indeed, the Court expressly noted that *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996), *vacated on other grounds*, 525 U.S. 128 (1998), which rejected allegations that a corporate parent and subsidiaries could be both the RICO "persons" and RICO "enterprise," was not impacted by its decision. *Id.* at 164 ("We do not here consider the merits of these cases, and note only their distinction from the instant case" which deals with a *natural person* and corporation). Moreover, *Cedric Kushner*, did not deal with an association-in-fact enterprise like this case. *See id.* Thus, *Discon* and other cases rejecting the argument that corporate affiliates are sufficiently distinct from each other are still good law following *Cedric Kushner*.

The Plaintiffs rely on the Southern District of New York's decision in *UIIT4less, Inc. v. FedEx Corp.*, --- F. Supp. 2d ----, 2012 WL 4459377 (S.D.N.Y. Sept. 25, 2012). *UIIT4less*, like *Cedric Kushner*, did not deal with an association-in-fact enterprise, nor did it involve allegations that three related corporate entities could serve as *both* the RICO person and enterprise. Instead, the plaintiff in *UIIT4less* alleged that FedEx Corp. and Services were the RICO "persons" and that Ground was the alleged "enterprise."[8] *See id* at *3. Despite the Supreme Court's distinguishment of *Discon*, the *UIIT4less* court extended *Cedric Kusher*'s holding regarding a *natural person* and corporation to find that a parent and a subsidiary are sufficiently distinct from a separate subsidiary. *Id.* at 8. *UIIT4less*, however, should be disregarded by this Court because

---

[8] The Plaintiffs misstate the procedural posture of *UIIT4less*. The Plaintiffs argue that the RICO claim was brought against FedEx Corp., Services and Ground as the RICO "persons" with Ground named as the RICO "enterprise." (Opp'n at 15.) In truth, however, Ground was neither a defendant on the RICO count nor named as a RICO "person." 2012 WL 4459377 at *3, *5. Thus, unlike this case, the alleged "persons" and "enterprise" did not completely overlap.

it is factually distinct and wrongly-decided under *Cedric Kushner*.

Likewise, the Plaintiffs' reliance on *Fleischhauer v. Feltner*, 879 F.2d 1290, 1296 (6th Cir. 1989), (Opp'n at 16), is misplaced. That case does not stand for the proposition that a corporate entity can be sliced into pieces to satisfy RICO's distinctness requirement. The question before the court in *Fleischhauer* was whether Feltner, as one of the alleged RICO "persons," was sufficiently "distinct" from three corporations in which he was the sole shareholder that were part of the RICO "enterprise." *Id.* Like the Supreme Court's later decision in *Cedric Kushner*, the court simply held that Feltner, as a *natural* person, was sufficiently distinct from the corporations as separate legal entities. *Id.* at 1297. The *Fleischhauer* court did not address the question of whether three related corporate entities could be both the RICO "person" and "enterprise" and does not support the Plaintiffs' argument.

*Shields v. UnumProvident Corp.*, 415 Fed. Appx. 686 (6th Cir. 2011), on the other hand, deals directly with whether related corporate entities can constitute a RICO enterprise distinct from themselves, and its holding is clear: "'An organization cannot join with its own members to undertake <u>regular corporate activity</u> and thereby become an enterprise distinct from itself.'" *Id.* at 691 (quoting *Begala*, 214 F.3d at 781 (emphasis added)). The Plaintiffs' attempts to discredit the applicability of *Shields* are unavailing. Despite their legal separateness, Express, Services and Ground are all subsidiaries of a single corporate entity—FedEx Corporation—and are thus indistinct from the alleged enterprise.

Dated: February 19, 2013

Respectfully Submitted,


/s/Justin Ross
RICHARD R. ROBERTS (TN Bar No. 15008)
Rrroberts2@fedex.com
JUSTIN M. ROSS (TN Bar. No. 19571)
justin.ross@fedex.com
COLLEEN HITCH WILSON (TN Bar No. 24127)
chitchwilson@fedex.com
FEDERAL EXPRESS CORPORATION
3620 Hacks Cross Road, Building B, 3rd Floor
Memphis, TN 38125
Telephone: (901) 434-8570
Fax: (901) 434-9279

*Attorneys for Defendants*

11

**CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that a true and correct copy of the foregoing pleadings was served on all parties of record via the Court's ECF filing system this the 19th day of February, 2013.

              /s/Justin Ross