**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| MANJUNATH A. GOKARE, P.C., and GOLDSTEIN, BORGEN, DARDARIAN & HO, P.C., on behalf of themselves and a class of all persons similarly situated, | : : : : : | |
| Plaintiffs, | : : | Civil Action No. 2:11-CV-2131-JTF-CGC |
| v. | : : | |
| FEDERAL EXPRESS CORPORATION and FEDEX CORPORATE SERVICES INC., | : : : | Class Action |
| Defendants. | : | |

**MEMORANDUM IN SUPPORT
OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

**I.    INTRODUCTION**

After two-and-a-half years of hard-fought litigation, the parties to this action have reached a

settlement that (1) provides prospective relief to end certain residential delivery fee practices that

Plaintiffs challenge and (2) provides significant monetary benefits to the proposed settlement class.

The settlement achieves these results without requiring the members of the proposed settlement class

to go through additional years of expensive, protracted litigation in which they would face significant

obstacles to recovery.  Those obstacles include provisions of the FedEx Service Guide that bar

customers from participating in any class action and from recovering any money if they fail to

request a refund within sixty days.  Despite these provisions and recent Supreme Court authority

upholding a contractual class action ban, Defendants Federal Express Corporation and FedEx

Corporate Services, Inc. (collectively, "FedEx"), have agreed to a settlement that provides the

1

proposed settlement class with up to $21.5 million in prospective relief and monetary payments. Because the proposed settlement is fair, reasonable, and adequate, Plaintiffs ask the Court to preliminarily approve it.

In this action, Plaintiffs allege that, between August 28, 2008 and July 13, 2011 (the "Class Period"), FedEx used a flawed system for classifying delivery locations as residential or business addresses.  Classification of an address as residential led to the imposition of Residential Delivery Charges (defined below).  Plaintiffs contend that, while the couriers who deliver shipments inform FedEx (via electronic entries on a PowerPad) whether a delivery location is a residence or a business, FedEx often ignored those courier determinations in favor of information in an incomplete third-party database or in favor of what FedEx characterized as "customer designations."  Pursuant to the prospective relief provisions of the Settlement Agreement, FedEx has agreed to no longer rely solely on a third-party database or customer designations to make business/residential classifications.  Thus, the settlement performs the critical function of benefiting Settlement Class Members going forward by ensuring the discontinued use of what Plaintiffs contend was a flawed classification system and implementing improved processes for assessing residential delivery charges.

With respect to monetary relief, the settlement provides an opportunity for every member of the proposed class to obtain recovery for "Settlement Shipments"; *i.e.,* shipments made during the Class Period for which the customer paid Residential Delivery Charges for delivery to locations FedEx couriers designated as non-residential.[1]  The Settlement Agreement provides for the use of a field in FedEx's shipping data, the *courier_designated_resi* field, to identify Settlement Shipments; if

---

[1] Shipments that were made to apartment addresses are excluded from the definition of Settlement Shipments.

that field contains an "N" (for No), the shipment may qualify as a Settlement Shipment for which recovery is available.  Plaintiffs contend that an "N" in the *courier_designated_resi* field is evidence that a delivery location is not residential.  In light of the settlement, the Class Members will not have to litigate that issue, which is a meaningful benefit to them.

The proposed class consists of at least 200,000 members ("Settlement Class Members") (the exact number will be determined after further analysis of FedEx's shipping data).  FedEx argues, *inter alia*, that the claims of all Settlement Class Members are barred by the provision of the FedEx Service Guide that states, "**You agree that you will not sue us as a class plaintiff or class representative, join as a class member, or participate as an adverse party in any way in a class-action lawsuit against us**."  Ex. 1 (2008 Service Guide), at FEC2684 (emphasis added).  FedEx further argues that the claims of all Settlement Class Members who did not request a refund are barred by the provision of the Service Guide that states, "**Requests for invoice adjustments due to an overcharge must be received within 60 days after the original invoice date (or ship date** if prepaid by cash, check, money order or credit card)."  *Id.* at 2679.

Despite these provisions of the Service Guide and the FedEx's claim that it would be inherently difficult to prove the correct classification for tens of thousands of delivery locations, FedEx has agreed to pay an amount that equates to approximately 100% of the amount of un-refunded Residential Delivery Charges for Settlement Shipments as to which a Class Member requested but did not receive a refund (and has also agreed not to require Settlement Class Members to re-submit claims for refunds for such Settlement Shipments).  Settlement Agreement ¶ 3, attached as Exhibit A to Plaintiffs' Motion for Preliminary Approval of Settlement.  (The exact percentage will be determined after final analysis of FedEx's refund and shipping data).  FedEx has also agreed

to pay an amount that equates to approximately 20% of the amount of un-refunded Residential

Delivery Charges for Settlement Shipments as to which a Class Member did **not** request a refund,

provided that the as the Class Member now submits a timely claim form seeking such funds.  *Id.*

(Again, the exact percentage will be determined after final analysis of FedEx's refund and shipping

data).  While Plaintiffs have developed challenges to the provisions of the Service Guide, in light of

those provisions and the many other risks the Settlement Class Members face in continued litigation,

FedEx's agreements with respect to monetary relief constitute significant benefits to the Settlement

Class and significant concessions by FedEx.

 The settlement represents a fair, reasonable, and adequate resolution of the Settlement Class

Members' claims and FedEx's defenses.  Absent settlement, this case is likely to take additional years

to reach a final resolution – a motion to dismiss, class certification, potential interlocutory appeal of a

class certification order, summary judgment, trial, and final appeal all potentially remain to be

decided.  Uncertainty exists for both sides at each of those phases.  This settlement eliminates such

uncertainty and provides firm, significant benefits to Settlement Class Members.

## II. SUMMARY OF THE CLASS CLAIMS

### A. Residential Delivery Charges

 Plaintiffs allege that during the Class Period, FedEx charged certain customers residential

delivery charges for deliveries to non-residential locations.  Under the FedEx Service Guide,

specified surcharges may be imposed for a "residential delivery."  Ex. 1. at FEC2673.  Four types of

surcharges are at issue.  A "residential delivery charge [("**Resi Charge**")] applies to shipments to a

home or private residence, including locations where a business is operated from a home."  *Id.*

During the Class Period, the Resi Charge ranged from $2.30 to $2.75.  *Id.* at FEC2673; Ex. 2

(2/28/11 Service Guide) at FEC970.

For delivery locations in certain zip codes, a "Delivery Area Surcharge…residential" ("**DAS**

**Resi Charge**") or "Delivery Area Surcharge…Extended Residential" ("**EDAS Resi Charge**") may

be imposed on top of a Resi Charge.  Ex. 1 at FEC2667; Ex. 2 at FEC959.  During the Class Period,

the DAS Resi Charge and EDAS Resi Charge ranged from $2.30 to $3.00.  Ex. 1 at FEC2667; Ex. 2

at FEC959.  However, the entire amount of the DAS Resi Charges and EDAS Resi Charges for

Settlement Shipments is not at issue here.  Even if a Settlement Shipment that went to a zip code

subject to DAS Resi Charges or EDAS Resi Charges had been classified as a commercial delivery

rather than a residential delivery, it would have been assessed a commercial Delivery Area Surcharge

ranging from $1.50 to $1.85.  Ex. 1 at FEC2667; Ex. 2 at FEC959.  The Settlement Agreement uses

the phrase "Residential Component of Delivery Area Residential Surcharge" to identify the portion of

the DAS Resi Charge or EDAS Resi Charge paid for a Settlement Shipment that was attributable to a

delivery being classified as a residential delivery.  Settlement Agreement ¶ 1(FF).

Finally, a "**Fuel Surcharge**," which is calculated as a percentage of all other charges for a

delivery (including Resi Charges, DAS Resi Charges, and EDAS Resi Charges), applies on top of all

other charges.  Ex. 3 (1/04/10 Service Guide) at FEC4992.  The Settlement Agreement uses the

phrase "Fuel Surcharge Component" to identify the portion of the Fuel Surcharge that was

attributable to a delivery being classified as a residential delivery.

For simplicity, Plaintiffs refer to Resi Charges, the residential component of DAS Resi

Charges and EDAS Resi Charges, and the residential component of Fuel Surcharges as "Residential

Delivery Charges."  In calculating the Residential Delivery Charges each individual Class Member

paid for Settlement Shipments – the Class Member's "Total Claim" – the Settlement Agreement includes each of these elements of claimed damages.  Settlement Agreement ¶ 1(NN).

The maximum Total Claim for a single Settlement Shipment is approximately $3.94 ($2.75 Resi Charge + $0.83 Residential Component of Delivery Area Residential Surcharge + $0.36 Fuel Surcharge Component).  Nevertheless, FedEx has agreed to a $5 minimum for each Settlement Class Member's Total Claim.  Settlement Agreement ¶ 3(B)(iii)(c) and ¶ 3(C)(iii)(c).

### B.   Plaintiffs' Allegations

Plaintiffs allege that, during the Class Period, FedEx used a flawed system for determining whether a delivery location was residential or non-residential.  In particular, Plaintiffs allege that FedEx classified a delivery address as residential if the address did not appear in a third-party database of business addresses (the "Harte Hanks Database") – even though the Harte Hanks Database was not (and does not purport to be) a complete listing of business addresses.  First Amended Complaint ("FAC") ¶ 54.  In other words, if a particular address did not appear in the Harte Hanks Database, FedEx priced deliveries to that address as residential, and deliveries to the address incurred Residential Delivery Charges.  Plaintiffs allege that this system was flawed because many addresses that were actually business addresses, and that FedEx couriers identified as business addresses, did not appear in the Harte Hanks Database, but were nevertheless classified as residential by FedEx.  *Id.*  When customers contacted FedEx to complain of an inappropriate Residential Delivery Charge, FedEx call center personnel generally relied on the Harte Hanks Database to evaluate the customer complaint, triggering denials of valid customer complaints.

Prospective Relief in the Settlement Agreement squarely addresses this issue.  FedEx agrees that it will "no longer rely solely on a third-party database to make its residential classifications."

Settlement Agreement ¶ 2(A)(iv).  FedEx also agrees that "[w]hen a customer calls to inquire about or dispute the validity of a Residential Delivery Charge, FedEx will no longer rely solely on a third party database to determine the validity of the charge."  *Id* at ¶ 2(A)(ii).

Plaintiffs further allege that FedEx's system for making business/residential classifications was flawed in the way that it used the Address Checker on www.fedex.com and the way that it treated what FedEx referred to as "customer designations."  FAC ¶¶ 34-35.  (Fedex.com is a frequently-used portal for scheduling shipments).  As a general matter, when a customer enters a delivery address on fedex.com, the Address Checker returns a classification of the address as a residential or a business address.  The Address Checker then asks the customer to verify the address and contains a feature which permits the customer to de-select the residential designation (if such a designation has been returned).  FedEx took the position that if a customer did not de-select a residential designation, then the customer had designated the delivery as residential.  During the Class Period, if a customer "designated" a delivery as residential, FedEx imposed Residential Delivery Fees, even if a courier identified the delivery location as a business.  *Id.* ¶ 61.

Plaintiffs contend that (1) the FedEx Address Checker's classifications of delivery addresses as residential were frequently incorrect, (2) a customer's verification of a delivery address without de-selecting FedEx's classification of the address as residential was not a designation of the address as residential by the customer, and (3) in any event, under the terms of the Service Guides applicable during the Class Period, FedEx was not permitted to charge Residential Delivery Charges for deliveries to addresses that were in fact business addresses, regardless of how a customer designated the delivery.

Again, the Prospective Relief in the Settlement Agreement squarely addresses this issue. FedEx agrees that it will "no longer charge a Residential Delivery Charge based solely on the customer's initial designation of a delivery location as residential" (absent a specific agreement with a customer). Settlement Agreement ¶ 2(A)(iii).

C.     **FedEx's Defenses**

FedEx has filed an Answer that raises numerous legal defenses to Plaintiffs' claims. While Plaintiffs will not catalogue all of these defenses, they note that (in addition to the Service Guide defenses discussed above) FedEx argues that this case cannot be certified as a class action because a case-by-case inquiry would have to be conducted to determine whether each of the millions of addresses at issue was residential or non-residential. While Plaintiffs strongly disagree and contend that the *courier_designated_resi* field in FedEx's shipping data provides evidence as to whether each address was residential or non-residential, this issue would have to be litigated in the absence of a settlement.

III.   **SUMMARY OF THE LITIGATION**

The history of this litigation reflects that (1) this case has been extremely hard-fought and (2) in the absence of a settlement, the case is far from over. The parties have battled at every turn, but the case has not yet proceeded past the motion to dismiss phase. Resolution of FedEx's motion to dismiss, class certification, the appeal or bid for interlocutory appeal that would inevitably follow a ruling on class certification, summary judgment, trial, and an appeal from a final judgment all potentially remain to be decided. The settlement, of course, avoids the uncertainty that would attend each of these phases of the litigation.

### A.        The Pre-Discovery Phase

Plaintiff Manjunath A. Gokare, P.C. ("Gokare") filed this suit on February 18, 2011.  DE 1.

FedEx made an early bid to extinguish the class claims in the case by filing a Motion to Deny Class

Certification on May 18, 2011.  DE 17.[2]  "In support of its motion, FedEx argue[d] that its contract

with Plaintiff and the other putative class members includes provisions that preclude class

certification, including a prohibition on class actions and strict notice requirements."  DE 39 (8/25/11

Order) at 2.  FedEx also fought discovery by filing a Motion to Stay Discovery.  DE 18.  Plaintiff

Gokare opposed FedEx's motions.  DE 24, 25.  By Order entered August 25, 2011, the Court

dismissed Express's Motion to Deny Class Certification **without prejudice**.  This Order means that

the issues of whether the Service Guide bars all class claims and/or claims regarding shipments as to

which a customer did not make a refund request within sixty days are unresolved, and absent

settlement, the parties would have to fight over them again.

After the Court entered its August 25, 2011 Order, FedEx again fought discovery with another

Motion to Stay.  DE 43.  Plaintiffs again opposed such a stay, DE 48, and the parties battled further

over the taking of depositions.  DE 52, 53.  On October 25, 2011, the Court entered a Scheduling

Order, DE 56, and discovery began.

### B.        Discovery

A review of the discovery in this action reflects that (1) Plaintiffs have undertaken significant

efforts to investigate and develop their claims, and (2) the parties have been engaged in an

adversarial, non-collusive, process.  Plaintiffs have served five sets of requests for production, six

sets of interrogatories, and five sets of requests for admission on Defendants.  Plaintiffs also served

---

[2] At this point, Federal Express Corporation ("Express") was the only defendant in the case.

subpoenas and document requests on various third parties who provided data or services to FedEx.  In response to Plaintiffs' document requests, FedEx produced records relating to hundreds of millions of shipping transactions and produced approximately 145,000 pages of documents.  Plaintiffs have painstakingly evaluated FedEx's production of documents and electronic shipping records with consultation of experts to understand the system by which unfounded Residential Delivery Charges made their way to FedEx invoices.

Plaintiffs have deposed seven FedEx corporate representatives on numerous topics, including (1) FedEx's management and retention of data, (2) FedEx's practices and procedures for classifying delivery locations as business or residential, (3) FedEx's online address checker, (4) FedEx's practices and procedures regarding billing Residential Delivery Charges, and (5) FedEx's knowledge of the deficiencies Plaintiffs allege in FedEx's practices and procedures with respect to Residential Delivery Charges.  In addition, Plaintiffs deposed employees ranging from couriers to one of FedEx's most senior executives to gather a comprehensive understanding of FedEx's practices and procedures with respect to Residential Delivery Charges.

FedEx in turn served discovery requests on Plaintiff Gokare and Plaintiff Goldstein that required these Named Plaintiffs to expend substantial time working with Class Counsel to develop responses.  FedEx served four sets of document requests and a set of interrogatories on Plaintiffs. Further, FedEx deposed two members of the Gokare firm and a representative of the Goldstein firm.

The discovery process has also involved numerous disputes between the parties.  On December 29, 2011, Plaintiff Gokare filed a motion to compel responses to document requests and requests for admission.  DE 64; *see also* DE 123 (additional motion to determine sufficiency of objections to requests for admission).  FedEx contested that motion.  *See* DE 71.  The parties also

litigated a dispute regarding a non-testifying expert, (DE 93, 95), and whether a document withheld by FedEx was privileged.  DE 186, 187.

The parties also had numerous disputes regarding the confidentiality of documents and the confidentiality order entered in this action.  *See, e.g.*, DE 112 (Plaintiffs' August 20, 2012 motion for relief regarding confidentiality order); DE 184 (Plaintiffs' February 1, 2013 motion for relief regarding confidentiality order).  Those disputes necessitated hearings before the Court, on November 27, 2012, and the Magistrate Judge, on April 2, 2013.

### C.       Amendment of the Complaint and the Motion to Dismiss

On August 28, 2012, Plaintiff Gokare moved to amend its Complaint to:  assert a RICO claim against Defendant Express; add FedEx Corporate Services as a defendant and assert a RICO claim against it as well; and add a new Named Plaintiff, Plaintiff Goldstein.  DE 119 (Motion to Amend). FedEx vigorously contested Plaintiff Gokare's motion to amend, both in its pleadings and at a hearing before the Court.  DE 142.  By Order entered November 28, 2012, the Court granted the Motion to Amend.

On December 27, 2012, FedEx filed a Motion to Dismiss the RICO claims set forth in Plaintiffs' First Amended Complaint.  FedEx argued that Plaintiffs could not establish a claim of mail or wire fraud, the predicate for Plaintiffs' RICO claims, because the bills at issue set forth the delivery addresses and residential delivery fees at issue.  FedEx also argued that the FedEx subsidiaries named as members of the RICO enterprise are not sufficiently separate and distinct to constitute an enterprise under the RICO statute.  The Motion to Dismiss remains pending.

1110271.1

### D.        The Parties' Settlement Efforts

By Order entered April 18, 2013, the Court ordered the parties to engage in mediation. DE 236.  The parties retained an experienced, neutral mediator to conduct that mediation.  The parties and the mediator conducted a lengthy mediation session in Toronto, Canada on June 27-28.  That initial session did not result in an agreement.  The parties and the mediator then re-convened a negotiation session on July 3 that produced the outline of the agreement before the Court.  The actual language of the Agreement is the product of three additional weeks of arms-length negotiation.

## IV.    <u>SUMMARY OF THE PROPOSED SETTLEMENT</u>

The Settlement provides that FedEx will provide prospective and monetary relief to the Settlement Class as follows:

**<u>Prospective Relief</u>**

For a period of three years from the Effective Date, FedEx agrees to the following:

i.        When a customer indicates on <u>www.fedex.com</u> that a delivery address is residential, FedEx will display a notice informing the customer that a delivery to a residential location will result in the imposition of a surcharge;

ii.       When a customer calls to inquire about or dispute the validity of a Residential Delivery Charge, Delivery Area Surcharge, or Extended Delivery Areas Surcharge, FedEx will no longer rely solely on a third party database to determine the validity of the charge;

iii.      FedEx will no longer charge a Residential Delivery Charge, or the residential component of the Delivery Area Surcharge, or Extended Delivery Areas Surcharge, based solely on the

customer's initial designation of a delivery location as residential[3]; and

iv.     FedEx will no longer rely solely on a third-party database to make its residential

classifications.

FedEx and Plaintiffs agree that this prospective relief provides at least five million dollars

($5,000,000.00) in value to the Settlement Class.

**<u>Monetary Relief</u>**

In addition to the prospective relief, the Settlement provides that FedEx will pay Settlement

Class Members Sixteen Million Five Hundred Thousand Dollars and No Cents ($16,500,000.00).[4]

Of that amount, five hundred thousand dollars ($500,000.00) will be allocated to FedEx customers

who, according to FedEx's shipping data, sought and were denied refunds of residential delivery

charges.  The five hundred thousand dollars represents approximately **<u>100%</u>** of the residential

delivery charges those customers incurred for deliveries to locations where the *courier_indicated-*

*_resi* field has an "N."  Because these customers already complied with FedEx's contractual

requirement of seeking a refund, they will not be required to submit a claims form to obtain their

recovery.

The remaining sixteen million dollars ($16,000,000.00) will be allocated to FedEx customers

who did not comply with FedEx's contractual requirement to request a refund for any alleged

improper residential delivery charges.  The sixteen million dollars represents approximately 20% of

---

[3] This subparagraph does not apply to customers who contractually agree that all of its shipments, or a certain subset of shipments, should be designated as residential and charged a Residential Delivery Charge, Delivery Area Residential Surcharge or Extended Delivery Area Residential Surcharge regardless of the actual nature of the delivery location.

[4] Class Counsel's attorneys' fees and costs, and the Named Plaintiff Incentive Awards, will be deducted from this amount.

the residential delivery charges those customers incurred for deliveries to locations where the *courier_indicated_resi* field has an "N."  Because these customers did not comply with FedEx's contractual requirement to request a refund within 60 days of the shipping date, they will be required to submit a claims form.  However, the claims form is simple, requiring the customer only to provide basic contact information and verify their authority to make a claim.  Further, customers will be provided a postage paid envelope to return the claims form.

## V.   THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT.

### A.   The Law Governing Approval of Class Settlements

Rule 23(e) requires court approval of class action settlements.  "Before approving a settlement, a district court must conclude that it is 'fair, reasonable, and adequate.'"  *Int'l Union, United Automobile, Aerospace, & Agricultural Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*").  The approval process occurs in two steps:

> The Manual for Complex Litigation explains that:
>
> Approval of class action settlements involves a two-step process.  First, counsel submit the proposed terms of settlement and the court makes a **preliminary fairness evaluation**. * * *
>
> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.
>
> *Manual for Complex Litigation*, § 30.41, at 236–37 (3rd ed.1995).  Thus, the Court, at this juncture, is not obligated to, nor could it reasonably, undertake a full and complete fairness review.

*In re Inter-Op Hip Prosthesis Liability Litig.*, 204 F.R.D. 330, 350 (N.D. Ohio 2001) (emphasis added); *see Manual for Complex Litigation (Fourth)* § 21.632 at 320-21.

With regard to the substance of the preliminary fairness evaluation:

In making a preliminary assessment of the fairness of the proposed settlement agreement, the Court's "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  A preliminary fairness assessment "is not to be turned into a trial or rehearsal for trial on the merits," for "it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements."  Rather, the Court's duty is to conduct **a threshold examination of the overall fairness and adequacy of the settlement in light of the likely outcome and the cost of continued litigation**.

*Inter-Op Hip Prosthesis*, 204 F.R.D. at 351 (citations omitted) (emphasis added).  As noted above, if a proposed settlement passes this threshold examination, the Court directs that the proposed class be provided with notice of the settlement and of a final fairness hearing.

The Sixth Circuit has set forth a number of factors that guide the inquiry into a settlement's fairness, reasonableness, and adequacy:

In deciding whether to approve a class action settlement, the "ultimate issue" for the Court is whether the proposed settlement "is fair, adequate and reasonable."  District courts must "appraise the reasonableness of particular class action settlements on a case-by-case basis, in the light of all the relevant circumstances."  "Several factors guide the inquiry: (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest."

*UAW*, 497 F.3d at 631 (citations omitted).

## B.    The Settlement Warrants Preliminary Approval.

A "preliminary evaluation" of the settlement with regard to each of these factors establishes that the settlement is squarely "within the range of possible [final] approval" and thus that the Court should grant this motion.  *Inter-Op Hip Prosthesis*, 204 F.R.D. at 350.

**1.  Risk of fraud or collusion.**  The public history of this case and the proposed terms of settlement negate any risk of fraud or collusion.  The record in this case reveals a lengthy, arms-

length, adversarial process in which the interests of absent class members have been robustly advocated.  The fact that the parties were unable to resolve the matter themselves and thus were required to pay out of pocket for the extensive services of a nationally prominent, mediator further negates any possibility that the proposed settlement is the product of fraud or collusion.  Further, FedEx has agreed to end the practices about which Plaintiffs complain and to pay up to $16.5 million to settle this action, despite its firm conviction that the Settlement Class Members are not entitled to any recovery.

      **2.  Complexity, expense, and likely duration of the litigation.**  While the fundamental allegations in this case are relatively simple, proof of those allegations is complex and expensive. Plaintiffs have had to engage an expert in data quality management to organize, standardize, and analyze the millions of records produced by FedEx.  That process has been both complex and costly. As Class Counsel's application for an award of expenses and fees will detail, Class Counsel have already expended well over a hundred thousand dollar in fees for this expert assistance.  Absent a settlement, the Class can expect to incur significant additional expert witness fees as the expert work continues.

      As Class Counsel's application will also detail, Class Counsel advanced millions of dollars in attorney time to date on this case.  Of course, substantial additional attorneys' fees will be incurred absent a settlement in the litigation of the motion to dismiss, class certification, summary judgment, and trial.  Indeed, with respect to the duration of this action, because so many phases of the litigation have yet to occur, including the possibility of both interlocutory and final appeals, it is very likely that this litigation will go on for years absent a settlement.

**3.**  **Amount of discovery engaged in by the parties.**  As detailed in Section III(B) above, the parties have engaged in substantial discovery in this action.  This factor thus militates in favor of preliminary approval.

**4/5.**  **Likelihood of success on the merits/Opinions of class counsel and class representatives.**  These factors essentially require the Court to consider the reasonableness of a settlement in light of the risks that a class will not win in litigation and the assessment of those risks by class counsel and the class representatives.  Here, the assessment of Class Counsel and the class representatives is that the settlement is more than reasonable in light of the risks the Settlement Class faces.  While Plaintiffs have developed what they believe is substantial evidence of improper practices with respect to Residential Delivery Charges, the Settlement Class Members face significant risks in this action.  The Settlement Class Members face at least the following risks:  grant of FedEx's Motion to Dismiss, which would eliminate the class RICO claims and thus the possibility of treble damages; denial of class certification, which would eliminate any class-wide recovery altogether; even if this Court grants class certification, the risk of the Sixth Circuit permitting an interlocutory appeal and reversing the grant of class certification; grant of summary judgment; and loss at trial. The settlement, of course, eliminates all of these those risks and replaces them with the certainty of entitlement to recovery for any Settlement Class Member who does not opt out.

While Class Counsel and the class representatives believe that the class has a strong case on the merits, FedEx has raised substantial defenses.  Those defenses include the class action ban in the Service Guide, which, if enforced, would eliminate the class claims, and the provision requiring customers to request a refund within sixty days, which if enforced, would bar the claims of almost all

Settlement Class Members.  In light of these risks and assessments, the Court has more than ample basis to approve the Settlement.

      **6.   Reaction of absent class members.**  This factor cannot be assessed unless and until the Court preliminarily approves the settlement and directs notice to absent class members.

      **7.   Public interest.**  To the extent the public interest is implicated by the settlement, this factor militates in favor of approval.  By providing prospective relief that ends the practices about which Plaintiffs complain, the Settlement Agreement provides benefits not only to Settlement Class Members who continue to use FedEx, but also to members of the public who may do so in the future. Moreover, approval of arms length settlements that provide substantial benefits to a class and avoid the burdens on the court system that would otherwise occur are also in the public interest.

      **Additional issues.**  Finally, the settlement does not provide "unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys." *Inter-Op Hip Prosthesis*, 204 F.R.D. at 350.  The settlement permits Class Counsel to seek appropriate incentive awards for the Named Plaintiffs because the Named Plaintiffs have devoted significant time and attention to this litigation (including being deposed), far beyond that provided by absent class members.  Likewise, the only distinction in the Settlement Agreement – between shipments as to which refunds were requested in accordance with the Service Guide and shipments as to which there was no refund request – is appropriate.  Class Counsel have not yet submitted their application for recovery of litigation expenses and an award of attorney fees, but they have: (1) ball-parked their anticipated recoverable expenses to date in the range of $500,000; and (2) agreed to seek the lower of 27.5% of the total value of the settlement – a percentage that is well within the standard range of 25-33% -- or $5.1 million.   These amounts are facially fair and reasonable in light of the proposed settlement and will be subject to Court scrutiny when final approval is addressed.

1110271.1

## VI.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS.

Where a case is presented for class certification and settlement at the same time, the "judge should make a preliminary determination that the proposed class satisfies the criteria of Rule 23(a) and at least one of the subsections of Rule 23(b)." *Manual for Complex Litigation (Fourth)* § 21.632 at 321.  Accordingly, the Court should preliminarily certify the following class:

> All FedEx National Account holder or Nine Digit Account holder who paid a Residential Delivery Charge, Delivery Area Residential Surcharge, Extended Delivery Area Surcharge, or Fuel Surcharge Component, between August 28, 2008 and July 13, 2011, for one or more Settlement Shipments and did not receive a full refund of those charges.[5]

Excluded from the Settlement Class are: (1) all judicial officers in the United States; (2) officers, directors, and employees of FedEx, their parent, subsidiaries and affiliated companies; (3) FedEx's parent, subsidiaries or affiliated companies; (4) Settlement Class Counsel; and (5) those persons or entities who choose to opt out of the Settlement.

With respect to the requirements of Rule 23(a), the numerosity requirement of subsection (1) is easily satisfied as the Settlement Class contains hundreds of thousands of members.  The

---

[5] A "Settlement Shipment" is a shipment which, according to FedEx's shipping data, has an "N" in the Courier_Indicated_Resi field.  Excluded from Settlement Shipments are the following: (1) any shipments to addresses that have "APT" or "apartment" in the address or which contain the same street address as another address in the Shipping Data that has "APT" or "apartment" in it (*e.g.*, if the Shipping Data has an address of 123 Main Street, Apt. 1, Atlanta, GA 30309, and another address of 123 Main Street, Atlanta, GA 30309, both addresses are excluded); (2) any shipments that were charged a Residential Delivery Charge, Delivery Area Residential Surcharge, Extended Delivery Area Residential Surcharge or the Fuel Surcharge Component during the Settlement Class Period but, according to FedEx's Shipping Data, were not paid by the customer; (3) any shipments for which the Settlement Class Member received a full refund of all shipping charges, including Residential Delivery Charges, Delivery Area Residential Surcharges, Extended Delivery Area Residential Surcharges or the Fuel Surcharge Component, during the Class Period under FedEx's money-back guarantee or otherwise and (4) any shipments shipped by a person or entity excluded from the Settlement Class.

commonality requirement of Rule 23(a)(2) is satisfied because the Settlement Class Members' claims present common issues of law and fact.  By way of example only, those common questions include: whether Defendants participated in a RICO enterprise, whether Defendants engaged in a pattern of racketeering activity that included imposing Residential Delivery Charges for deliveries to non-residential addresses and making false statements that residential deliveries had been performed, and whether Defendants acted with improper intent.  The typicality requirement of Rule 23(a)(3) is met because Plaintiffs, like all other Settlement Class Members, allege that they were charged Residential Delivery Charges for deliveries to non-residential locations.  The adequacy of representation requirement of Rule 23(a)(4) is satisfied because Plaintiffs' interests are not antagonistic to those of the Class, and Class Counsel have diligently litigated this action.

This case also satisfies the predominance and superiority requirements of Rule 23(b)(3).  Common questions that can be resolved on the basis of common proof predominate because every Settlement Class Member would rely on the same documentary and testimonial evidence of associations among the members of the enterprise, the same data regarding whether FedEx imposed Residential Delivery Charges for deliveries to locations that couriers identified as non-residential, and the same documents to establish that FedEx intentionally engaged in such misconduct.  The enterprise, pattern, and intent issues predominate over any individual issues that FedEx might identify.  Damages can be determined mathematically based on FedEx's own data.

The superiority requirement is satisfied because certifying a class for settlement is superior to resolving Settlement Class Members' claims in a host of individual trials.  Class certification and settlement allow all Settlement Class Members an opportunity to receive compensation for their claims without incurring the risks and expense necessary to pursue an individual lawsuit.  As one court noted:

1110271.1

> Resolution of class members' claims for injunctive and monetary relief in this single class action is superior to resolution of this controversy through the filing of a host of individual actions.  Class treatment is superior as a matter of efficiency, consistency, and ensuring that class members actually obtain relief. . . .  Class treatment is also superior because it removes real barriers to class members obtaining relief.  Absent class treatment, each employee would have to incur the difficulty and expense of filing an individual claim and would have to take the personal risk of litigating directly against his or her current or former employer.  Many employees would likely be unable to bear such costs and risks.

*Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 701 (N.D. Ga. 2001).

The Court should thus provisionally certify the class and appoint Plaintiffs Gokare and Goldstein as Class Representatives and Plaintiffs' counsel as Class Counsel.

## VII.  NOTICE, OPT OUTS, OBJECTIONS, AND SCHEDULE FOR SETTLEMENT APPROVAL.

The parties have submitted herewith a Notice of Proposed Class Action Settlement and Release of Claims (Exhibit 1 to the Settlement Agreement).  The Notice sets forth the material terms of the proposed settlement, describes the procedures for exclusion requests ("opt outs") and objections, and specifies the date, time and place of the final approval hearing.  The Settlement Agreement requires FedEx to mail notice to each Settlement Class Member's last known address within 60 days after the Court enters an Order preliminarily approving the Settlement Agreement.  Settlement Agreement ¶ 7(B)(i).  The Settlement Agreement also details procedures for handling returned notices.  *Id* at ¶ 7(B)(iv).  The Settlement Agreement further requires FedEx to include in the same mailing as the notice a Proof of Claim Form (Exhibit 2 to the Agreement) and a pre-addressed, postage prepaid envelope for returning that form.  *Id.*

The Settlement Agreement sets deadlines for Settlement Class Members to file Proof of Claim Forms, to mail in opt out notices to exclude themselves from the Settlement Class, and to file and mail objections to the Settlement Agreement (if they do not opt out).  The Settlement Agreement and the Notice detail all procedures applicable to the claim form, opt out, and objection procedures.

1110271.1

All of the foregoing provisions comport with Rule 23 and due process.  Plaintiffs thus request that the Court approve the notice, claim form, opt out, and objection procedures set forth in the Settlement Agreement.  The proposed Order attached to Plaintiffs' Motion as Exhibit B incorporates those procedures and establishes the following schedule for final approval of the settlement[6]:

| | |
|---|---|
| August 1 | Preliminary Approval |
| October 1 | FedEx mails notice |
| October 22 | Plaintiffs file Motion for Final Approval of Settlement and Request for Fees, Expenses, Incentive Awards |
| November 2 | Notice of Intent to Appear at Final Approval Hearing must be received |
| November 15 | Objections and Opt Outs must be received |
| November 22 | Final Approval Hearing |
| December 9 | Deadline for Class Members to postmark Proof of Claim Forms |
| December 22 | If Final Approval on November 22, absent appeal, Settlement Agreement becomes final and binding |
| February 5 | Individual awards mailed |

## <u>CONCLUSION</u>

Plaintiffs respectfully request that the Court preliminary approve the Settlement and enter the Proposed Order attached to their Motion as Exhibit B.

---

[6] The proposed schedule assumes that the final approval hearing will take place on November 22, 2013.  In the event the Court is unavailable that day, the parties request that, if possible, the Court set the hearing for another day that week.  Further, if the Court is unavailable on November 22, the parties will be glad to submit a revised Order that comports with the Court's schedule.

1110271.1

Respectfully submitted this 26th day of July, 2013,

_**/s/ Steven Rosenwasser**_
Jeffrey O. Bramlett
Ga. Bar No. 075780
Steven Rosenwasser
Ga. Bar No. 614908
Naveen Ramachandrappa
Ga. Bar No. 422036
Manoj S. Varghese
Ga. Bar No. 734668
BONDURANT MIXSON & ELMORE LLP
1201 W Peachtree St NW
Ste 3900
Atlanta, GA 30309
404-881-4100
bramlett@bmelaw.com
rosenwasser@bmelaw.com
ramachandrappa@bmelaw.com
varghese@bmelaw.com

Frank L. Watson, III
Tenn. Bar No. 15073
William F. Burns
Tenn. Bar No. 17908
WATSON BURNS, PLLC
253 Adams Ave
Memphis, TN 38103
901-529-7966
fwatson@watsonburns.com
bburns@watsonburns.com

Salu K. Kunnatha
Ga. Bar No. 430321
KUNNATHA LAW FIRM, PC
2970 Clairmont Rd Ste 905
Atlanta, GA 30329
skk@kunnathalaw.com
404-633-4200

_Attorneys for Plaintiffs_

1110271.1

**CERTIFICATE OF SERVICE**

I certify that, on July 26, 2013, I filed this **MEMORANDUM IN SUPPORT OF**

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT** with the

Clerk of Court using the CM/ECF system, which will notify the following counsel of record:

Richard R. Roberts
Justin Ross
Colleen Hitch Wilson
Richard M. Price
Graham W. Askew

Federal Express Corporation
3620 Hacks Cross Rd
Building B, Third Fl
Memphis, TN 38125

rrroberts2@fedex.com
justin.ross@fedex.com
chitchwilson@fedex.com
mattprice2@fedex.com
graham.askew@fedex.com

*/s/ Steven Rosenwasser*

1110271.1