**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| MANJUNATH A. GOKARE, P.C., and GOLDSTEIN, BORGEN, DARDARIAN & HO, P.C., on behalf of themselves and a class of all persons similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action |
| | ) | No. 2:11-CV-2131-JTF-CGC |
| v. | ) | |
| | ) | |
| FEDERAL EXPRESS CORPORATION and FEDEX CORPORATE SERVICES INC., | ) ) | Class Action |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING FINAL APPROVAL OF SETTLEMENT**

This case is before the Court on Plaintiffs' Motion for Final Approval of Settlement. Docket Entry ("DE") 269. The proposed Settlement Agreement ("Settlement") is in the record at DE 247-1. The Court preliminarily approved the proposed Settlement on August 1, 2013. DE 250. On November 22, 2013, the Court held a hearing to determine whether to grant final approval of the Settlement ("Final Approval Hearing").

Based on the pleadings in this action and the arguments presented at the Final Approval Hearing, and having considered all objections to the Settlement, the Court finds that the proposed Settlement is fair, reasonable, and adequate and that the proposed Settlement Class and Settlement Class claims meet the requirements for class certification under Federal Rule of Civil Procedure 23. The Court thus Grants Plaintiffs' Motion for Final Approval of Settlement, Approves the proposed Settlement, Overrules all objections to the Settlement, Certifies the Settlement Class defined below

1148911.1

1

for settlement purposes, Appoints Plaintiffs Manjunath A. Gokare, P.C., and Goldstein, Borgen, Dardarian & Ho, P.C., as Class Representatives, and Appoints Bondurant, Mixson & Elmore, LLP (Lead Counsel), Watson Burns, PLLC, and Kunnatha Law Firm as Class Counsel.

## Background

**The Class Claims and FedEx's Defenses.**   In accordance with Rule 23(c)(1)(B), the Court defines the class claims and Defendants' defenses as follows and incorporates by reference the First Amended Complaint (DE 172-1), the Amended Answer to Complaint (DE 13), and FedEx's Motion to Dismiss Count One (DE 171):  Plaintiffs allege that Defendants Federal Express Corporation ("FedEx Express") and FedEx Corporate Services, Inc. ("FedEx Services") wrongfully charged Residential Delivery Fees for shipments to numerous non-residential locations between August 28, 2008, and July 13, 2011 (the "Class Period").[1]  Plaintiffs contend that FedEx Express couriers identified many delivery locations (*e.g.*, banks, government offices) as non-residential, but that Defendants nevertheless imposed Residential Delivery Fees for deliveries to those locations. Plaintiffs claim that these allegedly improper Residential Delivery Fees resulted from a system of classifying addresses as business or residential that relied on either an incomplete third-party database or alleged designations of addresses by customers.  The proposed Settlement Class asserts breach of contract claims against FedEx Express and federal Racketeer Influenced and Corrupt Organizations Act ("RICO") claims, under 18 U.S.C. § 1962(c), against both FedEx Express and FedEx Services (collectively, "FedEx").  The alleged predicate acts for the RICO claim are mail and wire fraud.

---

[1] The phrase "Residential Delivery Fees" is used herein to encompass Residential Delivery Charges, Residential Components of Delivery Area Residential Surcharges, and Fuel Surcharge Components, as defined in Section I of the Settlement Agreement.

1148911.1

FedEx raises numerous defenses, including at least two based on the terms of the FedEx Service Guides that were in effect during the Class Period.  First, FedEx argues that all Settlement Class Members are bound by a provision of the Service Guide that states, "You agree that you will not sue us as a class plaintiff or class representative, join as a class member, or participate as an adverse party in any way in a class-action lawsuit against us."  (Mot. for Final Approval, Exhibit 5). Second, FedEx argues that the claims of all Settlement Class Members who did not request a refund of Residential Delivery Fees are barred by provisions of the Service Guide that state, "Requests for invoice adjustments due to an overcharge must be received within 60 days after the original invoice date (or ship date if prepaid by cash, check, money order or credit card)," and "Any right that you might have to damages, refunds…injunctive relief…or any other legal or equitable relief whatsoever against us under any cause of action arising from the transportation of any package pursuant to the FedEx Service Guide shall be extinguished unless you first comply with all applicable notice periods and requirements in these terms and conditions including, but not limited to, the periods and requirements for providing notice under the Billing, Claims and Money-Back Guarantee Policy sections."  *Id.*  According to FedEx, less than one percent of the Settlement Class Members (2,736 out of 476,573) requested refunds for Settlement Shipments (which are defined in the Settlement Agreement), and less than one percent of the Residential Delivery Fees at issue ($550,615 out of $79,418,644) were charged for Settlement Shipments as to which refunds were requested.  (Mot. for Final Approval, Exhibit 4).

Further, FedEx disputes that all of the delivery locations Plaintiffs have identified as non-residential are non-residential, argues that it is not liable if a customer designated a delivery location

as residential, argues that its conduct does not constitute mail or wire fraud, and argues that no RICO enterprise exists.

### The Settlement

The Settlement Agreement provides substantial benefits to the Settlement Class.  First, the Settlement Agreement puts in place prospective relief that addresses residential delivery fee practices that Plaintiffs contend caused the charges at issue.  The Settlement provides that, for a period of three years from its Effective Date:

(1)   When a customer indicates on www.fedex.com that a delivery address is residential, FedEx will display a notice informing the customer that a delivery to a residential location will result in the imposition of a surcharge;

(2)   When a customer calls to inquire about or dispute the validity of a Residential Delivery Charge, Delivery Area Surcharge, or Extended Delivery Area[ ] Surcharge, FedEx will no longer rely solely on a third party database to determine the validity of the charge;

(3)   FedEx will no longer charge a Residential Delivery Charge, or the residential component of a Delivery Area Surcharge or Extended Delivery Area[ ] Surcharge, based solely on the customer's initial designation of a delivery location as residential;[2] and

(4)   FedEx will no longer rely solely on a third-party database to make its residential classifications.

---

[2] This provision does not apply to customers who contractually agree that all of their shipments, or a certain subset of shipments, will be designated as residential and will be charged residential delivery fees regardless of the actual nature of the delivery location.

1148911.1

Settlement Agreement § 2(A).  These provisions will help protect Settlement Class Members and others from future inaccurate Residential Delivery Fees.

Second, the Settlement Agreement provides that FedEx will pay up to $16.5 million (from which attorneys' fees, expenses and incentive awards will be deducted).  Of that amount, $500,000 is allocated to customers who, according to FedEx's Shipping Data, sought but were denied refunds of Residential Delivery Fees.  This $500,000 represents approximately 91% of the total amount of Residential Delivery Fees that such customers paid for Settlement Shipments.  (Mot. for Final Approval, Exhibit 4) ($500,000 out of $550,615).  "Settlement Shipments" are deliveries within the Class Period that went to locations for which the *courier_indicated_resi* field in FedEx's Shipping Data contains an "N" (for "no"), *i.e.*, the locations that Plaintiffs contend, for purposes of this Settlement, are not residential locations.[3]  Settlement Agreement §1(JJ).  This 91% recovery is fair, reasonable, and adequate in light of the risks that customers who requested refunds face in continued litigation, including the risk presented by the class action ban in the FedEx Service Guide.  Because these customers already complied with the refund requirements in the Service Guide, the Settlement does not require them to submit Proof of Claim Forms to obtain recovery.

The remaining $16 million is allocated to FedEx customers who did not comply with the refund requirements in the FedEx Service Guide, *i.e.*, did not request refunds of allegedly improper Residential Delivery Fees.  This $16 million represents approximately 20% of the total amount of Residential Delivery Fees that were paid for Settlement Shipments as to which no refund was requested.  (Mot. for Final Approval, Exhibit 4).  Because customers in this category have not complied with the refund requirements in the FedEx Service Guide and have not requested refunds

---

[3] Plaintiffs contend that an "N" in the *courier_indicated_resi* field reflects that a FedEx Express courier determined that the delivery location at issue was not residential.

for allegedly improper Residential Delivery Fees, they are required to submit Proof of Claim Forms seeking monetary recovery. The Proof of Claim Forms are simple, requiring only that a Settlement Class Member provide basic contact information and verify its authority to make a claim. FedEx has provided Settlement Class Members (in the same mailing as the Notice) with pre-addressed, postage pre-paid envelopes they can use to return the Proof of Claim Form. Further, Settlement Class Members can go to a website, http://www.noticeclass.com/GokareSettlement, to obtain information about the Settlement and submit a Proof of Claim Form. The opportunity for a 20% recovery for customers who did not request refunds is fair, reasonable, and adequate in light of the many risks these customers face in continued litigation.

Under the Settlement Agreement, Settlement Class Members who face a risk of recovering nothing if this litigation continues may obtain monetary recovery. According to FedEx Express, no other litigant has ever filed a claim against it alleging the imposition of Residential Delivery Fees for deliveries to non-residential locations, much less obtained the substantial relief provided by the Settlement Agreement. (Mot. for Final Approval, Exhibit 3) (Response to Interrogatory No. 1).

## Final Approval of Settlement

Rule 23(e) provides that a class action may be settled "only with the court's approval" and that a court may approve a class action settlement only after "finding that it is fair, reasonable, and adequate." Fed. Rule Civ. P. 23(e)(2). "To determine whether a settlement agreement satisfies Rule 23's fairness standard," the Sixth Circuit has directed district courts to "consider: '(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public

1148911.1

6

interest.'" *Moulton v. United States Steel Corp.*, 581 F.3d 344, 349 (6th Cir. 2009) (*quoting Int'l Union, United Automobile, Aerospace, & Agricultural Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007) ("*UAW*")).  Further, courts consider whether a class action settlement "gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members." *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983).  Each of the foregoing factors warrants approval of the proposed Settlement in this case.

**Risk of fraud or collusion**.  The history of this litigation, the use of an independent mediator, and the terms of the proposed Settlement negate any risk of fraud or collusion here.  The parties engaged in adversarial proceedings over whether the case should be dismissed, the scope and nature of discovery, and numerous other issues.  *See Moulton*, 581 F.3d at 351 ("The parties litigated for almost four years before reaching a settlement agreement.  The court fielded numerous contested pretrial motions.").  The parties did not resolve the case by themselves, but only after they retained an independent, neutral, and well-respected mediator, Michael Dickstein.  "The participation of an independent mediator in the settlement negotiations virtually assures that the negotiations were conducted at arm's length and without collusion between the parties." *Hainey v. Parrott*, 617 F. Supp. 2d 668, 673 (S.D. Ohio 2007) (citations omitted); *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, No. 2:09-2009 SMH V, slip op. at 10 (W.D. Tenn. Aug. 5, 2013) ("The parties protected against the risks of fraud or collusion by using a highly qualified and experienced independent mediator during settlement negotiations.").  Mr. Dickstein has attested that the negotiations were arm's length negotiations and that there was no collusion.  (Declaration of Michael Dickstein).  FedEx agreed to change residential delivery fee practices and to pay up to $16.5 million to settle this action, despite its conviction that the Settlement Class Members are not entitled to any

recovery.  "Courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered."  *Date v. Sony Electronics, Inc.*, 2013 WL 3945981, at *12 (E.D. Mich. July 31, 2013).  Here, there is no such evidence. Rather, the record – including the Declarations of Mr. Dickstein and Lead Counsel Jeffrey O. Bramlett - establishes that the Settlement is the product of arms-length negotiations.

      **Complexity, expense, and likely duration of the litigation**.  This factor also favors final approval because the proposed Settlement "secures a substantial benefit for the Class in a highly complex action, undiminished by further expenses, and without delay, costs, and uncertainty of protracted litigation."  *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). Proof of the allegations in this case is complex and expensive.  Plaintiffs have retained experts in data quality management to organize, standardize, and analyze millions of shipping records.  Declaration of Jeffrey O. Bramlett ¶¶ 40, 60-61.  Indeed, Class Counsel have spent over $200,000 on data management experts.  *Id.* ¶ 60.  If the litigation continues, the Settlement Class will incur significant additional fees for data experts and other experts.  For example, all testifying experts would have to prepare formal reports, would be deposed, would likely be involved in *Daubert* challenges, and would potentially have to testify at trial.

      The Settlement Class would also incur substantial additional attorneys' fees if the litigation continues.  Although extensive discovery has occurred, the case has not yet passed the motion to dismiss stage, which means that additional attorney work will be required for:  a hearing on the motion to dismiss; briefing and argument on a motion for class certification, a potential interlocutory appeal of this Court's ruling on class certification, and summary judgment motions; preparation for and the conduct of a trial; and briefing and argument on post-trial motions and any appeal from a

final judgment.  A review of the value of the attorney work performed to date establishes that the attorneys' fees that would be incurred if the litigation continues would run well into the millions of dollars.  *See* Bramlett Dec. ¶ 54.

As to the "likely duration of the litigation," because many phases of the case have yet to occur, including the possibility of both interlocutory and final appeals, it is very likely this litigation will go on for many years absent a settlement.  *Moulton*, 581 F.3d at 349; *see Hainey*, 617 F. Supp. 2d at 674 ("Prosecution of the Defendants' interlocutory appeal to a conclusion likely would have delayed resolution of the case for two more years.").  "[T]he difficulty Plaintiffs would encounter in proving their claims, the substantial litigation expenses, and a possible delay in recovery due to the appellate process" and to the proceedings yet to occur in this Court "provide justifications for this Court's approval of the proposed Settlement."  *Broadwing*, 252 F.R.D. at 373-74.

**Amount of discovery engaged in by the parties**.  The parties have engaged in substantial discovery.  Plaintiffs have, *inter alia*, obtained data on more than 450 million shipping transactions, reviewed more than 145,000 pages of documents, taken or defended sixteen depositions, obtained responses to multiple sets of interrogatories, requests for production, and requests for admission, and worked with numerous experts and consultants.  Bramlett Dec. ¶¶ 37-43.  Plaintiffs have obtained extensive information on:  FedEx's practices and procedures for classifying delivery locations as residential or business locations; FedEx's practices and procedures for imposing residential delivery charges; FedEx's practices and procedures for billing, collecting, and adjusting residential delivery charges; alleged deficiencies in residential delivery classification, charging, billing, and adjustment practices and procedures during the Class Period; FedEx's knowledge; FedEx's Service Guides and the policies contained therein; the extent to which Settlement Class Members requested and were

granted refund requests; the damages incurred by Settlement Class Members; and FedEx's retention and management of Shipping Data and other data. *Id.* ¶ 43.  In light of such discovery, the case has reached a stage at which settlement is appropriate. *Broadwing*, 252 F.R.D. at 375 ("the proposed Settlement was negotiated in an adversarial manner after substantial factual investigation, intensive legal analysis and expert investigation and consultation"); *Regions Morgan Keegan*, slip op. at 11 (approving class settlement where plaintiffs "completed a substantial amount of discovery" although case had "not reached the summary judgment stage").

**Likelihood of success on the merits.**  In evaluating this factor, the Court's "task is not to decide whether one side is right or even whether one side has the better of [the] arguments….The question rather is whether the parties are using settlement to resolve a legitimate legal and factual disagreement." *UAW*, 497 F.3d at 632.  That is the case here.

For example, FedEx contends that the provisions of its Service Guides preclude all Settlement Class Members from participating in any class action against it and bar the claims of all Settlement Class Members who did not request refunds.  Plaintiffs contend, *inter alia*, that these provisions do not apply to claims against FedEx Services and that the provisions are unconscionable under federal common law.  Similarly, FedEx contends that, as a matter of law, its conduct does not constitute mail or wire fraud and that no RICO enterprise exists.  Plaintiffs have presented arguments to the contrary in their briefing on the Motion to Dismiss.  Plaintiffs contend that FedEx's Shipping Data establishes that FedEx knowingly charged Residential Delivery Fees for deliveries to non-residential addresses. FedEx disputes that all of the delivery locations identified by Plaintiffs are non-residential and denies that it acted with improper intent.  These are legitimate legal and factual disagreements, such that this factor favors approval of the Settlement.

The issues listed above, as well as other defenses raised by FedEx, present substantial obstacles to recovery by the Settlement Class.  While the Settlement Class might prevail in continued litigation, the existence of these obstacles warrants approval of the Settlement.  The certainty of recovery and prospective relief makes the Settlement Agreement a better course of action for the Settlement Class than proceeding with the uncertainty of whether the Settlement Class would overcome the potential difficulties in its case.  *Rotuna v. West Customer Mgmt. Group*, 2010 WL 2490989, at *6 (N.D. Ohio June 15, 2010) ("[G]iven the factual and legal complexity of the case, there is no guarantee that Representative Plaintiff and the Class would prevail at trial….Given the uncertainty surrounding a possible trial in this matter, the certainty and finality that come with settlement also weigh in favor of a ruling approving the agreement.").

That the Settlement Agreement provides for recovery of less than all the damages the Settlement Class Members might recover if they were entirely successful after years of litigation (the Settlement provides for recovery of approximately 91% of the alleged overcharges for Refund Requested Shipments and an opportunity for recovery of approximately 20% of the alleged overcharges for No Refund Requested Shipments) is not a reason to reject the Settlement.  The claims of the Settlement Class Members are at risk given the provisions of the FedEx Service Guide.  Courts recognize that a settlement agreement may warrant approval even if it significantly discounts the potential value a case would have in the event of successful litigation.  *Regions Morgan Keegan*, slip op. at 14 ("Although the proposed Settlement allows Class Members to recover, at best, 18% of their losses as alleged by Plaintiffs, monetary relief is guaranteed.  The Plaintiffs could succeed on the merits, but the likelihood is problematic and their theory of recovery introduces unusual litigation risks.  Based on these considerations, the proposed Settlement confers a substantial benefit on the

Class Members."); *Date*, 2013 WL 3945981, at *5 (approving settlement in which each class member received $60 gift card redeemable at Sony stores where plaintiff estimated value of individual class member claims at $200) ("The parties arrived at the $60 settlement figure as a reasonable discount from the $200 value, factoring in the risk of loss, the risks of class certification being denied and the costs of continued litigation and appeals."); *Schaefer v. Tannian*, 1995 WL 871134, at *7 (E.D. Mich. Apr. 17, 1995) ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not render the settlement inadequate or unfair.  This is particularly true in cases where monetary relief is but one form of the relief requested by the plaintiffs.") (citation omitted).  As the Sixth Circuit has stated:

> A court may not withhold approval simply because the benefits accrued from the decree are not what a successful plaintiff would have received in a fully litigated case.  A decree is a compromise which has been reached after the risks, expense, and delay of further litigation have been assessed.  Class counsel and the class representatives may compromise their demand for relief in order to obtain substantial assured relief for the plaintiffs' class.  The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.

*See Williams*, 720 F.2d at 922-23.  "Furthermore, if the Class were to recover a judgment larger than the Settlement offer, the additional delay due to post trial motions and the appellate process could deny Class Members a recovery for years.  Given the time value of money, a future recovery, even one greater than the proposed Settlement, may be less valuable to the Class than receiving the benefits of the proposed Settlement now.  To delay this matter further would not substantially benefit the Class."  *Broadwing*, 252 F.R.D. at 374 (citations omitted).

The Settlement Class Members face at least the following risks:  grant of FedEx's Motion to Dismiss, which would eliminate the class RICO claims and thus the possibility of treble damages; denial of class certification, which would eliminate any class-wide recovery altogether; even if this

Court grants class certification, the risk of the Sixth Circuit permitting an interlocutory appeal and reversing that certification; grant of summary judgment; loss at trial; and loss on a post-trial appeal. Collectively, these risks create "the real possibility that Plaintiff[s] and Class Members could ultimately recover $0 if this case continues through the class certification phase and beyond." *Date*, 2013 WL 3945981, at *9. The Settlement eliminates all of these risks and replaces them with the certainty of injunctive relief and entitlement to recovery. The monetary relief provided by the Settlement is fair, reasonable, and adequate in light of the difficulty of this case, such that the likelihood of success factor favors approval of the Settlement.

      **Opinions of class counsel and class representatives**. "It is well settled that, in approving a class action settlement, the court 'should defer to the judgment of experienced counsel who has competently evaluated the strength of [its] proofs.'" *Broadwing*, 252 F.R.D. at 375 (*quoting Williams*, 720 F.2d at 922-23). "Class counsel's judgment that settlement is in the best interests of the class 'is entitled to significant weight, and supports the fairness of the class settlement.'" *Date*, 2013 WL 3945981, at *9 (citation omitted). Here, Class Counsel and the Class Representatives believe that the Settlement Agreement is in the best interests of the Settlement Class and warrants approval. Bramlett Dec. ¶ 3. Under governing law, their judgment is a factor that weighs strongly in favor of approval of the Settlement.

      **Reaction of absent class members; rulings on objections**. There are 476,573 members of the Settlement Class. (10/15/13 Declaration of Justin Ross). Only nine of those 476,573 Settlement Class Members purport to object to the Settlement, and only eighty-five have opted out. The small number of objections and opt outs, particularly in a Settlement Class of this size, itself demonstrates the fairness, adequacy, and reasonableness of the Settlement. *Broadwing*, 252 F.R.D. at 376 ("'[t]he

1148911.1

small number of objectors is a good indication of the fairness of the settlement'") (citation omitted);
*McGee v. Continental Tire N. Am., Inc.*, 2009 WL 539893 (D.N.J. Mar. 4, 2009) (75 opt outs from a
class of 285,998 shows that "the Class [] strongly favors approval of the Settlement"); *McLennan v.
LG Electronics USA, Inc.,* 2012 WL 686020, at *6 (D.N.J. Mar. 2, 2012) (107 opt-outs out from a
class of 418,411 favored approval of settlement).  Indeed, "'[a] certain number of ... objections [and
opt-outs] are to be expected in a class action.... If only a small number are received, the fact can be
viewed as indicative of the adequacy of the settlement,'" and "'[a] court should not withhold
approval of a settlement merely because some class members object.'"  *In re Skechers Toning Shoe
Prods. Liab Litig.*, 2013 WL 2010702, at *7 (W.D. Ky. May 13, 2013) (citations omitted).  Here,
"[t]hat the overwhelming majority of class members have elected to remain in the Settlement Class,
without objection, constitutes the 'reaction of the class,' as a whole, and demonstrates that the
Settlement is 'fair, reasonable, and adequate.'"  *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508,
527 (E.D. Mich. 2003) (citation omitted).  Thus, this factor favors approval of the Settlement.

     None of the objections the Court has received provide a basis for rejecting the Settlement.
First, the preliminarily-approved Settlement carries a presumption of reasonableness, and none of the
objectors has carried the "heavy burden" of overcoming that presumption.  *Skechers*, 2013 WL
2010702, at *3 ("In fact, '[o]nce preliminary approval has been granted, a class action settlement is
presumptively reasonable, and an objecting class member must overcome a heavy burden to prove
that the settlement is unreasonable.'") (citations omitted).  Second, "[g]eneral objections without
factual or legal substantiation carry little weight," and this is the case with many of the objections
here.  4 *Newberg on Class Actions* § 11:58, at 208 (4th ed.).  Third, none of the objectors has
demonstrated the injury-in-fact or redressability required for standing to object.  *See, e.g., Blessing v.*

*Sirius XM Radio Inc.*, 507 Fed. Appx. 1, 5 (2d Cir. 2012) ("As objectors failed to state an injury-in-fact, we find that they lack standing to challenge the district court's diversity request in its class certification order").  Fourth, as set forth below, each of the objections lacks merit.

**The DKT Consulting/Testerman Objection.**  David Testerman of DKT Consulting, which has a Total Claim of $10.12, has submitted a letter objecting to the attorneys' fees, expense reimbursement, and incentive awards requested here based on his "positive experience with FEDEX" and "belief that lawyers" such as the lead law firm "are an impediment to our economy."  DE 263.  The letter contains no legal or factual grounds for denying the requested fee, expense, or incentive awards, and the Court rejects the objection on that basis.  The Court further rejects the objection because Plaintiffs and Class Counsel have made a sufficient legal, factual, and evidentiary showing that the requested fees, expense reimbursement, and incentive awards are appropriate.  Further, Mr. Testerman's positive experience with FedEx is not a reason to prevent the Settlement Class Members, who all have claims against FedEx relating to allegedly improper residential delivery fees, from receiving the benefits of the Settlement.  Mr. Testerman's personal opinion regarding class action attorneys is also not a basis for rejecting the Settlement.  The law recognizes that society has an interest in encouraging attorneys to pursue contingent fee class actions on behalf of consumers.  *Skechers*, 2013 WL 2010702, at *9 ("'Encouraging qualified counsel to bring inherently difficult and risky but beneficial class actions...benefits society.'....[A]ttorneys who take on class action matters enabling litigants to pool their claims provide a huge service to the judicial process and should be rewarded for their efforts.") (citations omitted).

**The Hopewell Federal Credit Union/Oneson Objection.**  Marvin Oneson of Hopewell Federal Credit Union ("Hopewell"), which has a Total Claim of $2.64, has submitted a letter

objecting to the requested awards of attorneys' fees, expenses, and incentive awards.  DE 259.  In light of the Settlement's $5 minimum payment, Hopewell will receive full recovery and thus has no standing to object.  Even if Hopewell had standing, the Court would reject its objections.

Hopewell first "propose[s] that the court reduce the amount of attorney fees down to 5% of the settlement."  *Id.*  Hopewell provides no legal or factual grounds for this proposal, and the Court rejects it on that basis.  Further, as noted above, Plaintiffs and Class Counsel have made a sufficient legal, factual, and evidentiary showing that a fee award of 30.9% of the common fund, or $5.1 million, is appropriate.  A 5% fee award here would violate the Sixth Circuit's dictate that "[w]hen awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved."  *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).  Hopewell also provides no legal or factual grounds for its proposal that Class Counsel either be forced to obtain reimbursement for their out-of-pocket expenses from the attorneys' fees award (of five percent) or that the expense award in this case be capped at $5,000, and the Court rejects the proposal on that basis.  Further, Plaintiffs and Class Counsel have made a sufficient legal, factual, and evidentiary showing that the expense reimbursement requested here is appropriate.  *See, e.g.*, *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *8 (E.D. Tenn. May 17, 2013) (approving reimbursement of expenses where "[i]n addition to their petition for attorneys' fees [of $52.9 million], class counsel seek reimbursement of out-of-pocket expenses incurred during the representation of the class in the additional amount of $798,237.66"); *Cardizem CD*, 218 F.R.D. at 534-35 ("In addition to their request for Attorneys' fees, Plaintiffs' Counsel seek reimbursement of $1,355,045.98 in expenses.  Under the common fund doctrine, class counsel is entitled to reimbursement of all reasonable out-of-pocket litigation expenses

and costs in the prosecution of claims and in obtaining settlement….") (footnote omitted) (emphasis added).  The Bramlett Declaration details the bases for Class Counsel's expenses in this action and establishes their reasonableness.  DE 270-2 (Bramlett Dec.) ¶¶ 57-77.  Finally, Hopewell provides no legal or factual basis for its proposal that the aggregate amount of the incentive awards to the Named Plaintiffs be limited to $5,000, and the Court rejects the proposal on that basis.  Further, Class Counsel have made a sufficient legal, factual, and evidentiary showing that the requested incentive awards of $5,000 each to Plaintiffs Gokare and Goldstein are appropriate.

**The Kopelowitz Ostrow P.A. ("KO") Objection.**  The Court rejects all of KO's objections, including its objections to the claim form and reversion features of the Settlement, its argument that the "clear sailing" provision is evidence of collusion or otherwise improper, and its argument that the percentage-of-the-fund attorneys' fees award in this case should be based on the amount of the fund that Settlement Class Members choose to claim rather than the total amount of the common fund obtained by Class Counsel.

First, the Court rejects the notion that there was any collusion in the negotiation of the Settlement Agreement, including with regard to the negotiation of the attorneys' fees provisions.  The declarations of the independent mediator (Mr. Dickstein), Lead Counsel for the Settlement Class (Mr. Bramlett), and FedEx's Counsel (Mr. Ross), as well as the history of this litigation and the terms of the Settlement, convince the Court that the parties engaged in rigorous arm's length bargaining and that no collusion occurred.

The requirement that Settlement Class Members submit a claim form to obtain a share of the Net Settlement Fund for No Refund Requested Shipments is fair and reasonable and provides no basis for rejection of the Settlement.  First, it mirrors the terms of the FedEx Service Guide, the pre-

existing contract on which Settlement Class Members are suing, which states that customers must request a refund within sixty days to obtain recovery for an alleged overcharge. Second, the claim form requirement, particularly in the context of the simple form used here, is a reasonable tradeoff to obtain: FedEx's agreement not to assert its defense that Settlement Class Members are barred from recovery for all claims relating to charges on shipments delivered more than sixty days prior to the filing of this suit; FedEx's agreement to provide the partial monetary recovery set forth in the Settlement Agreement; and FedEx's agreement not to argue that any of the locations to which Settlement Shipments were delivered are actually residential. Third, the claim form is extremely simple, includes a postage-paid, pre-addressed envelope and does not require Settlement Class Members to gather invoices or provide any back-up documentation. The Court finds the use of a simple claim form to be evidence of good faith, not bad faith, and rejects the suggestion that the parties adopted the claim form to deter claims.

Likewise, the provisions of the Settlement Agreement that entitle FedEx to funds that Settlement Class Members do not claim from the Net Settlement Fund for No Refund Requested Shipments are fair and reasonable and provide no basis for rejection of the Settlement. As noted above, the Court does not find this feature of the Settlement, which is a negotiated feature of other settlements that courts have approved, to be evidence of collusion. 4 *Newberg on Class Actions* § 12:1 (4th ed.) ("As a result of arm's-length bargaining, a settlement may or may not include the following…recapture clauses for reversion to defendants of unclaimed settlement funds"). The reversion feature is also reasonable for a number of reasons. First, it mirrors the terms of the FedEx Service Guide, the contract on which the Settlement Class Members are suing. The Service Guide states that a customer may not obtain recovery, *i.e.*, that FedEx is not required to make a payment, if

1148911.1

a customer does not request a refund for an overcharge within sixty days.  Second, this feature of the Settlement is again a reasonable tradeoff to obtain:  FedEx's agreement not to assert its defense that Settlement Class Members are barred from recovery for all claims relating to charges on shipments delivered more than sixty days prior to the filing of this suit; FedEx's agreement to provide the partial monetary recovery set forth in the Settlement Agreement; and FedEx's agreement not to argue that any of the locations to which Settlement Shipments were delivered are actually residential.  Third, it is not unreasonable to provide that if a Settlement Class Member chooses not to return a simple claim form, FedEx is not required to make a payment to that Settlement Class Member.

With regard to attorneys' fees, the Court concludes that the proper approach to awarding fees under the percentage-of-the-fund method is to award fees based on a percentage of the entire common fund obtained by Class Counsel, not the amount that Settlement Class Members choose to claim.  (As set forth in the Court's Order granting Plaintiffs' and Class Counsel's requested attorneys' fees, the Court has determined that the percentage-of-the fund method is the proper method for a fee award in this case).  A percentage-of-the-fund award based on the entire fund is proper under United States Supreme Court and Sixth Circuit law.  A leading commentator on class actions summarized the law as follows:

> When a lump sum has been recovered for a class, that sum represents the common fund benchmark on which a reasonable fee will be based.  When, however, the defendant reserves the right to recapture any unclaimed portion of the common fund after class members have had an opportunity to make their claims against the fund, or when a recovery is based on a formula payment to each class member based on the level of relevant purchases or transactions involved of class members who file proofs of claim, the question arises concerning whether the benchmark common fund amount for fee award purposes comprises only the amount claimed by class members or that amount potentially available to be claimed.  In *Boeing Co. v. Van Gemert*, [444 U.S. 472 (1980)] the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.

1148911.1

4 *Newberg on Class Actions* § 14:6, at 570 (4th ed.) (footnote omitted).

*Boeing* establishes that class counsel who obtain a common fund have obtained a benefit for

the entire class, whether or not class members exercise their rights to obtain that benefit:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole….[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf.  Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class….To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class.  Their right to share the harvest of the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel….Since the benefits of the class recovery have been "traced with some accuracy" and the costs of recovery have been "shifted with some exactitude to those benefiting," we conclude that the attorney's fee award in this case is a proper application of the common-fund doctrine.

444 U.S. at 478-81 (citations and footnotes omitted).

This Court concludes that the *Boeing* analysis applies to this Settlement and follows the

Supreme Court's statement that, "[T]his Court has recognized consistently that a litigant or a lawyer

who recovers a common fund for the benefit of persons other than himself or his client is entitled to a

reasonable attorney's fee from the fund as a whole." *Id.* at 478.

This Court's approach is also proper under the Sixth Circuit's decision in *Moulton v. United*

*States Steel Corporation*, 581 F.3d 344 (6th Cir. 2009).  There, the Sixth Circuit rejected an objection

similar to KO's and confirmed that a district court should base a common fund fee award on the total

amount of a settlement rather than the amount that is claimed.  The parties in *Moulton* reached a

$4.45 million settlement.  The settlement agreement provided for a fee award of thirty percent (30%)

of the gross amount of the settlement, or $1.335 million.  Class members claimed approximately

$1.21 million of the settlement funds, leaving $1.28 million to go to public schools under the terms of the agreement.  A set of objectors argued, like KO here, that the amount of the fee should be based on the $1.21 million that class members had claimed rather than the $4.45 million total amount of the settlement.

> The Sixth Circuit rejected this objection:
>
> The thirty percent attorney's fee award, [objectors] add, is too high, claiming that it "will exceed the recovery of the Class by over $100,000.00."  But this estimate is wrong:  The objectors focus on the amount *claimed* rather than the amount *allocated*.  Claimants, it is true, will in the aggregate receive less than Class Counsel.  But that is because just 4,026 class members submitted claims.  Except for fees and costs, class members had the first shot at the settlement proceeds—nearly $2.5 million by our estimate—which exceed the amount paid to Class Counsel by some measure.  That the public schools will receive $1.28 million in *unclaimed* funds does not reflect on the settlement's fairness.

*Id.* at 352 (italics in original).  *Moulton* demonstrates that the amount of a fund that is claimed by class members is not the proper measure of attorneys' fees.

The Court further finds persuasive the reasoning of Circuit Courts that have held that it is an abuse of discretion for a court to base a percentage-of-the-fund award on the amount claimed by class members rather than the total amount of a common fund.  *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) ("In this case, the District Court calculated the percentage of the Fund on the basis of the claims made against the Fund, rather than on the entire Fund created by the efforts of counsel.  We hold that this was error…..  The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class.  An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."); *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar.") (footnote omitted).

Even if a court has the discretion to base a percentage-of-the-fund award on the amount that class members claim rather than the entire amount of a fund, the Court would not do so in this case. Class Counsel here obtained both injunctive relief that addresses residential delivery fee practices that gave rise to the Settlement Class's claims and substantial monetary relief.  Class Counsel obtained that relief in the face of significant obstacles, including a class action ban, a refund request requirement with which more than 99.8% of the Settlement Class did not comply, a sixty-day contractual time bar, and numerous merits defenses.  For Class Counsel to receive a fee award that amounts to 1.26 times a conservative estimate of their lodestar does not represent a windfall (especially in light of the risk Class Counsel took of obtaining no recovery of the millions of dollars they invested in the case), but rather appropriate compensation.  It would not be appropriate for Class Counsel to receive a lower award because Settlement Class Members choose not to claim funds that are easily available to them.  The requested fee award is well within, and below, the typical range of attorneys' fees awards in similar cases, both on a percentage-of-the-fund basis and a lodestar basis.

The Court rejects the claim that the "clear sailing" provision is evidence of collusion in this case or otherwise improper.  Such provisions are contained in many settlements and have the reasonable purpose of permitting defendants to assess their total exposure.  In any event, the clear sailing provision does not affect the award of attorneys' fees here as the Court has conducted a rigorous analysis of the fee request in light of the applicable law and facts.

**The Connors Objection.**  The Court rejects the objection filed by Maureen Connors.  DE 274.  In light of the Settlement's $5 minimum payment, Connors (whose Total Claim is $3.03) will obtain full recovery, and she thus has no standing to object.  Even if she had standing, the Court would reject her objections.

1148911.1

Connors first requests that the Court scrutinize the relationships among Class Counsel and the Named Plaintiffs.  The Court has done so, finds no evidence of a conflict of interest, and finds that Class Counsel and the Named Plaintiffs have adequately represented the Settlement Class.  The Court also finds no evidence of an agreement among Class Counsel and the Named Plaintiffs for compensation beyond that provided for by the Settlement Agreement.  Connors neither alleges nor provides evidence of any conflict of interest, and her objection is also rejected for lack of substantiation.

Connors next argues that the Court should not value the injunctive relief obtained by Class Counsel at $5 million and thus "should not allow the attorney's fees award calculation in this case to be based upon $21,500,000 but instead only 16.5 Million Dollars."  DE 274 at 5.  Class Counsel have in fact requested 30.9% of the common fund of $16.5 million (not an award based on a fund of $21.5 million).  The presence of important injunctive relief, though, whether or not valued at $5 million, is a factor confirming the reasonableness of Class Counsel's request for a 30.9% award.  In any event, the Court finds that the $5 million minimum valuation of the injunctive relief is reasonable given the evidence that the total Residential Delivery Fees at issue for the approximately three-year Class Period in this case are approximately $79,418,644.  DE 269-4 (10/15/13 Ross Dec.) ¶ 4.

Connors also provides no legal or factual support for her claim that FedEx had a pre-existing legal obligation to comply with the injunctive relief set forth in the Settlement Agreement, and the Court rejects this objection on that basis.  The Court is unaware of any law or regulation that would require the specific steps to which FedEx has agreed in the Settlement.

1148911.1

For the reasons stated above, the Court rejects Connors' objections to the use of a claim form and her argument that attorneys' fees should be based on the amount that Settlement Class Members choose to claim.

The Court rejects the erroneous contention that Settlement Class Members have only fifteen days to submit claims. The period for submitting claims is seventy days, from September 30, 2013, when the Notice was sent, to December 9, 2013, which is a reasonable period.

The Court rejects Connors' claim that the Notice is inadequate. As set forth in FedEx's October 10, 2013 filing, the misspelling of the settlement website address that was contained in a Notice initially mailed by the Settlement Administrator was corrected in subsequent versions of the Notice, and the Settlement Administrator immediately put in place a system that automatically directed persons who used the misspelled website name to the correct website. DE 261. Further, Settlement Class Members have always been able to return claim forms in the postage prepaid, pre-addressed envelopes provided in the Notice packets. The Court finds that this mistake, which immediately corrected, does not undermine the sufficiency of the notice process.

The Court rejects Connors' various other complaints about the Notice. The Notice contains extensive information, including all of the information required by Rule 23(c)(2)(B). It directly addresses subjects that Connors identifies and makes adequate provision for Settlement Class Members to obtain additional information, including by noting that further details are contained in publicly-available pleadings and by identifying the Settlement Administrator, three sets of lawyers representing the Settlement Class, and the settlement website. There is no evidence that the Notice was insufficient or confusing to Settlement Class Members.

**The Kirby Objection**.  The Court rejects the objection filed by James Kirby.  In light of the Settlement's $5 minimum payment, Kirby (whose Total Claim is $2.64) is receiving full recovery, and he thus has no standing to object.  Even if he did, the Court rejects his objections.

The Kirby Objection is based on conclusory statements that lack any factual or legal basis, and the Court rejects the objection for lack of substantiation.  The Court specifically rejects Kirby's claims that Plaintiffs have failed to bear their burdens of establishing that the Settlement is fair, adequate, and reasonable, and establishing commonality, predominance, or superiority under Rule 23. As set forth in this Order, each of those requirements has been met.  The Court also rejects Kirby's general claim that the relief provided to the Settlement Class is insufficient.  As discussed above, Class Counsel obtained substantial monetary and injunctive relief for the Settlement Class, particularly in light of the obstacles to recovery in this action.

As to attorneys' fees, the Kirby Objection cites neither any fact nor any law establishing that the fee request here is excessive, and the Court rejects the objection on that basis.  Further, the Court has determined that the attorneys' fees and expense requests are reasonable.

The Court rejects Kirby's objection regarding the scope of the release.  The release is appropriately limited to claims related to residential delivery fees during the Class Period, and the provision covering "known or unknown" claims is reasonable and standard.  Such language is appropriate for FedEx to avoid exposure if a Settlement Class Member later claims to be unaware of a claim relating to residential delivery fees during the Class Period.

**The McKenna Objection**.  The Court rejects the objection filed by Michael McKenna.  That objection was not filed with the Court by November 15, 2013, and is thus untimely and invalid. Further, Mr. McKenna has not established his membership in the Settlement Class, and, according to

FedEx, he does not have any Settlement Shipments and is not identified as a Settlement Class

Member.  (11/19/13 Declaration of Justin Ross).  In any event, his Total Claim is zero, *id.*, such that

he has not established injury-in-fact.  Even if the Court were to consider the McKenna Objection, it

lacks merit.  The McKenna Objection does not provide a factual or legal basis for its statements

regarding attorneys' fees and expenses.  As set forth above and in the Court's separate Order

awarding fees and expenses, the fee and expense requests in this case are consistent with established

law.  The McKenna Objection likewise provides no factual or legal support for its statements

regarding incentive awards.  Those awards are not compensation to Class Counsel, but awards to the

Named Plaintiffs for their service to the Settlement Class; they are thus appropriately borne by the

Settlement Class rather than Class Counsel.

**The Strategy Mortgage Corp. Objection**.  On November 19, 2013, the Court received a

letter from Robert Krasnor of Strategy Mortgage Corp. stating objections to the Settlement.  DE 284

at 1.  The Strategy Mortgage Objection was not filed by November 15, 2013, and is thus untimely

and invalid.

Even if the Court were to consider the Strategy Mortgage Objection, it lacks merit.  The

statements in the letter do not constitute admissible evidence that FedEx's records are erroneous with

respect to whether Strategy Mortgage requested a refund.  But even if they did, the letter provides no

evidence that FedEx's records are erroneous as regards any other Settlement Class Member.

Moreover, nothing prevents FedEx from correcting any error regarding whether Strategy Mortgage

belongs in the Refund Requested or No Refund Requested group – such a correction does not require

rejection of the Settlement.  The Strategy Mortgage Objection also provides no evidence to support

the statement that the Settlement Class's damages are more than ten times the amount of the Settlement. The objection is denied for lack of substantiation.

That Strategy Mortgage had a bad experience with FedEx is a reason to approve the Settlement, not reject it. Strategy Mortgage argues that FedEx relied on inaccurate data in determining whether an address was residential or commercial. The injunctive relief in the Settlement addresses FedEx's reliance on third-party databases and alleged customer designations.

**Public interest**. The public interest favors approval of the Settlement. By putting in place the prospective relief discussed above, the Settlement Agreement benefits not only Settlement Class Members who continue to use FedEx, but also members of the public who may do so in the future. Further, approval of a settlement that provides substantial benefits to a class serves the public interest by eliminating substantial burdens on the court system that would result from continued litigation. *Regions Morgan Keegan*, slip op. at 12 ("Settlement is also in the public interest. It will conserve judicial resources and permit monetary recovery for potentially thousands of individuals and entities."); *Date*, 2013 WL 3945981, at *12 ("'[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits because they are "notoriously difficult and unpredictable" and settlement conserves judicial resources.'") (citations omitted).

**Treatment of the Named Plaintiffs**. The Settlement Agreement treats the Named Plaintiffs appropriately and does not provide them with preferential treatment, but rather with modest incentive awards of $5,000 each that are permissible under governing law. Beyond those incentive awards, which are based on the Named Plaintiffs' unique contributions to this case, the Named Plaintiffs are treated in the same manner as other Settlement Class Members. Further, the Settlement Agreement does not provide "only perfunctory relief" to Settlement Class Members. *Williams*, 720 F.2d at 925 n.11. Instead, it provides Settlement Class Members with significant prospective and monetary relief.

1148911.1

## Notice to the Settlement Class

FedEx has provided notice of the Settlement and Settlement procedures to the Settlement Class in accordance with the Court's Preliminary Approval Order.  As the Court held in the Preliminary Approval Order and reaffirms now, the method and form of notice used by FedEx constitutes the best notice practicable under the circumstances and provides individual notice to all Settlement Class Members who can be identified through reasonable effort, in accordance with Rule 23(c)(2)(B).  The Notice provided by FedEx contains a clear and concise statement, in plain, easily understood language, of the following:  (i) the nature of the action; (ii) the definition of the Settlement Class certified; (iii) the Settlement Class claims and issues and FedEx's defenses to those claims; (iv) that a Settlement Class Member may enter an appearance through an attorney if the member so desires; (v) that the Court will exclude from the Settlement Class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on Settlement Class Members under Rule 23(c)(3).  Fed. Rule Civ. P. 23(c)(2)(B).

## CAFA Notice

The Court previously directed FedEx to provide notice of the proposed Settlement to appropriate state and federal authorities in accordance with the Class Action Fairness Act.  DE 250 at 7.  A declaration filed by FedEx establishes that it complied with this direction.  DE 254.

## Class Certification

For the reasons set forth below, the Court grants final certification of the proposed Settlement Class, for settlement purposes, defined as follows:

> All FedEx National Account holders or Nine Digit Account holders who paid a Residential Delivery Charge, Delivery Area Residential Surcharge, Extended Delivery Area Surcharge, or Fuel Surcharge Component, between August 28, 2008 and July 13, 2011, for one or more Settlement Shipments and did not receive a full refund of those charges.

1148911.1

> Excluded from the Settlement Class are (1) all judicial officers in the United States;
> (2) officers, directors, and employees of FedEx, their parent, subsidiaries and affiliated
> companies; (3) FedEx's parent, subsidiaries or affiliated companies; (4) Settlement Class
> Counsel; and (5) those persons or entities who choose to opt out of the Settlement.

Settlement Agreement § I(E).[4]

The proposed Settlement Class meets the requirements of Fed. Rules of Civ. P. 23(a) and 23(b)(3). The numerosity requirement of Rule 23(a)(1) is satisfied as the Settlement Class contains hundreds of thousands of members such that joinder of them all is impracticable. The commonality requirement of Rule 23(a)(2) is satisfied because the Settlement Class Members' claims present common questions of law and fact. Those common questions include: whether Defendants participated in a RICO enterprise, whether Defendants engaged in a pattern of racketeering activity that included imposing Residential Delivery Fees for deliveries to non-residential addresses and making false statements that residential deliveries had been performed, and whether Defendants acted with improper intent. The typicality requirement of Rule 23(a)(3) is met because the Named Plaintiffs, like all other Settlement Class Members, allege that they were charged Residential Delivery Fees for deliveries to non-residential locations. Further, the Named Plaintiffs' claims arise out of the same alleged pattern and course of conduct as the claims of all other Settlement Class Members. The adequacy of representation requirement of Rule 23(a)(4) is satisfied because the Named Plaintiffs have interests that are aligned with and not antagonistic to those of the Class and because Class Counsel are experienced in class litigation and have vigorously prosecuted the interests of the Settlement Class. The declarations submitted by Class Counsel confirm that they are qualified to represent the Settlement Class and have done so by expending thousands of hours and incurring

---

[4] Capitalized terms are defined in Section I of the Settlement Agreement.

1148911.1

hundreds of thousands of dollars in expenses in the investigation, prosecution, and resolution of this case.  Bramlett Declaration; Burns Declaration; Kunnatha Declaration.

With respect to Rule 23(b)(3), the requirement of predominance is satisfied here.  Common questions that can be resolved on the basis of common proof predominate because every Settlement Class Member would rely on the same documentary and testimonial evidence of associations among the members of the enterprise (to meet RICO's enterprise requirement), the same data regarding whether FedEx imposed Residential Delivery Fees for deliveries to locations that couriers identified as non-residential (to prove breach of contract claims and to meet RICO's pattern of racketeering activity requirement), and the same documents to establish that FedEx intentionally engaged in such misconduct (to prove mail and wire fraud claims under RICO).  The enterprise, pattern, and intent issues as well as other common issues predominate over any individual issues that might be raised.  Damages can be determined mathematically based on FedEx's data.  Accordingly, "questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. Rule Civ. P. 23(b)(3).

Rule 23(b)(3)'s superiority requirement is satisfied because resolving Settlement Class Members' claims in a class action is superior to resolving those claims in a host of individual trials.  Certification will allow Settlement Class Members an opportunity to recover without incurring the substantial risks and expense of individual lawsuits.  Each of the factors that Rule 23(b)(3) lists as pertinent to the superiority determination supports class certification.  "[T]he class members' interests in individually controlling the prosecution or defense of separate actions" are minimal.  Fed. Rule Civ. P. 23(b)(3)(A).  In individual suits, each class member would have to bear the enormous expenses of discovery, motions practice, and expert witnesses that instead can be distributed among class members in a class action.  With respect to "the extent and nature of any litigation concerning

1148911.1

the controversy already begun by or against class members," there is no such litigation.  Fed. Rule Civ. P. 23(b)(3)(B).  As to "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," this Court has handled all pretrial matters in the case, and Memphis is where Defendants are headquartered.  Fed. Rule Civ. P. 23(b)(3)(C).  With regard to "the likely difficulties in managing a class action," management of a class action is far easier than management of thousands of individual trials.  Fed. Rule Civ. P. 23(b)(3)(D).  Thus, "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. Rule Civ. P. 23(b)(3).

## Class Representatives

The Court hereby makes a final appointment of Plaintiffs Manjunath A. Gokare, P.C., and Plaintiff Goldstein, Borgen, Dardarian & Ho, P.C., as Class Representatives.  These Named Plaintiffs have vigorously and diligently prosecuted the claims of the Settlement Class.

## Class Counsel

In accordance with Rule 23(g), the Court hereby makes a final appointment of Bondurant, Mixson & Elmore, LLP (Lead Counsel), Watson Burns, PLLC, and Kunnatha Law Firm as Class Counsel.  The Court has considered the work Class Counsel have done in identifying and investigating potential claims in the action; Class Counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in this action; Class Counsel's knowledge of the applicable law; and the resources Class Counsel have committed to representing the Settlement Class.  The conduct of Class Counsel in this case, the pleadings, and Class Counsel's declarations all provide evidence regarding these considerations.  Class Counsel have fairly and adequately represented the interests of the Settlement Class.

1148911.1

## **<u>Conclusion</u>**

Accordingly, the Court Grants Plaintiffs' Motion for Final Approval of Settlement, Approves the proposed Settlement, Overrules all objections to the Settlement, Certifies the Settlement Class defined below for settlement purposes, Appoints Plaintiffs Manjunath A. Gokare, P.C., and Goldstein, Borgen, Dardarian & Ho, P.C., as Class Representatives, and APPOINTS Bondurant, Mixson & Elmore, LLP (Lead Counsel), Watson Burns, PLLC, and Kunnatha Law Firm as Class Counsel.

**IT IS SO ORDERED on** this 22nd day of November, 2013.

<u>***s/ John T. Fowlkes, Jr.***</u>
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE

1148911.1