# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
### WESTERN DIVISION

| | | |
|---|---|---|
| MANJUNATH A. GOKARE, P.C., and GOLDSTEIN, BORGEN, DARDARIAN & HO, P.C., on behalf of themselves and a class of all persons similarly situated, | ) ) ) ) | |
| | ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:11-CV-2131-JTF-CGC |
| v. | ) ) | |
| FEDERAL EXPRESS CORPORATION and FEDEX CORPORATE SERVICES INC., | ) ) ) | Class Action |
| Defendants. | ) | |

## ORDER
## GRANTING MOTION FOR AWARDS OF
## FEES, EXPENSES, AND INCENTIVE AWARDS

This case is before the Court on Plaintiffs' and Class Counsel's Motion for Awards of Fees, Expenses, and Incentive Awards (the "Motion"). Docket Entry ("DE") 270. By Order entered this same day, the Court has granted final approval of the Settlement Agreement in this action. In accordance with that Settlement Agreement, on October 21, 2013, Plaintiffs and Class Counsel moved for awards of attorneys' fees, expenses, and incentive awards. *Id.* Specifically, Plaintiffs and Class Counsel requested an attorneys' fees award of 30.9% of the $16.5 million common fund established by the Settlement, *i.e.*, a fee award of $5.1 million; an expense award of $489,874.32 as reimbursement for out-of-pocket expenses incurred in investigating, prosecuting, and resolving this action; and incentive awards of $5,000 each to Plaintiff Manjunath A. Gokare, P.C. ("Gokare") and Plaintiff Goldstein, Borgen, Dardarian & Ho, P.C.

("Goldstein").[1]  The Court held a fairness hearing on November 22, 2013, at which time it considered the Motion and all objections to the Motion and to the requested fee, expense, and incentive awards.

For the reasons set forth below, the Court approves each of the requested awards.  The Court also rejects and overrules all objections to the requested attorneys' fees, expense, and incentive awards for the reasons stated in the Order granting final approval of the Settlement. That Order, including the reasons for the Court's rejection of the objections to the attorneys' fees, expense, and incentive awards, is incorporated herein by reference.  The Court's findings of fact and legal conclusions are as follows:

## BACKGROUND

Class Counsel performed extensive, diligent and valuable work in this case that led to a Settlement Agreement that provides significant injunctive and monetary relief to the Settlement Class.  As set forth in their declarations, Class Counsel expended approximately 9,346 hours on this case through September 30, 2013.  DE 270-2 (Declaration of Jeffrey O. Bramlett) ¶ 54 (8,588.25 hours worked by Bondurant, Mixson & Elmore, LLP ("BME") through September 30, 2013);  DE 270-6 (Declaration of William F. Burns) at 3 (632.9 hours worked by Watson Burns, PLLC ("WB") through September 30, 2013); DE 270-7 (Declaration of Salu K. Kunnatha) at 2 (124.9 hours worked by Kunnatha Law Firm ("KLF") through September 30, 2013).  Class Counsel, *inter alia*, conducted a pre-filing investigation of the case, developed and filed the Complaint and First Amended Complaint, successfully opposed FedEx's efforts to eliminate class action allegations from the case, successfully fought to move discovery forward over

---

[1] FedEx has agreed, within the parameters set forth in the Settlement Agreement, to pay (out of the Net Settlement Fund for Refund Requested Shipments and the Net Settlement Fund for No Refund Requested Shipment) the amounts the Court awards for attorneys' fees, expenses, and incentive awards.  Settlement Agreement §§ 3(B), 3(C).

1149278.1

vigorous opposition, conducted extensive discovery, opposed FedEx's efforts to obtain dismissal of Plaintiffs' RICO claim, and negotiated the Settlement Agreement.  Bramlett Dec. ¶¶ 31-50.

Plaintiffs Gokare and Goldstein also performed significant work on behalf of the Settlement Class and played an important role in obtaining the benefits provided by the Settlement.  Bramlett Dec. ¶¶ 5-16.  These Named Plaintiffs:  participated in numerous consultations and conferences with Class Counsel; offered opinions and insights on litigation strategy; monitored Class Counsel's conduct of the action, including by reviewing discovery and pleadings; worked with Class Counsel to develop responses to FedEx's discovery requests, including by providing documents in response to those requests; and provided input to Class Counsel during the settlement negotiation process.  *Id.*  Unlike all other Settlement Class members, the Named Plaintiffs were deposed by FedEx, which involved a substantial time commitment on their part.  *Id.* ¶¶ 9, 13.

## I.    ATTORNEYS' FEES REQUEST

Before analyzing the attorneys' fees request under the standards set forth by the Sixth Circuit, the Court notes that the Settlement Agreement defines both a "Cash Settlement Amount" ($16.5 million) and a "Total Settlement Amount" ($21.5 million).  Settlement Agreement §§ 1(A), 1(OO).  The Agreement uses these two terms to recognize that the Settlement provides more than direct monetary benefits to the Settlement Class.  The Cash Settlement Amount constitutes a common fund from which Settlement Class Members can recover.  The Agreement, however, also provides important prospective relief by changing the manner in which FedEx imposes and notifies its customers of residential delivery charges.  *Id.* § 2.  The parties have agreed that the value of this prospective relief is at least $5 million.  *Id.* § 2(B).  For the reasons set forth below, an award of 30.9% of the $16.5 million common fund would be appropriate even

if the Settlement included no prospective relief.  The fact that the Settlement Agreement provides meaningful prospective relief in addition to the common fund is a factor that makes the 30.9% award particularly reasonable.  Moreover, given that the total amount of the Residential Delivery Fees that were charged for Settlement Shipments during the almost three-year Class Period is $79,418,644, (DE 269-4 (Declaration of Justin Ross) ¶ 4), the parties' agreement that the injunctive relief has a minimum value of $5 million is a reasonable valuation.

As set forth in Federal Rule of Civil Procedure 23(h), "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."  Fed. R. Civ. P. 23(h).  "When awarding attorney's fees in a class action, a court must make sure that counsel is fairly compensated for the amount of work done as well as for the results achieved."  *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).  Here, applicable law and the Settlement Agreement authorize a $5.1 million attorneys' fees award, and that amount will fairly compensate Class Counsel for the work they have done and the significant results they have achieved.

### A.    The Court Will Apply the Percentage-of-the-Fund Method.

"One of two methods for calculation of attorney's fees" in a class action "is generally employed in the Sixth Circuit:  The lodestar and the percentage-of-the-fund."  *In re Southeastern Milk Antitrust Litig.*, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013).  With the percentage-of-the-fund method, "the Court simply determines a percentage of the settlement to award to class counsel."  *Id.* at *2 n.2.  With the lodestar method, the Court analyzes all of the work Class Counsel has performed, determines "the number of hours reasonably expended on the litigation," determines "reasonable hourly rate[s]" for each attorney working on the case, and multiplies the reasonably expended hours times the reasonable hourly rates.  *Id.* at *2 n.1.  "In the Sixth Circuit,

it is within the discretion of the district court to decide which method to use in a given case." *Id.* at *2; *Rawlings*, 9 F.3d at 516 ("[I]t is necessary that district courts be permitted to select the more appropriate method for calculating attorney's fees in light of the unique characteristics of class actions in general, and of the unique circumstances of the actual cases before them."). "[T]he district court must provide a clear statement of the reasoning used in adopting a particular methodology and the factors considered in arriving at the fee." *Id.*

The Court applies the percentage-of-the-fund method here for the reasons set forth below. The present case is a common fund case. As the district court for the Eastern District of Tennessee recently observed, "[t]he percentage-of-the-fund method…clearly appears to have become the preferred method in common fund cases." *Southeastern Milk*, 2013 WL 2155387, at *2 (citations omitted); *see id.* ("It appears that the trend in the Sixth Circuit is 'toward adoption of a percentage of the fund method' in common fund cases.") (*quoting Stanley v. United States Steel Co.*, 2009 WL 4646647, at *1 (E.D. Mich. Dec. 8, 2009)); *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 380 (S.D. Ohio 2006) ("Where Counsel's efforts create a substantial common fund for the benefit of the Class, they are, therefore, entitled, to payment from the fund based on a percentage of that fund."); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 910 (S.D. Ohio 2001) ("The preferred method in common fund cases has been to award a reasonable percentage of the fund.").

Here, as in numerous other common fund cases, the percentage-of-the-fund method – with a lodestar cross-check, as discussed *infra* – is superior to the lodestar method. The district court's reasoning in *Southeastern Milk* applies to the present case:

> As noted above, plaintiffs urge the Court to award a percentage of the common fund in this case. Although the Court acknowledges its discretion to use the lodestar method, the Court finds that the percentage-of-the-fund method is the more appropriate method in this case, especially when employed with a lodestar cross-check. Here, a substantial common

fund has been established for the benefit of class members through the efforts of class counsel. Given the commitment of time and resources committed by class counsel and the complexity of this litigation, it simply would not have been practicable for individual members of this class to pursue litigation challenging the alleged illegal conduct in this case. Given the clear trend in the Sixth Circuit and the Court's belief that the percentage-of-the-fund method, when employed in connection with a lodestar cross-check, accounts for both the amount of the work done and reflects the results achieved by class counsel, this Court will use the percentage-of-the funds method and a lodestar cross-check. In addition, given the number of hours expended by counsel in this case (approximately 127,000) use of a percentage-of-the-fund method here is much more efficient and less time consuming for the Court to administer.

2013 WL 2155387, at *2 (footnote omitted).

Further, "the percentage method 'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Id.* (citation omitted); *Broadwing*, 252 F.R.D. at 381 (percentage-of-the-fund method "incentivizes lawyers to maximize the Class recovery, but in an efficient manner"); *Rotuna v. West Customer Mgmt. Group*, 2010 WL 2490989, at *7 (N.D. Ohio June 15, 2010) (the "percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel as to their expected recovery").

By contrast, the lodestar method has a number of drawbacks for cases, such as this one, that require Class Counsel to expend thousands of hours on behalf of a class. "'In practice, the lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation' and 'creates inherent incentive to prolong the litigation.'" *Southeastern Milk*, 2013 WL 2155387, at *2 (*quoting Manual for Complex Litigation Fourth* § 14.21). The inefficiency concerns that exist with the lodestar method would be significant here as combing through billing records for more than 9,346 hours of law firm work would require a large and unnecessary expenditure of judicial resources. *Stanley*, 2009 WL 4646647, at *1 ("Use of the percentage method also decreases the burden imposed on the Court by eliminating a full-blown,

detailed and time consuming lodestar analysis while assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement.") (citation omitted).

**B.      The Requested Award is Appropriate Under the Percentage-of-the-Fund Method (with a Lodestar Cross-Check).**

The requested attorneys' fees award of 30.9% from the common fund is appropriate; the percentage requested is similar to or lower than percentage-of-the-fund awards approved in numerous other common fund cases in this Circuit.  *See, e.g.*, *Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880 (S.D. Ohio May 24, 2013) (approving 33% attorneys' fees and expense award in common fund settlement); *In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.*, No. 2:09-2009 SMH V (W.D. Tenn. Aug. 5, 2013) (approving 30% attorneys' fees award [totaling $18.6 million] in common fund settlement); *Southeastern Milk*, 2013 WL 2155387, at *3 (approving 33% attorneys' fees award [totaling $52.9 million] in common fund settlement and noting that "the percentage requested is certainly within the range of fees often awarded in common fund cases, both nationwide and in the Sixth Circuit"); *Rotuna*, 2010 WL 2490989, at *7 (approving attorneys' fees award of 33% in common fund case); *Stanley*, 2009 WL 4646647, at *1 (approving attorneys' fees award of 30% in common fund case); *Hainey v. Parrott*, 2007 WL 3308027, at *3 (S.D. Ohio Nov. 6. 2007) (approving attorneys' fees award of 30% in common fund case); *Bessey v. Packerland Plainwell, Inc.,* 2007 WL 3173972, at *4 (W.D. Mich. Oct. 26, 2007) (approving 31-32% attorneys' fees award and noting that "'[e]mpirical studies show that...fee awards in class actions average around one-third of recovery'") (citation omitted); *Broadwing*, 252 F.R.D. at 380 ("Attorneys fees awards typically range from 20 to 50 percent of the common fund."); *see also Dallas v. Alcatel-Lucent USA, Inc.*, 2013 WL 2197624, at *12 (E.D. Mich. May 20, 2013) (preliminarily approving 33% attorneys' fees award in common fund

settlement of collective action and noting that "[v]arious courts have expressed approval of attorney fees in common fund cases at similar or higher percentages").

The Court further concludes that the proper approach to awarding fees under the percentage-of-the-fund method is to award fees based on a percentage of the entire common fund obtained by Class Counsel, not the amount that Settlement Class Members choose to claim. A percentage-of-the-fund award based on the entire fund is proper under United States Supreme Court and Sixth Circuit law. A leading commentator on class actions summarized the law as follows:

> When a lump sum has been recovered for a class, that sum represents the common fund benchmark on which a reasonable fee will be based. When, however, the defendant reserves the right to recapture any unclaimed portion of the common fund after class members have had an opportunity to make their claims against the fund, or when a recovery is based on a formula payment to each class member based on the level of relevant purchases or transactions involved of class members who file proofs of claim, the question arises concerning whether the benchmark common fund amount for fee award purposes comprises only the amount claimed by class members or that amount potentially available to be claimed. In *Boeing Co. v. Van Gemert*, [444 U.S. 472 (1980)] the Supreme Court settled this question by ruling that class counsel are entitled to a reasonable fee based on the funds potentially available to be claimed, regardless of the amount actually claimed.

4 *Newberg on Class Actions* § 14:6, at 570 (4th ed.) (footnote omitted).

*Boeing* establishes that class counsel who obtain a common fund have obtained a benefit for the entire class, whether or not class members exercise their rights to obtain that benefit:

> [T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole….[T]he criteria are satisfied when each member of a certified class has an undisputed and mathematically ascertainable claim to part of a lump-sum judgment recovered on his behalf. Once the class representatives have established the defendant's liability and the total amount of damages, members of the class can obtain their share of the recovery simply by proving their individual claims against the judgment fund. This benefit devolves with certainty upon the identifiable persons whom the court has certified as members of the class….To claim their logically ascertainable shares of the judgment fund, absentee class members need prove only their membership in the injured class. Their right to share the harvest of

the lawsuit upon proof of their identity, whether or not they exercise it, is a benefit in the fund created by the efforts of the class representatives and their counsel….Since the benefits of the class recovery have been "traced with some accuracy" and the costs of recovery have been "shifted with some exactitude to those benefiting," we conclude that the attorney's fee award in this case is a proper application of the common-fund doctrine.

444 U.S. at 478-81 (citations and footnotes omitted).

This Court concludes that the *Boeing* analysis applies to this Settlement and follows the Supreme Court's statement that, "[T]his Court has recognized consistently that a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Id.* at 478.

This Court's approach is also proper under the Sixth Circuit's decision in *Moulton v. United States Steel Corporation*, 581 F.3d 344 (6th Cir. 2009). There, the Sixth Circuit rejected an objection to an attorneys' fees award and confirmed that a district court should base a common fund fee award on the total amount of a settlement rather than the amount that is claimed. The parties in *Moulton* reached a $4.45 million settlement. The settlement agreement provided for a fee award of thirty percent (30%) of the gross amount of the settlement, or $1.335 million. Class members claimed approximately $1.21 million of the settlement funds, leaving $1.28 million to go to public schools under the terms of the agreement. A set of objectors argued that the amount of the fee should be based on the $1.21 million that class members had claimed rather than the $4.45 million total amount of the settlement.

The Sixth Circuit rejected this objection:

The thirty percent attorney's fee award, [objectors] add, is too high, claiming that it "will exceed the recovery of the Class by over $100,000.00." But this estimate is wrong: The objectors focus on the amount *claimed* rather than the amount *allocated*. Claimants, it is true, will in the aggregate receive less than Class Counsel. But that is because just 4,026 class members submitted claims. Except for fees and costs, class members had the first shot at the settlement proceeds—nearly $2.5 million by our estimate—which exceed the amount paid to Class Counsel by some measure. That the public schools will receive $1.28 million in *unclaimed* funds does not reflect on the settlement's fairness.

*Id.* at 352 (italics in original). *Moulton* demonstrates that the amount of a fund that is claimed by class members is not the proper measure of attorneys' fees.

The Court further finds persuasive the reasoning of Circuit Courts that have held that it is an abuse of discretion for a court to base a percentage-of-the-fund award on the amount claimed by class members rather than the total amount of a common fund. *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436-37 (2d Cir. 2007) ("In this case, the District Court calculated the percentage of the Fund on the basis of the claims made against the Fund, rather than on the entire Fund created by the efforts of counsel. We hold that this was error….. The entire Fund, and not some portion thereof, is created through the efforts of counsel at the instigation of the entire class. An allocation of fees by percentage should therefore be awarded on the basis of the total funds made available, whether claimed or not."); *Williams v. MGM-Pathe Communs. Co.*, 129 F.3d 1026, 1027 (9th Cir. 1997) ("We conclude that the district court abused its discretion by basing the fee on the class members' claims against the fund rather than on a percentage of the entire fund or on the lodestar.") (footnote omitted).

Even if a court has the discretion to base a percentage-of-the-fund award on the amount that class members claim rather than the entire amount of a fund, the Court would not do so in this case. Class Counsel here obtained both injunctive relief that addresses residential delivery fee practices that gave rise to the Settlement Class's claims and substantial monetary relief. Class Counsel obtained that relief in the face of significant obstacles, including a class action ban, a refund request requirement with which more than 99.8% of the Settlement Class did not comply, a sixty-day contractual time bar, and numerous merits defenses. For Class Counsel to receive a fee award that amounts to 1.26 times a conservative estimate of their lodestar (*see infra*) does not represent a windfall (especially in light of the risk Class Counsel took of

obtaining no recovery of the millions of dollars they invested in the case), but rather is appropriate compensation.  It would not be appropriate for Class Counsel to receive a lower award because Settlement Class Members choose not to claim funds that are easily available to them.  The requested fee award is well within, and below, the typical range of attorneys' fees awards in similar cases, both on a percentage-of-the-fund basis and a lodestar basis.

"[I]n common fund cases, [the Sixth Circuit] require[s] 'only that awards of attorneys' fees' 'be reasonable under the circumstances."  *Moulton*, 581 F.3d at 352 (*quoting Rawlings*).  A district court must explain its "reasons for 'adopting a particular methodology and the factors considered in arriving at the fee.'"  *Id.* (*quoting Rawlings*).  For the reasons explained above, the Court finds and concludes that the percentage-of-the-fund methodology is the most appropriate method to determine the attorneys' fees in this case.

With regard to the factors considered in arriving at the fee, the courts of this Circuit typically analyze:

> "…(1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides."

*Id.* (*quoting Bowling v. Pfizer, Inc.,* 102 F.3d 777, 780 (6th Cir. 1996)).  Each of these factors supports the fee award requested here.

**Value of the Benefit to the Settlement Class.**  Here, the "benefit rendered to the plaintiff class" consists of the $16.5 million Cash Settlement Amount and prospective relief requiring changes in certain FedEx's residential delivery fee practices.  *Id.*; *Hainey*, 2007 WL 3308027, at *4 ("Counsel obtained an excellent result for the class, both in terms of the amount of the settlement and bringing about a change in policy in the Coroner's Office."); *Pokorny v.*

*Quixtar, Inc.*, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) ("Here, the settlement contains substantial injunctive relief.  It is undisputed that the injunctive relief has substantial value. Accordingly, the injunctive relief elements of the settlement constitute further support for the reasonableness of the fee award.") (citations omitted).

First, the $16.5 million common fund represents a substantial benefit to the Settlement Class.  FedEx contends that the class action ban in its Service Guide bars all Settlement Class Members from participating or recovering in this case, and FedEx further contends that the refund requirements in the Service Guide bar the claims of all Settlement Class Members who did not request refunds of Residential Delivery Fees within sixty days.  DE 269-5 (excerpts from Service Guide).  Despite these significant defenses, Class Counsel were able to achieve a class-wide Settlement that (1) provides customers who requested (but were denied) refunds for Settlement Shipments with recovery of approximately 91% of the Residential Delivery Fees that were paid for such Refund Requested Shipments, (DE 269-4 (Ross Dec.) ¶ 4) (Settlement Agreement provides for recovery of $500,000 out of $550,615 in Residential Delivery Fees paid for Refund Requested Shipments), and (2) provides the 473,837 Settlement Class Members (over 99% of the Settlement Class) who did not request refunds with the opportunity to recover approximately 20% of the Residential Delivery Fees that were paid for No Refund Requested Shipments.  *Id.* (Settlement Agreement provides opportunity for recovery of $16,000,000 out of $78,868,029 in Residential Delivery Fees paid for No Refund Requested Shipments).  In light of FedEx's defenses and the complexity of proving this case, this $16.5 million Cash Settlement Amount represents significant value for the Settlement Class.

Further, the prospective relief in the Settlement provides a substantial benefit to Settlement Class Members.  This prospective relief, detailed in Section 2 of the Settlement

Agreement, addresses residential delivery fee practices (such as sole reliance on an allegedly

incomplete third-party database or alleged customer designations) that Plaintiffs contend caused

millions of dollars in overcharges.  As in *Southeastern Milk*, "[t]he structural changes agreed to

by [FedEx] go to the very heart of some of the challenged conduct in this case."  2013 WL

2155387, at *3.

Viewed alone, the common fund obtained by Class Counsel warrants a 30.9%

percentage-of-the-fund award; viewed in conjunction with the prospective relief that is also

provided by the Settlement Agreement, that percentage is more than reasonable.  Further, an

award of 30.9% of the common fund is more than justified when comparing the significant

results achieved to the difficulty of the case.  "Plaintiffs' counsel created substantial value for the

Class Members" where "Plaintiffs' likelihood of success on the merits [was] in question."

*Regions Morgan Keegan*, slip op. at 20.

**Hourly Value of Services/Lodestar Cross-Check.**  Class Counsel have submitted

declarations setting forth "the value of the[ir] services on an hourly basis," the second factor

listed above.  *Moulton*, 581 F.3d at 352.  These declarations establish that the hourly value of the

services Class Counsel rendered in this case, through September 30, 2013, is at least $4,042,382,

based on billing rates that applied when the work was performed, and at least $4,243,112, based

on current billing rates.  Bramlett Declaration ¶¶ 53-54 (Lead Counsel, BME, expended

approximately 8,588 hours at a value of either $3,769,757 (historical rates) or $3,970,487

(current rates)); Burns Declaration at 3 (WB expended approximately 632.9 hours at a value of

$228,910); Kunnatha Declaration at 2 (KLF expended approximately 124.9 hours at a value of

$43,715).

Courts often perform a "lodestar cross-check," which compares the hourly value of the services rendered by Class Counsel to the amount of a requested attorneys' fees award, to assess whether a requested percentage-of-the-fund award is reasonable. *Regions Morgan Keegan*, slip op. at 18 (performing lodestar cross-check pursuant to second *Moulton* factor). Here, the lodestar cross-check confirms that the requested attorneys' fees award in this case is reasonable.

In accordance with the case law, the declarations of Class Counsel set forth the hours worked by the attorneys, paralegals, and staff who participated in the prosecution of this action as well as the hourly rates charged for such personnel. *Southeastern Milk*, 2013 WL 2155387, at *2 n.3 ("Counsel have provided to the Court summary schedules indicating the number of hours spent by the attorneys involved in this litigation and the lodestar calculation based on historical billing rates. Those schedules were prepared from contemporaneous time records not produced by counsel. Unlike the situation when the Court employs the lodestar method in full, 'the hours documented by counsel need not be exhaustively scrutinized by the district court' where a lodestar cross-check is used.") (citation omitted); *Johnson*, 2013 WL 2295880, at *6 ("In contrast to employing the lodestar method in full, when using a lodestar cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court") (citation omitted); *Regions Morgan Keegan*, slip op. at 19 ("Each firm comprising Plaintiffs' counsel submitted an accounting of the hourly rate and hours spent for each attorney who worked on the case."); *Brotherton*, 141 F. Supp. 2d at 912 ("Class Counsel has summarized the basic lodestar for each of the attorneys, paralegals and law clerks who have worked on this case.").

The resulting lodestar multipliers are 1.26, if historical billing rates are used, and 1.20, if current billing rates are used. In other words, the requested attorneys' fees award is 1.26 times

the hourly value of the services Class Counsel rendered (through September 30, 2013) at

historical billing rates and 1.20 times the hourly value of those services at current billing rates.

These lodestar multipliers are substantially lower than the lodestar multipliers in

numerous cases in this Circuit in which courts have approved fee requests by class counsel.  *Id.*

(approving fee request where lodestar multiplier was "approximately 3.1" and noting that typical

multipliers in post-PSLRA securities class actions range from 1.3 to 4.5); *Johnson*, 2013 WL

2295880, at *6 (approving fee request where lodestar multiplier was 2.25); *Southeastern Milk*,

2013 WL 2155387, at *4 (approving fee request where lodestar multiplier was 1.90 and noting

that this multiplier was "clearly within, but in the bottom half of, the range of typical lodestar

multipliers"); *Broadwing*, 252 F.R.D. at 381 (approving fee request where lodestar multiplier

was 1.6 and noting that a "multiplier of between approximately 2.0 and 5.0" was applied in two

other cases in the district); *Newberg on Class Actions* § 14.6 (4th ed. 2009) ("Multiples ranging

from one to four frequently are awarded in common fund cases when the lodestar method is

applied."); *see Rawlings*, 9 F.3d at 517 (approving lodestar multiplier of 2.0).

Thus, while in many cases attorneys are awarded two, three, or four times the hourly

value of the services they have rendered, the requested attorneys' fees here are either 1.26 or

1.20 times the hourly value of the services Class Counsel rendered through September 30, 2013.

Whichever multiplier is used (1.26 or 1.20), the lodestar cross-check confirms that Class

Counsel's percentage-of-the-fund fee request is reasonable.

**Contingency.**  The third factor listed above, "whether the services were undertaken on a

contingent fee basis," *Moulton*, 581 F.3d at 352, supports the requested award because Class

Counsel were engaged pursuant to a contingent fee arrangement.  Bramlett Dec. ¶ 18.

"[C]ounsel for the Plaintiffs undertook a substantial risk and bore considerable costs by

accepting this case on a contingent fee basis." *Regions Morgan Keegan*, slip op. at 18.

Specifically, Class Counsel "accepted a substantial risk of non-payment for legal work and

reimbursement of out-of-pocket expenses advanced." *Southeastern Milk*, 2013 WL 2155387, at

*5. "[T]he fee awarded should fully reflect the risk taken by these lawyers and is a very

substantial factor in this case which weighs in favor of the requested fee." *Id.* "A fee that

exceeds the lodestar is also important here to compensate Counsel for the risk they undertook of

no payment if the case was unsuccessful." *Broadwing*, 252 F.R.D. at 381-82; *Southeastern Milk*,

2013 WL 2155387, at *5 ("If counsel are not rewarded for this risk, few attorneys will undertake

'the representation of a class client given the investment of substantial time, effort, and money,

especially in light of the risk of recovering nothing.'") (citation omitted).

     **Societal Incentive.**  The fourth factor listed above, "society's stake in rewarding

attorneys who produce such benefits in order to maintain an incentive to others," also supports

the requested award. *Moulton*, 581 F.3d at 352.  "[S]ociety has a clear stake in rewarding

attorneys as an incentive to take on complicated, risky, contingent fee cases." *Regions Morgan

Keegan*, slip op. at 19.  Here, Class Counsel undertook risky litigation against a large corporation

with substantial resources and millions of customers.  Federal Express Corporation states that no

individual has ever sued it based on allegations that it charged residential delivery fees for

deliveries to non-residential locations.  DE 269-3 (Interrogatory Response No. 1).  "[F]ailing to

fully compensate class counsel for the excellent work done and the various substantial risks

taken would undermine society's interest in the private litigation of [consumer protection]

cases." *Southeastern Milk*, 2013 WL 2155387, at *5.

     **Complexity.**  "[T]he complexity of the litigation," the fifth factor listed above, also

supports the requested award. *Moulton*, 581 F.3d at 352.  "In general, '[m]ost class actions are

inherently complex….'" *Broadwing*, 252 F.R.D. at 373 (citation omitted).  This case in particular has involved battles over numerous legal issues, such as the federal common law applicable to air carriers, application of the federal mail and wire fraud statutes to FedEx's conduct, and the meaning of the enterprise requirement under the federal RICO statute, as well as the somewhat novel issue of a class action ban outside the context of an arbitration clause. *Southeastern Milk*, 2013 WL 2155387, at *4 ("Almost every aspect of this case has been hotly contested and litigated extensively and the case presents several somewhat novel issues."). Further, Class Counsel undertook significant work to understand and analyze the extensive Shipping Data produced in this case and to determine how to present customer claims on a class-wide basis.  Bramlett Dec. ¶¶ 40, 61.  The sheer number of hours Class Counsel have devoted to this case also evidence its complexity.  *Dallas*, 2013 WL 2197624, at *14 ("the complexity of this litigation is reflected in the 2,125 attorney hours expended to develop Plaintiffs' claims through discovery and to ultimately reach a $1.4 million settlement after intense, arm's-length negotiations before a neutral mediator").

**Skill and Standing of Counsel.**  Finally, "the professional skill and standing of counsel involved on both sides" supports the requested fee award.  *Moulton*, 581 F.3d at 352.  The declarations of Class Counsel and their conduct of this litigation demonstrate their professional skill, their extensive experience in class action litigation, and their standing in the legal community.  Bramlett Dec. ¶¶ 19-28; Burns Declaration at 1-2; Kunnatha Declaration at 2.

The high quality of the legal work performed by FedEx's counsel is also clear from the pleadings they have filed and their vigorous defense of this case.  Class Counsel have thus "been opposed by equally experienced and highly competent counsel for defendants."  *Southeastern Milk*, 2013 WL 2155387, at *4.  Class Counsel's achievement of the result in this case in the face

of such opposition supports the requested fee award. *Dallas*, 2013 WL 2197624, at *14 ("Considering the legal complexity of this case, as well as the vigor and intensity with which it was defended by experienced and able counsel for Defendant, Plaintiffs' counsel exhibited a high degree of skill in achieving the $1.4 million settlement.").

## II.     THE REQUESTED AWARD OF EXPENSES.

"'Expense awards are customary when litigants have created a common settlement fund for the benefit of a class." *Southeastern Milk*, 2013 WL 2155387, at *8 (citation omitted).  As in *Southeastern Milk*, the requested expenses here "are the type typically billed by attorneys to paying clients in similar cases, and are fair and reasonable under the circumstances of this case. Although the declarations submitted by class counsel are not itemizations of all of the expenses incurred but rather an aggregate listing of the expenses for each category, the Court finds the declarations submitted sufficiently detailed and the Court is persuaded that the expenses are legitimate and are reasonable in the case and will approve payment to class counsel from the common settlement fund in the amount of [$489,874.32] as reimbursement for their out-of-pocket expenses." *Id.*; *see Broadwing*, 252 F.R.D. at 382 (awarding requested expenses as they "are reasonable and necessary expenses, including photocopying, postage, travel, lodging, filing fees and Pacer expenses, long distance telephone, telecopier, computer database research, depositions expenses, and expert fees and expenses").

The Bramlett Declaration establishes that Class Counsel incurred the following expenses in the following categories in investigating, prosecuting and resolving this case:

### Expenses:  March 2010-September 30, 2013

| | |
|---|---|
| Consultants and Expert Witnesses | $310,844.24 |
| Travel and Related Expenses | $51,328.09 |
| Computerized Legal Research | $43,729.75 |
| Document Processing and Coding | $27,355.92 |

| | |
|---|---|
| Depositions, Videos, and Transcripts | $21,136.56 |
| Class Communication | $16,904.85 |
| Mediator Fees | $8,812.50 |
| Delivery and Service Expenses | $4,300.89 |
| Hearing and Presentation Expenses | $1,962.97 |
| Filing Fees | $1,687.60 |
| Electronic and Other Record Retrieval | $1,299.40 |
| Conference Calls | $511.55 |
| | |
| Total | $489,874.32 |

Bramlett Dec. ¶ 57.  Each category of expenses is sufficiently described and discussed in the

Bramlett Declaration.  *Id.* ¶¶ 60-77.  Reimbursement of the foregoing out-of-pocket expenses is

appropriate here as in other cases in which class counsel secure benefits for a class.

## III.    THE INCENTIVE AWARDS.

District courts in this Circuit routinely approve incentive awards to class representatives

that are larger than the awards requested in this case.  *See, e.g.*, *Hainey*, 2007 WL 3308027, at *3

(approving four $50,000 incentive awards); *Brotherton*, 141 F. Supp. 2d at 914 (approving

$50,000 incentive award); *Johnson*, 2013 WL 2295880, at *5 (approving $12,500 incentive

award); *Southeastern Milk*, 2013 WL 2155387, at *8 (approving $10,000 incentive awards to

each of sixteen class representatives); *Date v. Sony Electronics, Inc.*, 2013 WL 3945981, at *13

(E.D. Mich. July 31, 2013) (approving $7,000 incentive award); *see also Broadwing*, 252 F.R.D.

at 380 (approving "modest incentive payments of $5,000 to each of the two Class

Representatives").

While recognizing that numerous other Circuits have expressly approved incentive

awards, the Sixth Circuit Court of Appeals itself has not set forth any rule regarding such awards.

*In re Dry Max Pampers Litig.*, 724 F.3d 713, 722 (6th Cir. 2013) ("We have no occasion in this

case to lay down a categorical rule one way or the other as to whether incentive payments are

permissible.").  "While we have 'never explicitly passed judgment on the appropriateness of

incentive awards,' we have found that 'there may be circumstances where incentive awards are appropriate.'" *Vassalle v. Midland Funding, LLC*, 708 F.3d 747, 756 (6th Cir. 2013) (*quoting Hadix v. Johnson*, 322 F.3d 895, 897-98 (6th Cir. 2003)).  Such awards are appropriate here given the Named Plaintiffs' contributions to the litigation and given that absent class members are not receiving only "perfunctory" relief.  *Vassalle*, 708 F.3d at 755 (citation omitted).

As the district court for the Eastern District of Tennessee stated, "'[incentive] awards are discretionary and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.'  Based on this Court's knowledge of these lengthy proceedings, it appears that the class representatives have had extensive involvement in this litigation and deserve compensation above and beyond the amounts they will be entitled to by virtue of class membership alone.  They have been crucial in the preparation of the case and the requested incentive awards are reasonable in light of other incentive awards approved by courts in this circuit."  *Southeastern Milk*, 2013 WL 2155387, at *8 (citations omitted).

The Bramlett Declaration establishes that "the class representatives have had extensive involvement in this litigation," have "act[ed] as [ ] private attorney[s] general," and "have been crucial in the preparation of the case."  *Id.*; *Hainey*, 2007 WL 3308027, at *3 (noting that "[i]ncentive awards have been deemed appropriate where the class representative performed extensive service").  The Named Plaintiffs have "been instrumental in bringing this lawsuit forward" and asserted claims that no other individual or entity has previously filed against FedEx.  *Brotherton*, 141 F. Supp. 2d at 914.  The incentive payments here are "'well deserved' given the class representatives['] devotion of time and effort in producing documents and

attending depositions, all to the general benefit of the class." *Date*, 2013 WL 3945981, at *13 (citation omitted).  Finally, "the incentive awards requested are fully justified" because "[t]he class representatives were instrumental in obtaining a substantial benefit for the members of the class." *Hainey*, 2007 WL 3308027, at *3; *Johnson*, 2013 WL 2295880, at *5 ("the actions and efforts of the named plaintiff in securing such benefits for the absent class members renders the $12,500 incentive award appropriate in this circumstance").

Accordingly, the Court Grants Plaintiffs' and Class Counsel's Motion for Awards of Attorneys' Fees, Expenses, and Incentive Awards.  The Court Approves an award of $5,100,000 in attorneys' fees to Class Counsel, an award of $489,874.32 in expenses to Class Counsel, an incentive award of $5,000 to Plaintiff Manjunath A. Gokare, P.C., and an incentive award of $5,000 to Plaintiff Goldstein, Borgen, Dardarian & Ho, P.C.  The Court Overrules all objections to the foregoing awards.  Defendants are Directed to pay the foregoing awards in accordance with the Settlement Agreement and in such manner as directed by Lead Counsel for the Settlement Class.

**IT IS SO ORDERED** this 22nd day of November, 2013.

 */s/John T. Fowlkes, Jr.*
JOHN T. FOWLKES, JR.
UNITED STATES DISTRICT JUDGE